IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. _____

NANCY LUND, LIESA MONTAG-SIEGEL, )
and ROBERT VOELKER, )
)
Plaintiffs, )
)
v. )
)
ROWAN COUNTY, NORTH CAROLINA, )
)
Defendant. )
)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 65(a)

Plaintiffs move for a Preliminary Injunction in this matter pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. Pursuant to Rule 7.3 of the Local Rules of Civil Practice for the Middle District of North Carolina, the Plaintiffs submit this memorandum in support of their Motion for Preliminary Injunction.

## INTRODUCTION

Over the past five-and-a-half years, 97% of meetings of the Rowan County Board of Commissioners have opened with sectarian invocations.[1] All of the sectarian invocations have been expressly Christian, closing in the name of Jesus, Christ, or the Savior. In addition, a

---

[1] A "sectarian" prayer has been defined as one that "uses ideas or images identified with a particular religion . . ." *Lee v. Weisman*, 505 U.S. 577, 588 (1992). *See also id.* at 641 (Scalia, J., dissenting) (defining a sectarian prayer as one "specifying details upon which men and women who believe in a benevolent, omnipotent Creator and Ruler of the world are known to differ (for example, the divinity of Christ)"); *Joyner v. Forsyth Cnty.*, 653 F. 3d 341, 364 (4th Cir. 2011) (Niemeyer, J., dissenting) ("To be sure, a prayer that references Jesus is sectarian."), *cert. denied*, 132 S. Ct. 1097 (2012).

number of the invocations, which are delivered by commissioners themselves, also have espoused other tenets specific to Christianity. During the prayers, commissioners have, for example, given thanks for the Virgin Birth, the resurrection, and the Cross at Calvary. Board prayers have proclaimed that Jesus "is the only way to eternal life" and that "[w]e can't be defeated, we can't be destroyed, and we can't be denied because we are going to live forever with you through the salvation of Jesus Christ." Not one of the prayers has invoked a deity or tenets specific to a faith other than Christianity.

Plaintiffs, three citizens and residents of Rowan County, are subjected to these sectarian prayers whenever they attend Board meetings. The Board's invocation practice improperly pressures Plaintiffs, who are not Christian, to participate in Christian prayer. In addition, the prayers convey a clear message that the County favors Christianity over other faiths—a message that marginalizes Plaintiffs and other citizens who do not subscribe to the divinity of Jesus. As a result of the sectarian prayers, Plaintiffs feel excluded from meetings of their own local government.

Invocation practices like those adopted by Rowan County are unwise, as a policy matter, because they are simply not sustainable in our pluralistic society: "As our nation becomes more diverse, so also will our faiths. To plant sectarian prayers at the heart of local government is a prescription for religious discord." *Joyner*, 653 F.3d at 355. Thus, "in their public pursuits, Americans respect the manifold beliefs of fellow citizens by abjuring sectarianism and embracing more inclusive themes." *Id.*

More importantly, as a legal matter, invocations practices like Rowan County's are unwise because they plainly violate the Establishment Clause of the First Amendment to the U.S. Constitution. The U.S. Court of Appeals for the Fourth Circuit has made clear that "[s]ectarian

prayers must not serve as the gateway to citizen participation in the affairs of local government. To have them do so runs afoul of the promise of public neutrality among faiths that resides at the heart of the First Amendment's religion clauses." *Id.* at 342-43. Accordingly, Plaintiffs respectfully request that this Court enjoin the County's unlawful invocation practice and restore their right to attend Board meetings free from official sectarian prayer.

## NATURE OF THE CASE

Plaintiffs bring this case pursuant to 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and Article I, §§ 13 and 19 of the Constitution of North Carolina. Plaintiffs challenge the constitutionality of Defendant Rowan County's ("Defendant" or the "County") invocation practice at Board of Commissioners meetings.

## BACKGROUND FACTS

### I. THE COUNTY'S INVOCATION PRACTICE.

The Rowan County Board of Commissioners usually meets twice per month. These meetings are open to the public and available for viewing online through Defendant's website.[2] Ver. Compl. ¶ 17. From November 5, 2007, through the present, the meetings have generally proceeded in the same manner: Per the Board's published agendas, the meetings usually open with the Call to Order, Invocation, and Pledge of Allegiance. *Id.* ¶¶ 18-19 & Exs. A, B.

After meetings are called to order by a Board member (almost always the Board chairman), the invocation is delivered, followed by recitation of the Pledge of Allegiance. The

---

[2] Videos of the Board's meetings are available online dating back to November 5, 2007, at http://www.rowancountync.gov/GOVERNMENT/Commission/MediaArchive.aspx. The Complaint and this memorandum detail the Board's practices for all meetings held between November 5, 2007, and March 4, 2013, with the exception of (1) Board meetings that were continued over from a previous meeting that had already been called to order; and (2) the February 8, 2013, joint meeting between the Board and the Rowan-Salisbury School Board of Education, which was conducted pursuant to a unique protocol.

3

Board chairman indicates that everyone in attendance should stand for this portion of the meeting. *Id.* ¶¶ 20-21. Then, the Board chairman either delivers the invocation or identifies the Board member who will do so. The Board prayergiver also typically leads the Pledge of Allegiance. *Id.* ¶ 22. Board members always stand during the invocation and pledge and generally bow their heads during the prayer, as do most audience members in attendance. *Id.* ¶¶ 23-24.

From November 5, 2007, through the present, nearly every Board meeting has featured a sectarian invocation. Specifically, 139 of 143 Board meetings opened with sectarian prayer during that time period. Put another way, 97% of Board meetings in the past five-and-a-half years have featured sectarian prayer. *See id.* ¶ 25; Brook Aff. Ex. D.

More specifically, all of the sectarian prayers delivered by Board members have invoked the Christian faith by ending with one or more references to Jesus Christ or other Christian beliefs. Board members have delivered prayers that end, for example, "in Jesus' name," "in the name of Jesus the Christ," "in the name of Jesus," "in the knowledge of our Lord and Savior Jesus Christ," "in the name of Jesus, the one and only way to salvation," "in Christ's name, for His sake," "in the name of Jesus, the King of Kings and Lord of Lords," "in the name of Jesus and for the sake of His kingdom," "in Christ our savior," "through Jesus Christ our Lord," "in the name of our Risen Lord, Jesus Christ," "[for] Jesus our Savior," "in my Lord and Savior's name," and "in the name of our Lord and Savior, Jesus Christ." *See id.*; Ver. Compl. ¶ 26.[3]

---

[3] At two meetings, then-Commissioner Coltrain (who is no longer a Board member) asked that the audience that "join me in a moment of silence or prayer for our meeting" rather than reciting an invocation. The two meetings were held on June 4, 2012, and August 20, 2012. In addition, on March 19, 2012, and November 5, 2012, Coltrain prayed "in His Holy name" and "in your Holy name." *See* Brook Aff. Ex. D. While Plaintiffs consider Coltrain's prayers "in His holy name" and "in your Holy name" to be sectarian, for purposes of the Complaint and

4

Many of the prayers delivered at Board meetings have incorporated Christian doctrine and tenets to an even greater extent. For example, the following invocations have been delivered at Board meetings since November 2007:

   a. Father, we thank you for your grace and your glory. We ask you to be with us this evening as we conduct the business of Rowan County. We'd also like to ask you to have your will as it relates to all the burdens and problems the citizens of Rowan County have today. *As we get ready to celebrate the Christmas season, we'd like to thank you for the Virgin Birth, we'd like to thank you for the Cross at Calvary, and we'd like to thank you for the resurrection. Because we do believe that there is only one way to salvation, and that is Jesus Christ. I ask all these things in the name of Jesus.* Amen. Brook Aff. Ex. D, December 3, 2007 (emphasis added).

   b. Let us pray. Our Heavenly Father, we will never, ever forget that we are not alive unless your life is in us. You saved us and you call us with the holy calling. We are the recipients of your immeasurable grace and glory. We are the richest people in the world. *Because of our salvation through our Lord Jesus Christ, we cannot be defeated, we cannot be destroyed, and we won't be denied, because we're going to live forever with Him.* We confess our sins and we ask you for forgiveness, and we thank you for your blessings. I ask you to be with us as we conduct the business of Rowan County this evening, *and ask these things in the name of Jesus and for the sake of His Kingdom.* Amen. *Id.* Ex. D, June 2, 2008 (emphasis added).

   c. Our Heavenly Father, we will never, ever forget that we are not alive unless your life is in us. We are the recipients of your immeasurable grace. *We can't be defeated, we can't be destroyed, and we won't be denied, because of our salvation through the Lord Jesus Christ.* I ask you to be with us as we conduct the business of Rowan County this evening, and continue to bless everyone in this room, our families, our friends, and our homes. *I ask all these things in the name of Jesus.* Amen. *Id.* Ex. D, May 18, 2009 (emphasis added).

   d. Let us pray. *Father, I pray that all may be one as you, Father, are in Jesus, and He in you. I pray that they may be one in you, that the world may believe that you sent Jesus to save us from our sins. May we hunger and thirst for righteousness, be made perfect in holiness, and be preserved, whole and entire, spirit, soul, and body, irreproachable at the coming of our Lord Jesus Christ.* And I pray, Father, that you will continue to bless this nation, because without your blessings, we don't have any hope. *I ask all these things in the name of Jesus.* Amen. *Id.* Ex. D, October 5, 2009 (emphasis added).

---

memorandum, Plaintiffs counted as clearly Christian only those prayers that mentioned "Jesus," "Christ," or the "Savior."

e. Heavenly Father, we give you thanks for the many, many blessings that you give to us each and every day, *especially during this time of the year when we celebrate the birth of your Son, our Savior, who came to show us how we should interact with each other for the benefit of each other*. As servants for this community, please help us as the commissioners to really practice that principle so that we can have a positive effect on the lives of the citizens of the county, for your honor and glory. *In Jesus' name we pray.* Amen. *Id.* Ex. D, December 13, 2010 (emphasis added).

f. Let us pray. *Holy Spirit, open our hearts to Christ's teachings, and enable us to spread His message amongst the people we know and love through the applying of the sacred words in everyday lives. In Jesus' name I pray.* Amen. *Id.* Ex. D, March 7, 2011 (emphasis added).

g. Let us pray. Lord, we confess that we have not loved you with all our heart, and mind and strength, and that *we have not loved one another as Christ loved us. We have also neglected to follow the guidance of the Holy Spirit*, and have allowed sin to enter into our lives. Forgive us for what we've been and by your spirit, direct what we shall be. *In Jesus' name I pray.* Amen." *Id.* Ex. D, August 1, 2011 (emphasis added).

h. Let us pray. Merciful God, although you made all people in your image, we confess that we live with deep division. *Although you sent Jesus to be Savior of the world, we confess that we treat him as our own personal God. Although you are one, and the body of Christ is one*, we fail to display that unity in our worship, our mission, and our fellowship. Forgive our pride and arrogance, heal our souls, and renew our vision. *For the sake of your Son, our Savior, the Lord Jesus Christ,* Amen. *Id.* Ex. D, October 3, 2011 (emphasis added).

i. Let us pray. Father we do thank you for your love, mercy, and your grace. We thank you for this time of the year when *we celebrate the birth of Jesus Christ. Lord, we realize that the most important thing was not His birth, but His death that made a way for us to have life, and have it more abundantly.* We pray you would be with us today; give us grace and mercy. Lord, give us wisdom in the decisions that we need to make. I pray that you would help us, God, to guide this county in a way that you would see fit. Lord, we thank you for it. *In Jesus' name, Amen. Id.* Ex. D, December 19, 2011 (emphasis added).

j. Let us pray. Our Heavenly Father, we will never ever forget that we are not alive unless your life is in us. We have been blessed to be the recipients of your immeasurable grace. *We can't be defeated, we can't be destroyed, and we can't be denied because we are going to live forever with you through the salvation of Jesus Christ.* Lord, be with us today and provide us with your supreme guidance and wisdom as we conduct the business of Rowan County. *And, as we pick up the Cross, we will proclaim His name above all names, as the only way to eternal life. I ask this in the name of the King of Kings, the Lord of Lords, Jesus Christ. Id.* Ex. D, March 5, 2012 (emphasis added).

k. Let us pray. Lord, we do not look to the world for strength or encouragement, but we look to your word where we are convinced that you will protect and guard that which you have entrusted to us. *By the empowerment of your in-dwelling Holy Spirit, help us boldly stand when the world, even those close to us, assault our faith.* It is in your strength and your power that we remain faithful. *May the purifying of our faith bring praise, glory and honor to Jesus, our Lord and Savior.* Amen. *Id.* Ex. D, May 21, 2012) (emphasis added).

l. *Father God, in the name of Jesus*, we come to you today thanking you for all you've done for us. Thank you for forgiving us of your sins and giving us eternal life. Lord, we pray that you'll bless us in these meetings today. We pray that you'll guide and direct our thoughts. Help us to make the right decisions for Rowan County, Lord. We thank you so much for the rain you sent early this morning. We thank you for all you do. *In Jesus' name, Amen. Id.* Ex. D, July 2, 2012 (emphasis added).

m. Let us pray. Father God, we thank you for this day. Thank you for grace and mercy and love. *I thank you so much, Lord, for sending your Son; this is the reason for the season, Jesus Christ.* We thank you for all you've done for us these last four year. We pray that you will bless these men and women. God, I pray to you today, that these new commissioners will seek your guidance. *I pray that the citizens of Rowan County will love you Lord, and that they will put you first. In Jesus' name, Amen. Id.* Ex. D, December 3, 2012 (emphasis added)

Every individual who has been a member of the Board since November 5, 2007, has delivered one or more sectarian invocations, and no invocation has referred to a deity or tenet specific to a faith other than Christianity. *Id.* Ex. D; Ver. Compl. ¶¶ 28-29.

On February 15, 2012, the American Civil Liberties Union of North Carolina Legal Foundation sent a letter to the Rowan County Board of Commissioners, informing the Board that the sectarian prayers violated the First Amendment to the United States Constitution. *Id.* ¶ 30 Ex. C. The County never formally responded to the letter, although Board members publicly proclaimed their intentions to continuing offering Christian prayers. *Id.* ¶ 31. For example, then-Commissioner Carl Ford told a local television news station, "I will continue to pray in Jesus' name. I am not perfect so I need all the help I can get, and asking for guidance for my decisions from Jesus is the best I, and Rowan County, can ever hope for." *Id.* And

Commissioner Jim Sides wrote in an email obtained by the press, "I will continue to pray in JESUS name . . . I volunteer to be the first to go to jail for this cause . . . and if you [Commissioner Mitchell] will go my bail in time for the next meeting, I will go again!" *Id.*

## II. PLAINTIFFS' ATTENDANCE AT BOARD MEETINGS.

Plaintiffs Nancy Lund, Liesa Montag-Siegel, and Robert Voelker are long-time citizens and residents of Rowan County, North Carolina, who are active in the Rowan County community and have each attended multiple Board meetings at which sectarian invocations were delivered. Lund Aff. (attached hereto as Ex. A) ¶¶ 7, 10; Montag-Siegel Aff. (attached hereto as Ex. B) ¶¶ 7, 10; Voelker Aff. (attached hereto as Ex. C) ¶¶ 4, 8. Plaintiff Lund also occasionally watches meetings online to follow Board deliberations. Ex. A ¶ 6. Plaintiffs attend Board meetings to follow various local issues of interest before the Board, and each Plaintiff plans to continue attending meetings in the future. Ex. A ¶ 5, Ex. B ¶ 6, Ex. C ¶ 5. At least one of the Plaintiffs, Mr. Voelker, who publicly stated his opposition to the Board's sectarian invocations, fears his dissent on this issue might make him a less effective advocate on other issues. Thus, he has become hesitant to speak up at Board meetings in support of causes that he supports. Ex. C ¶ 13.

The sectarian invocations cause Plaintiffs, who are not Christians, to feel uncomfortable during Board meetings. Ex. A ¶¶ 9-10 , Ex. B ¶¶ 9-10, Ex. C ¶ 9. Plaintiffs object to and are offended by the Board's sectarian prayer practice because it affiliates the County with one particular faith and sends a message that the County and its Commissioners favor adherents of that faith. Ex. A ¶ 10, Ex. B ¶ 10, Ex. C ¶ 9. As Plaintiffs do not subscribe to the religious beliefs promoted by the prayers and are not members of the preferred faith group, the prayers make them feel excluded from the community and the local political process. Ex. A ¶ 10, Ex. B

8

¶ 10, Ex. C ¶ 9. In addition, because all Board members stand and indicate that the audience should stand during the prayers, and because nearly all in attendance bow their heads, Plaintiffs feel pressured to participate in the prayers in this manner, even though the prayers profess religious beliefs specific to a faith that they do not share. Ex. A ¶¶ 9, 11, Ex. B ¶¶ 9, 11, Ex. C ¶¶ 7, 10.

## ARGUMENT

Plaintiffs are entitled to a preliminary injunction if they can demonstrate that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *W.Va. Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). As explained below, Plaintiffs here easily meet these requirements.

### I. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR CLAIMS UNDER THE ESTABLISHMENT CLAUSE AND NORTH CAROLINA CONSTITUTION.

In case after case, as discussed below, the U.S. Court of Appeals for the Fourth Circuit could hardly be clearer when it comes to legislative prayer practices adopted by local governing bodies: Legislative prayer will not pass muster under the Establishment Clause unless it is "nonsectarian in both policy and practice." *Joyner*, 653 F.3d at 348. As the Fourth Circuit has explained, to hold otherwise—"to shut our eyes to patterns of sectarian prayer in public forums—is to surrender the essence of the Establishment Clause and allow government to throw its weight behind a particular faith." *Id.* at 351.

Under the County's invocation practice, 97% of Board meetings over the past five-and-a-half years have opened with prayer specific to one faith, Christianity. A number of the prayers

9

espouse Christian ideology at length. Not one prayer has invoked a deity or tenets specific to any faith other than Christianity. Plaintiffs are subjected to these sectarian prayers whenever they attend Board meetings. They feel pressured to participate in the prayers, even though they do not subscribe to the Christian faith, and the prayers make them feel marginalized and excluded from their own political community. These facts remove any doubt as to whether Plaintiffs are likely to succeed on the merits of their claims.

### A. Plaintiffs Have Standing to Challenge the Board's Invocation Practice.

In order to establish standing, Plaintiffs must demonstrate that (1) they "suffered an injury in fact – an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) there exists "a causal connection between the injury and the conduct complained of"; and (3) "the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations/quotation marks omitted). Plaintiffs here easily meet all requirements necessary to confer standing.

First, Plaintiffs have the requisite personal stake in Defendant's invocation policy. As the Fourth Circuit has recognized, because "'the spiritual, value-laden beliefs of the plaintiffs' are often most directly affected by an alleged establishment of religion[,] . . . rules of standing recognize that noneconomic or intangible injury may suffice to make an Establishment Clause claim justiciable." *Suhre v. Haywood Cnty.*, 131 F.3d 1083, 1086 (4th Cir. 1997) (quoting *Am. Civil Liberties Union of Ga. v. Rabun Cnty. Chamber of Commerce*, 698 F.2d 1098, 1102 (11th Cir.1983)); *see also Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 321 F. Supp. 2d 688, 691 (M.D.N.C. 2004). Consistent with this principle, the Fourth Circuit has held that "[d]irect contact with an unwelcome religious exercise or display works a personal injury" sufficient to

10

confer standing. *Suhre*, 131 F.3d at 1086; *see also Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 224 n.9 (1963) ("The parties here are school children and their parents, who are directly affected by the laws and practices against which their complaints are directed. These interests surely suffice to give the parties standing to complain."); *Pelphrey v. Cobb Cnty.*, 547 F.3d 1263, 1279 (11th Cir. 2008) ("An actual injury occurs if the plaintiff is 'subjected to unwelcome religious statements' and is 'directly affected by the laws and practices against [which his or her] complaints are directed.'") (quoting *Saladin v. City of Milledgeville*, 812 F.2d 687, 692 (11th Cir.1987)).

Here, Plaintiffs are long-standing citizens and residents of Rowan County. *Supra* p. 8. They are all active in the community and have a laudable interest in public affairs that have led them to attend multiple meetings of the Rowan County Board of Commissioners throughout the years, where they have been directly exposed to the Board's sectarian invocation practice. *Id.* Plaintiffs' direct contact with the Board's invocation practice is unwelcome: Each Plaintiff is offended by the prayer practice because it affiliates the County with one particular faith, Christianity, and sends the message that the County favors adherents of that faith. *Id.* Plaintiffs, who are not Christians, feel excluded from meetings and the political community. *Id.* In addition, at each Board meeting attended by Plaintiffs, because all Board members stand and indicate that the audience should stand, and because Board members and most people in attendance bow their heads while a commissioner delivers the invocation, Plaintiffs feel coerced to participate in Christian prayer. *Id.* at p. 9. One Plaintiff has even reconsidered speaking up during future Board discussions out of fear that his known dissent on the issue of sectarian prayer could diminish his effectiveness as an advocate on other issues. *Id.* at p. 8. Finally, Plaintiffs intend to attend future Board meetings. *Id.* These facts surely evince the "concrete and

particularized injury" necessary for standing under the Establishment Clause. *See, e.g., Pelphrey*, 547 F.3d at 1279 (11th Cir. 2008) ("[Plaintiff] suffered a personal injury sufficient to confer standing because he had direct contact with the practice of the Planning Commission during 2003-2004. The district court found that [plaintiff] attended three Planning Commission meetings in person and viewed additional Planning Commission meetings via the internet, during which invocations were given."); *Joyner v. Forsyth Cnty.*, No. 1:07CV243, 2009 WL 3787754, at *3, *5 (M.D.N.C. Nov. 9, 2009) (holding that plaintiffs had standing where they had attended one Board of Commissioners meeting that had opened with unwelcome sectarian prayer), *aff'd.* 653 F.3d 341 (4th Cir. 2011). *Cf. Joyner*, 653 F.3d at 354 ("To . . . Jewish, Muslim, Baha'I, Hindu, or Buddhist citizens[,] a request to recognize the supremacy of Jesus Christ and to participate in a civic function sanctified in his name is a wrenching burden.") (citing Amicus Br. of Amer. Jewish Cong. et al. 8); *Wynne v. Town of Great Falls*, 376 F.3d 292, 295 (4th Cir. 2004) (noting that Plaintiff "regularly" attended Council meetings at which prayers occurred.).

Second, Plaintiffs injuries are directly tied to the County's sectarian invocation practice and would be redressed by a favorable decision of this Court. Accordingly, Plaintiffs meet the other elements of the standing inquiry.

### B. Defendant's Invocation Practice Plainly Violates the Establishment Clause.

Defendant's invocation practice runs afoul of clear Fourth Circuit precedent. Because "the proximity of prayer to official government business can create an environment in which the government prefers – or appears to prefer – particular sects or creeds at the expense of others," the Court of Appeals has "approv[ed] legislative prayer only when it is nonsectarian in both policy and practice." *Joyner*, 653 F.3d at 347.

Thus, in *Wynne*, the Fourth Circuit deemed unconstitutional a town council's practice of opening meetings with prayers, many of which referred to Jesus. 376 F.3d at 301. The prayers

12

were part of the council meeting agenda and often delivered by a councilmember. *Id.* at 294, 301 n.7. In finding a violation of the Establishment Clause, the Court reasoned that the "invocations at issue here, which specifically call upon Jesus Christ, are simply not constitutionally acceptable legislative prayer . . . " *Id.* at 301-02. Rather, the Court concluded, the sectarian prayers "embody the precise kind of 'advance[ment]' of one particular religion that . . . . [the Supreme Court has] cautioned against." *Id.* at 302. *Cf. Simpson v. Chesterfield Cnty. Bd. of Supv'rs*, 404 F.3d 276, 284 (4th Cir. 2005) (upholding legislative prayer practice that promoted "non-sectarianism and requested that invocations refrain from using Christ's name or, for that matter, any denominational appeal"); *Turner v. City Council of Fredericksburg*, 534 F.3d 352, 356 (4th Cir. 2008) (upholding city council's policy requiring invocations to be nonsectarian).

Similarly, in *Joyner*, the Fourth Circuit held that the county's invocation practice allowing clergy to deliver sectarian prayers at the start of meetings for the Board of Commissioners was unconstitutional. 653 F.3d at 355. The Court pointed out that "almost four-fifths of the prayers referred to 'Jesus,' 'Jesus Christ,' 'Christ,' or 'Savior.'" *Id.* at 344. By way of contrast, "[n]one of the prayers mentioned non-Christian deities." *Id.* Moreover, while an invocation practice dominated by prayers with even one "solitary reference to Jesus Christ" in closing is enough to violate the Establishment Clause, some of the prayers offered before the Forsyth County Board "invoked Jesus' name throughout" and "invoked specific tenets and articles of faith of Christianity." *Id.* at 349-50.[4] Marshaling these facts, the Court concluded that, "[t]aken as a whole, . . . the prayers offered under the Board's policy did not evoke common

---

[4] Specific tenets of Christianity espoused during the sectarian prayers included the "Cross of Calvary," the "Virgin Birth," and the "Gospel of the Lord Jesus Christ." *Joyner*, 653 F.3d at 349-50.

13

and inclusive themes and forswear . . . the forbidding character of sectarian invocations." *Id.* at 350 (internal quotation marks omitted).

The Fourth Circuit's prior legislative prayer cases have "set forth the constitutional line," and Rowan County's "prayers [have] crossed it." *Id.* Indeed, the facts here are far more egregious than in either *Joyner* or *Wynne*: Virtually every meeting of the Rowan County Board of Commissioners over the past five-and-a-half years has opened with a sectarian invocation. More precisely, 97% of Board meetings (139 of 143) from November 5, 2007, to present have started with Christian prayer. *Supra* p. 4. Each sectarian prayer has closed with a Christian reference, declaring that the prayer was delivered "in Jesus' name," "in the name of Jesus the Christ," "in the name of Jesus," "in the knowledge of our Lord and Savior Jesus Christ," "in the name of Jesus, the one and only way to salvation," "in Christ's name, for His sake," "in the name of Jesus, the King of Kings and Lord of Lords," "in the name of Jesus and for the sake of His kingdom," "in Christ our savior," "through Jesus Christ our Lord," "in the name of our Risen Lord, Jesus Christ," "[for] Jesus our savior," "in my Lord and Savior's name," or "in the name of our Lord and Savior, Jesus Christ." *Id.* Furthermore, a number of the Board's invocations have incorporated and proclaimed specific tenets of Christianity, including, among others, eternal life and salvation through Christ, the Virgin Birth, the resurrection, and the Cross at Calvary. *Id.* at pp. 5-7. Not one prayer has invoked a deity of another faith. *Id.* at p. 7. And the prayers are delivered by the commissioners themselves. *Id.*

Finally, as in *Joyner*, the Board's invocation leads directly into a recital of the Pledge of Allegiance, with commissioners indicating that audience members should stand for both. *Compare id.* pp. 3-4 *with Joyner*, 653 F.3d at 343. Once standing, all Board members and nearly all members of the audience then bow their heads for the prayer. *Supra* p. 4. This feature

14

adds an extra level of coercion for those wishing to state allegiance to their country, but not fealty to Defendant's religious beliefs. In light of these facts, Rowan County's sectarian prayer practice – even more so than the invocation practices held unconstitutional in *Wynne* and *Joyner* – plainly "transgress[es] the boundaries of the Establishment Clause" by "repeatedly suggest[ing] the government has put its weight behind a particular faith." *See Joyner*, 653 F.3d at 349.

### C. Defendant's Invocation Practice Violates the Constitution of North Carolina.

Section 13 of Article I of the Constitution of North Carolina provides that "[a]ll persons have a natural and inalienable right to worship Almighty God according to the dictates of their own consciences, and no human authority shall, in any case whatever, control or interfere with rights of conscience." N.C. Const. art. I, § 13. Article I, Section 19 states that "[n]o person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of . . . religion." N.C. Const. art. I, § 19. Taken together, these provisions demand the same level of religious neutrality as required by the First Amendment. Thus, in interpreting the North Carolina Constitution, state courts look to federal Establishment Clause jurisprudence. *See In re Appeal of Springmoor, Inc.*, 348 N.C. 1, 5 (1998) ("[W]hile the religion clauses of the state and federal Constitutions are not identical, they secure similar rights and demand the same neutrality on the part of the State. Thus, [state courts] may utilize Establishment Clause jurisprudence to examine legislation for 'aspects of religious partiality' prohibited by both constitutions.") (internal citations omitted). Consequently, for the reasons stated above, Defendant's exclusionary sectarian prayer practice also violates the state Constitution.

15

## II. PLAINTIFFS MEET THE REMAINING REQUIREMENTS FOR A PRELIMINARY INJUNCTION.

### A. Plaintiffs Will Suffer Irreparable Harm Unless This Court Intervenes.

Plaintiffs seek to vindicate their First Amendment rights, which rank among the most fundamental in our society. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (quoting same); *see also Johnson v. Bergland*, 586 F.2d 993, 995 (4th Cir. 1978) ("Violations of first amendment rights constitute per se irreparable injury."); *ACLU v. Conti*, 835 F. Supp. 2d 51, 61 (E.D.N.C. 2011) ("It is well-settled that a determination of likelihood of success on the merits in First Amendment cases supports a finding of irreparable harm.").

For at least five-and-a-half years, Defendant has consistently opened its twice-monthly Board of Commissioners meetings with a sectarian invocation, despite governing case law that clearly prohibits this practice. *Supra* pp. 3-4, 7. When informed that the practice was unconstitutional in 2012, commissioners stated empathically that they would continue to offer sectarian invocations, and indeed, have continued to do so over the course of the last year. *Supra* p. 7. There is no reason to believe that Defendant will cease this unconstitutional practice absent injunctive relief from this Court. The First Amendment injury incurred by Plaintiffs is thus ongoing, its recurrence imminent, and its damage irreparable.

### B. The Balance of Equities Weighs Fully in Plaintiffs' Favor.

Balancing "the competing claims of injury" and considering "the effect on each party of the granting or withholding of the requested relief" in the current controversy makes clear that the equities tip fully in favor of granting Plaintiffs' requested injunctive relief. *Winter*, 555 U.S. at 24 (internal quotation marks omitted). Plaintiffs have suffered, and will continue to suffer,

16

irreparable injury without injunctive relief from this Court to stop the Defendant's violation of Plaintiffs' rights under the Establishment Clause. The County, on the other hand, has no injury because it is not entitled to engage in unconstitutional sectarian prayer. *See, e.g., Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) ("With respect to the harm that would befall if an injunction were put in place, [Defendant] is in no way harmed by issuance of a preliminary injunction which prevents it from enforcing a regulation, which, on this record, is likely to be found unconstitutional [under the First Amendment]."); *Doe v. Pittsylvania Cnty.*, 842 F. Supp. 2d 927, 935 (W.D. Va. 2012) ("The Board is in no way harmed by the issuance of a preliminary injunction that prevents it from continuing its Christian [legislative] prayer practice, which, on this record, is likely to be found unconstitutional."). In addition, the County may continue to offer invocations so long as its prayer practice is nonsectarian, consistent with the Fourth Circuit's governing case law. *Id.* (explaining that "a preliminary injunction in this case will not prevent the Board from solemnizing its meetings by engaging in legislative prayer that is consistent with the Establishment Clause").

### C. The Public Interest Will Be Served By Granting a Preliminary Injunction.

The public interest will be served by granting Plaintiffs' request for preliminary injunctive relief because it would prevent a practice that "infringe[s] upon their First Amendment rights." *Conti*, 853 F. Supp. 2d at 62; *see also Elrod*, 427 U.S. at 373. The public interest is always served by preventing violations of fundamental constitutional rights, such as those protected by the First Amendment. *See, e.g., Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (holding in Establishment Clause challenge to religiously discriminatory constitutional amendment approved by voters that "it is always in the public interest to prevent the violation of a party's constitutional rights") (internal citations quotation marks omitted); *Newsom*, 354 F.3d

17

at 261 ("Surely, upholding constitutional rights serves the public interest."); *Pittsylvania*, 842 F. Supp. 2d at 936 (rejecting claim that preliminary injunction barring sectarian legislative prayers would undermine the public interest by disrupting Board's ability "to operate and serve the citizens" and holding that "it is in the public interest to protect plaintiff's constitutional rights pending the resolution of the case").

### D. Under These Facts, the Court Should Waive Any Bond Requirement or Fix the Bond at Zero Dollars.

Federal Rule of Civil Procedure Rule 65(c) requires that the party seeking a preliminary injunction give security "in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." While a district court may not fail to address the bond requirement altogether, the "court retains the discretion to set the bond amount as it sees fit or waive the security requirement." *See Pashby v. Delia*, No. 11-2363, 2013 WL 791829, at *19 (4th Cir. Mar. 5, 2013) (citing *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999)). The Fourth Circuit has recognized that "[t]he amount of the bond . . . ordinarily depends on the gravity of the potential harm to the enjoined party." *Hoechst*, 174 F.3d at 421 n.3. Where, as here, no harm will befall the Defendant upon the issuance of a preliminary injunction, the court "may fix the amount of the bond accordingly," including setting a "nominal bond" or "fixing [the] bond amount at zero." *Id.* (citing, with approval, *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir.1974)). Plaintiffs thus respectfully request that the Court either waive the bond or fix any bond amount at zero dollars or some other nominal amount if their Motion for Preliminary Injunction is granted.

### CONCLUSION

As the Fourth Circuit has explained, "repeated invocation of the tenets of a single faith [at governmental board meetings] undermine[s] our commitment to participation by persons of all

18

faiths in public life. For ours is a diverse nation not only in matters of secular viewpoint but also in matters of religious adherence. Advancing one specific creed at the outset of each public meeting runs counter to the credo of American pluralism and discourages the diverse views on which our democracy depends." *Simpson*, 404 F.3d at 283. Accordingly, Plaintiffs respectfully request that this Court enter a preliminary injunction as set forth in the accompanying Motion and Verified Complaint.

Respectfully submitted,

/s/ Christopher A. Brook
NC Bar No. 33838
Legal Director, American Civil Liberties Union
of North Carolina Legal Foundation
Post Office Box 28004
Raleigh, North Carolina 27611
Telephone: (919) 834-3466
Facsimile: (866) 511-1344
Email: cbrook@acluofnc.org

Daniel Mach
(D.C. Bar # 461652) *
Heather L. Weaver
(D.C. Bar # 495582)*
ACLU Program on Freedom of Religion and Belief
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
Fax: (202) 546-0738
Email: dmach@aclu.org
hweaver@aclu.org
* Appearing pursuant to Local Rule 83.1(d)

*Counsel for Plaintiffs*

DATE: March 12, 2013

# CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2013, I electronically filed the foregoing Motion for Preliminary Injunction using the CM/ECF system which will send notification of such filings to the following counsel:

Jay Dees
Ketner & Dees, P.A.
121 East Kerr Street
Salisbury, NC 28144
jay@ketnerlaw.com
Counsel for Defendant


This is the 12th day of March, 2013.


/s/ Christopher A. Brook
Christopher A. Brook