# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### No.: 1:13-cv-207-JAB-JLW

| | | |
|---|---|---|
| NANCY LUND, LIESA MONTAG-SIEGEL and ROBERT VOELKER, | ) ) ) | |
| Plaintiffs, | ) ) ) | DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)1 & 12(b)(6) |
| v. | ) ) ) | |
| ROWAN COUNTY, NORTH CAROLINA | ) ) ) | |
| Defendant. | ) ) | |

/s/ David C. Gibbs III
David C. Gibbs III *
D.C. Bar No.: 448476
Gibbs Law Firm, P.A.
President, National Center for
Life and Liberty
5666 Seminole Blvd., Suite 2
Seminole, Florida 33772
Ph: (727) 362-3700
Fax: (727) 398-3907
dgibbs@gibbsfirm.com

/s/ Keneth Klukowski
Kenneth A. Klukowski*
Indiana Bar No. 28272-06
Liberty University School of Law
1971 University Blvd.
Lynchburg, Virginia 24502
Ph: (434) 592-5300
Fax: (434) 592-5400
kklukowski@liberty.edu

/s/ Bryce Neier
Bryce Neier - Local NC Counsel
2525 Raeford Road, Suite D
P.O. Box 87164
Fayetteville, NC 28304
Ph: (910) 423-5000
Fax: (910) 423-5000
bryceneier@aol.com

*By special appearance pursuant to Local Rule 83.1(d)*

*COUNSEL FOR DEFENDANT*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................iii

STATEMENT OF THE CASE .........................................................................2

STATEMENT OF FACTS ...............................................................................2

QUESTIONS PRESENTED .............................................................................3

ARGUMENT ..................................................................................................3

I.   THE CASE SHOULD BE DISMISSED UNDER FED. R. CIV. P.  12(b)(6)
     BECAUSE IF MONELL LIABILITY APPLIES AT ALL IN THIS SUIT, IT IS
     TO A CUSTOM OF ALLOWING LEGISLATIVE PRAYERS AS PERMITTED
     BY *MARSH V. CHAMBERS* ...............................................................3

     A.   Plaintiffs bear the burden of proving their purported injuries are due to a
          policy or custom of Rowan County instead of individual
          Commissioners.................................................................................4

     B.   There is no liability here under *Monell* because the practice does not carry
          the force of law.................................................................................5

     C.   The only custom here to which *Monell* could apply is to allow legislative
          prayers as permitted by *Marsh v. Chambers*.....................................8

II.  THIS COURT LACKS SUBJECT-MATTER JURISDICTION UNDER F.R.C.P.
     12(b)(1)BECAUSE SPECIFIC RELIEF SOUGHT BY PLAINTIFFS IS
     FORECLOSED BY THE POLITICAL-QUESTION DOCTRINE .................11

     A.   The political-question doctrine applies when courts cannot formulate a
          plaintiff's requested relief exclusively with legal principles
          and standards ................................................................................12

     B.   This Court cannot prospectively define every prayer as either sectarian or
          nonsectarian using only judicially-manageable terms and legal principles.15

III. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THE
     REQUIREMENTS NECESSARY TO ESTABLISH ARTICLE III
     STANDING .........................................................................................24

CONCLUSION ...............................................................................................27

Case 1:13-cv-00207-CCE-JLW   Document 23   Filed 04/29/13   Page 2 of 35

# TABLE OF AUTHORITIES

## CASES

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)................................................6

*Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436 (2011) ...........................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................5

*Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992). ............................................7,10

*Baker v. Carr*, 369 U.S. 186 (1962) .............................................................13, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................4

*Berkley v. Common Council of City of Charleston*, 63 F.3d 295 (4th Cir. 1995) ...........8

*Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539 (6th Cir. 2004)...............10

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)..............................................12

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)........................................5, 6, 7

*County of Allegheny v. ACLU of Greater Pittsburgh*, 492 U.S. 573 (1989)................16

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)......................................12, 25

*Davis v. Bandemer*, 478 U.S. 109 (1986).........................................................15

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1(2004)................................25

*Eversole v Steele*, 59 F.3d 710 (7th Cir. 1995).................................................10

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009)..................................9

*Gilligan v. Morgan*, 413 U.S. 1(1973)..........................................................22

*Hagan v. Lavine*, 415 U.S. 528 (1974)...........................................................13

*Hinrichs v. Bosma*, 2005 U.S. Dist. LEXIS 38330 (S.D. Ind. Dec. 28, 2005)..........20, 21

*Hinrichs v. Speaker of the House of Reps.*, 506 F.3d 584 (7th Cir. 2007)..................20

iii

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
132 S. Ct. 694 (2012)……………………………………..……………….............14

*In re Montgomery Cnty.*, 215 F.3d 367 (3d Cir. 2000)………………….............7

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)……………………….........10

*Joyner v. Forsyth Cnty.*, 653 F.3d 341(4th Cir. 2011)……………………….....12, 15

*Kedroff v. St. Nicolas Cathedral of Russian Orthodox Church*, 344 U.S. 94 (1952)........14

*Lee v. Weisman*, 505 U.S. 577 (1992) …………………………………….......22

*Lemon v. Kurtzman*, 403 U.S. 602 (1971)………………………………….......22

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992)……………………………....25

*Made in the USA Found. v. United States*, 242 F.3d 1300 (11th Cir. 2001)………....…14

*Marks v. United States*, 430 U.S. 188(1977)………………………………….......15

*Marsh v. Chambers*, 463 U.S. 783 (1983)…………………………………….passim

*Massachusetts v. EPA*, 549 U.S. 497(2007)…………………………………….12, 25

*McMillan v. Monroe Cnty.*, 520 U.S. 781 (1996)………………………………….......5

*Mettler v. Whitledge*, 165 F.3d 1197 (8th Cir. 1999)………………………………....7

*Miami Nation of Indians of Ind., Inc. v. U.S. DOI*, 255 F.3d 342 (7th Cir. 2001)…….....13

*Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)………………………….passim

*Nixon v. United States*, 506 U.S. 224 (1993)………………………………………….23

*Pelphrey v. Cobb Cnty.*, 547 F.3d 1263(11th Cir. 2008)………………………....15, 16, 21

*Pembauer v. City of Cincinnati*, 475 U.S. 469 (1986)………………………………....6

*Raines v. Bryd*, 521 U.S. 811(1997)…………………………………………….......25

*Republican Party of N.C. v. Martin*, 980 F.2d 943(4th Cir. 1992)……………………...3, 23

iv

*Rubin v. City of Lancaster*, 2013 WL 1198095 (9th Cir. Mar. 26, 2013)...........................15

*Simpson v. Chesterfield Cnty. Bd. of Sup'rs*, 404 F.3d 276 (4th Cir. 2005)........12, 17, 20

*Smith v. Reagan*, 844 F.2d 195 (4th Cir. 1988)..................................................13

*Steel Co. v. Citizens for Better Env't*, 523 U.S. 83(1998)..................................12

*Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402 (4th Cir. 2011)...............12

*Turner v. City Council of Fredericksburg*, 534 F.3d 352 (4th Cir. 2008)..................12

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
454 U.S. 464 (1982) ...............................................................................25

*Van Orden v. Perry*, 545 U.S. 677(2005)........................................................15

*Vieth v. Jubelirer*, 541 U.S. 267 (2004).......................................................14

*Watson v. Jones*, 80 U.S. (13 Wall.) 679 (1872).................................................14

*Wynne v. Town of Great Falls*, 376 F.3d 292 (4th Cir. 2004). ....................12, 17, 26

*Zivotofsky v. Clinton*, 132 S. Ct. 1421 (2012)................................................12

## STATUTES AND CONSTITUTIONAL PROVISIONS

42 U.S.C. § 1983 ..............................................................................2, 5, 7

U.S. CONST., amend I and XIV ....................................................................2

N.C. CONST., art. I, §§13, 19 ...................................................................2

## RULES

Fed. R. Civ. P.
    12(b)(1)..............................................................1, 11, 24, 28
    12(b)(6)..............................................................1, 3, 8, 10, 28

M.D.N.C. Local Rule 7.3..........................................................................1

Case 1:13-cv-00207-CCE-JLW   Document 23   Filed 04/29/13   Page 5 of 35

## OTHER AUTHORITIES

Brief for Theologians and Scholars of Religion as *Amici Curiae* Supporting Appellant, *Hinrichs v. Bosma*, 440 F.3d 393 (7th Cir. 2006) (Nos. 05-4604, 05-4781)..................................................................................20, 21

CATECHISM OF THE CATHOLIC CHURCH (1994).............................................................17

Jesse H. Choper, *The Political Question Doctrine: Suggested Criteria*, 54 DUKE L.J. 1457 (2005)...........................................................................22

Kenneth A. Klukowski, *In Whose Name We Pray: Fixing the Establishment Clause Train Wreck Involving Legislative Prayer*, 6 GEO. J.L. & PUB. POL'Y 219, 252–55, 268–69 (2008)...................................15

Martin Luther King, Jr., I Have a Dream (Aug. 28, 1963)...................................18

Martin Luther King, Jr., Loving Your Enemies, Nov. 17, 1957, *in* A KNOCK AT MIDNIGHT: INSPIRATION FROM THE GREAT SERMONS OF REVEREND MARTIN LUTHER KING, JR. (Clayborne Caron & Peter Halloran eds., 1998), *available at* http://mlk-kpp01.stanford.edu/ index.php/kingpapers/article/a_knock_at_midnight_contents/........18

NEW DICTIONARY OF THEOLOGY (Sinclair B. Ferguson et al. eds., 1988)..................17

NORMAN L. GEISLER, BAKER ENCYCLOPEDIA OF CHRISTIAN APOLOGETICS (1999)..............................................................................................17

Richard H. Fallon, *Judicially Manageable Standards and Constitutional Meaning*, 119 HARV. L. REV. 1274 (2006)...............................................................23

THE POPULAR ENCYCLOPEDIA OF APOLOGETICS (Ergun Caner & Ed Hinson eds., 2008). .................................................17

WAYNE GRUDEM, SYSTEMATIC THEOLOGY: AN INTRODUCTION TO BIBLICAL DOCTRINE (1994)......................................................................................17

WESTMINSTER CONFESSION OF FAITH (1646) .................................................17

Case 1:13-cv-00207-CCE-JLW   Document 23   Filed 04/29/13   Page 6 of 35

Defendant moves to dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) and submits this Memorandum in support of its Motion To Dismiss pursuant to Middle District of North Carolina Local Rule 7.3.

## INTRODUCTION

Rowan County is not liable for the prayers at issue in this suit. Rowan County has no prayer policy or custom with force of law. Even if there were any relevant policy or custom, it would be a custom of rotating through the Commissioners to offer a prayer or preside over a moment of silence, not to offer sectarian prayers. The choice of whether to pray, and what to pray, is made by individual Commissioners, not Rowan County.

Plaintiffs have sued the wrong Defendant by naming Rowan County. The actions Plaintiffs complain of—prayers they designate "sectarian"—are entirely the choices of five separate Commissioners acting in their individual—in contradistinction to official— capacities.[1] Should Plaintiffs choose to amend their Complaint to name those Commissioners, these new potential Defendants will present additional defenses and arguments to the Court at that time to prove there is no constitutional liability or infirmity at issue caused by their actions, either.

Yet even if the challenged conduct were fairly traceable to Rowan County, the relief Plaintiffs seek is foreclosed by the political-question doctrine. All prayers contain theological content, and the theological premises incorporated in each prayer statement vary in their specificity. There are no judicially discoverable and manageable standards

---

[1] Suing officials in their official capacities is just an alternative captioning for suing the government. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted).

1

by which a court can select one level of theological specificity versus another, whereby all theological statements more general than that level are sufficiently inclusive as to be "nonsectarian," but all narrower theological statements are so exclusive as to be "sectarian." Therefore the merits need not be addressed, because the Court does not have subject matter jurisdiction and because the Complaint fails to satisfy Plaintiffs' burden to meet standing requirements.

## STATEMENT OF THE CASE

Plaintiffs filed this action pursuant to 42 U.S.C. § 1983, the First and Fourteenth Amendments of the United States Constitution, and Article I, §§ 13 and 19 of the Constitution of North Carolina. Plaintiffs claim that Rowan County's practice of legislative prayer violates the Establishment Clause. Plaintiffs seek declaratory and injunctive relief and nominal damages.

## STATEMENT OF THE FACTS

Rowan County is a political subdivision of the State of North Carolina governed by a commission. The Commission is a duly elected and deliberative body. (Ex's A-E attached hereto). The Commission has no written or unwritten policy regarding Invocations. *Id.* at ¶ 7. However, the Commissioners have a long standing tradition of permitting each Commissioner, on a rotating basis, to either offer a prayer or have a moment of silence after an official meeting has been called to order. *Id.* at ¶¶5-6. Each Commissioner may choose to participate or not to participate in the rotation. *Id.* The content of any prayer is determined by the individual Commissioner. *Id.* at ¶ 8. The Invocation takes place after the meeting is called to order, though no citizen is required to

2

participate in the Invocation. *Id.* at ¶¶ 4, 14, 16. All attendees have the right to remain seated, leave the room, or arrive after the Invocation has been given and participate only in the Pledge of Allegiance and the business portion of the meeting. *Id.*

Plaintiffs Nancy Lund, Liesa Montag-Siegel, and Robert Voelker are citizens and residents of Rowan County, North Carolina. Dkt. 1, Pl's Compl. ¶¶ 8, 10, 12. Plaintiffs filed their Complaint seeking declaratory and injunctive relief and nominal damages against Defendant on March 12, 2013. Dkt. 1. Plaintiffs alleged in their suit that the Defendant's Invocation prayers violate their rights under the First and Fourteenth Amendments to the United States Constitution and Article I, ¶¶ 13 and 19 of the Constitution of State of North Carolina. *Id.* at ¶ 4.

## QUESTIONS PRESENTED BY MOTION

The issues Defendant now brings before the Court are whether the Plaintiffs' suit should be dismissed for failure to state claim upon which relief can be granted and whether the case should be dismissed for want of subject matter jurisdiction because Plaintiffs' requested relief is foreclosed by the political-question doctrine and because Plaintiffs lack standing.

## ARGUMENT

I. **THE CASE SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) BECAUSE IF *MONELL* LIABILITY APPLIES AT ALL IN THIS SUIT, IT IS TO A CUSTOM OF ALLOWING LEGISLATIVE PRAYERS AS PERMITTED BY *MARSH V. CHAMBERS.***

Defendant Rowan County is not liable in this suit under *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because although the practice here is longstanding and

3

well-settled, it carries no force of law. If *Monell* liability attaches to anything in this suit, it is only to a custom of rotating opportunities for prayer or silent reflection as expressly permitted by *Marsh v. Chambers*, 463 U.S. 783 (1983) (holding legislative prayer violates the Establishment Clause if government exploits the prayer opportunity to proselytize or advance one faith, or disparage others faiths).

A. **Plaintiffs bear the burden of proving their purported injuries are due to a policy or custom of Rowan County instead of individual Commissioners.**

Plaintiffs must show that Rowan County has either an official policy or a *Monell* custom of offering sectarian prayers. Plaintiffs cannot merely show there is a policy or custom of prayer, as those would be expressly authorized by *Marsh*. They must instead prove that decisions to offer prayers with content that Plaintiffs call "sectarian" is attributable to Rowan County, rather than the five individual Commissioners whom Plaintiffs have thus far elected not to name as Defendants in this lawsuit.

This Court cannot accept as true Plaintiffs' conclusory statements that Rowan County has a policy or custom of sectarian prayer. While pleadings need not contain "detailed factual allegations," they "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Plaintiffs cannot merely claim the prayers cited in the Complaint are pursuant to a policy or custom. The "district court must retain the power to insist upon some specificity in pleading before allowing" the suit to proceed. *Id.* at 558. Yet while they quote several prayers offered by specific Commissioners, they proffer no evidence of any injurious policy of Rowan County. Plaintiffs' "naked

4

assertions devoid of further factual enhancement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation and editing marks omitted), of the existence of a policy or custom is insufficient to defeat a Motion to Dismiss.

Taken with the arguments set forth below, Plaintiffs have not carried this burden, and therefore this suit should be dismissed.

**B.      There is no liability here under *Monell* because the practice does not carry the force of law.**

Unlike state governments, local governments enjoy no sovereign immunity and therefore can be liable for civil rights violations under 42 U.S.C. § 1983. This liability arises when a local government implements or executes an unconstitutional "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. The *Monell* Court explicitly cabined its holding by adding, "Congress did not intend municipalities to be held liable unless action pursuant to *official municipal policy of some nature caused* a constitutional tort." *Id.* at 691 (emphasis added). Absent a written policy, *Monell* applies only if Plaintiffs "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality) (citation and internal quotation marks omitted); *accord McMillan v. Monroe Cnty.*, 520 U.S. 781, 796 (1996). And that custom must have *caused* the injury.

5

Plaintiffs cannot claim the Commissioners' tradition of prayers or silent moments is legally-binding County policy, since Plaintiffs proffer no evidence of any official policy ever being adopted.

So the only possibility for liability under *Monell* is for a "custom," that rises to the level of being "official municipal policy of some nature." *Monell*, 436 U.S. at 691. Such a custom must be: (1) "permanent," (2) "well settled," and (3) have "force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970). A plurality of the Court made clear that this is still the standard subsequent to *Monell*, *Praprotnick*, 485 U.S. at 127 (plurality), later elevated to a holding of the Court. *See McMillan*, 520 U.S. at 796.

Only two of those three elements are satisfied here. This tradition dates back decades, and can be regarded as permanent. It is also regularly observed and is not disputed by anyone aside from Plaintiffs, to the best of Defendant's knowledge, so this tradition may be regarded as well settled. But this tradition does not carry the force of law; it does not affect the legal rights or obligations of any citizen or entity in Rowan County, nor does it impact policy deliberations beyond acting as a solemnizing activity to establish optimal decorum and remind the Commissioners to approach their work with integrity and diligence. As such, it does not fulfill the third element necessary for *Monell*.

*Monell* liability for customs—as opposed to written policies—typically arises from situations involving executive officials. *See, e.g., Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (finding a county liable for actions taken pursuant to decisions of a prosecutor and sheriff). It is less common for a legislative policymaking body such as a City Council or County Commission to be liable without a formally-adopted written

6

policy, as it is much harder for legislators to exercise legislative power with no formal adoption of official policy that carries the force of law. *See, e.g.*, *Praprotnik*, 485 U.S. at 131–32 (rejecting *Monell* liability when plaintiff failed to prove the existence of an unconstitutional municipal policy or custom).

This should not be surprising. Many executive officers can unilaterally make policy determinations carrying the force of law. While Governors and Mayors are self-evident examples, such power can also be held by department heads, police chiefs, county sheriffs, and also such senior officials as in the cases cited above. Municipalities can even be held liable when lower-level executive officers carry out such a policy or custom. *See, e.g.*, *Mettler v. Whitledge*, 165 F.3d 1197 (8th Cir. 1999) (sheriff deputies). When local-government hybrid bodies with both executive and legislative powers are held liable under *Monell*, it is typically for making administrative actions while the body is acting in its executive role. *See, e.g.*, *In re Montgomery Cnty.*, 215 F.3d 367, 370–71 (3d Cir. 2000) (imposing disciplinary action on an employee). As the Seventh Circuit explained:

> *Monell*'s effort to limit municipal liability under § 1983 to acts that carry out local policy entails distinguishing legislative from executive functions—a distinction always present in principle even though blurry in practice. "Responsibility for making law or setting policy"—the objective under *Praprotnik* of our search through local law—is authority to adopt rules for the conduct of government. Authority to make a final decision need not imply authority to establish rules.

*Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992).

By contrast, often legislators only exercise legislative power collectively. Courts cite "the enactment of legislation as the prototypical government conduct that gives rise

7

to liability under *Monell*'s 'policy or custom' requirement." *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 299 (4th Cir. 1995). Yet Rowan County enacted no legislation. It has adopted no policy. It has a tradition of rotating the option of prayer or reflection, but that is not a custom with force of law. As with the situation involving St. Louis in *Paprotnik*, Plaintiffs cannot prove the existence of any custom with actual force of law pertaining to any Commissioner's legislative prayers.

Plaintiffs do not cite any enactment, document, or vote of the Commission, whereby Rowan County adopted any policy with force of law. There is a longstanding tradition of each Member offering prayer or conducting a moment of silent reflection, but it carries no force of law because (1) it does not alter the legal rights or obligations of any citizen of Rowan County, (2) it is not relevant to the outcome of any policy question, and (3) Plaintiffs proffer no evidence, of any type, of any adverse governmental consequences resulting from any Commissioner's individual choice to pray at any meeting, or the specific content of any prayer. Just because Plaintiffs are offended by prayer or certain prayer content does not mean those prayers are endowed with the force of law.

This Court should therefore dismiss this suit pursuant to FED. R. CIV. P. 12(b)(6) because Plaintiffs have stated a claim that is not traceable to the sole named Defendant in this suit.

### C. The only custom here to which *Monell* could apply is to allow legislative prayers as permitted by *Marsh v. Chambers*.

If this Court concludes that *Monell* must attach to a tradition that has been consistently followed for many years, even though it carries no force of law, then the

8

practice at issue is simply to allow each Commissioner to offer a prayer or conduct a moment of silence on a rotating basis. It is *not* to hold sectarian prayer. As the Affidavits from each of the five Commissioners evince, each Commissioner individually decides whether to pray at all, and if so has complete autonomy regarding the content of the prayer. Ex's. A-E ¶¶ 5-19. The fact that many prayers contain content Plaintiffs call sectarian is entirely attributable to choices individually made by each Commissioner, without any directive, policy, expectations, pressure, or even any collaboration or consultation between the Commissioners. *See id.* These are the separate actions of five individual officials making similar choices during meetings, not any form of collective expression and most certainly not the actions of Rowan County.

Yet legislative prayers are constitutional. *Marsh*, 463 U.S. at 789–90. The prayers may all be offered by a single adherent of a single Christian denomination. *Id.* at 792–94. Rowan County's tradition of allowing each Commissioner to choose yields results more religiously diverse than the one upheld by the *Marsh* Court, as the five Commissioners here are followers of three different Christian denominations: United Methodist, Independent Baptist, and Southern Baptist – with the potential for even greater religious diversity. Ex's. A-E ¶¶ 1- 13.

The burden is on the Plaintiffs to show that an alleged constitutional violation was caused by the municipality's policy or custom, rather than the acts of individual government actors. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009). This is because "municipalities [like Rowan County] are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their

9

agents," *Auriemma*, 957 F.2d at 399, such as County Commissioners. "*Monell* and its progeny stand for the proposition that a local government entity will be responsible for the unconstitutional actions of its employees only if those actions were taken pursuant to official policy or custom." *Eversole v Steele*, 59 F.3d 710, 715 (7th Cir. 1995) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989)). "Not only must the plaintiffs show [Rowan County] as [an] entit[y] caused the constitutional violation, but they must also show a direct causal link between the custom and the constitutional deprivation. This is necessary to avoid de facto respondeat superior liability explicitly prohibited by *Monell*." *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 543 (6th Cir. 2004) (internal citations and quotation marks omitted).

Plaintiffs could make a plausible claim that the content of the prayers offered by the five Commissioners of Rowan County violates the Establishment Clause. That claim should fail on the merits, as the prayers offered by the individual Commissioners are consistent with *Marsh*, but at least such a Complaint would state a cognizable claim that could be litigated. Such a lawsuit should still be dismissed, but on other grounds not currently before the Court. Should Plaintiffs amend their Complaint to name the proper Defendants, supplemental briefing will be filed setting forth additional grounds for dismissal. But if Plaintiffs insist that their alleged injury is only caused by an official written or unwritten policy of Rowan County, it is clear this Court should dismiss now.

This Court should therefore dismiss this suit under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted, because the only actions arguably traceable to the Defendant are entirely within the parameters authorized by

10

*Marsh*. At the outside, *Monell* liability could attach only to Rowan County's longstanding practice of permitting each Commissioner to choose whether to have a time of prayer or silent reflection. Since such a practice is indisputably allowed by *Marsh*, Plaintiffs have not stated a plausible claim that is cognizable under the law.

## II. THIS COURT LACKS SUBJECT-MATTER JURISDICTION UNDER F.R.C.P. 12(b)(1)BECAUSE SPECIFIC RELIEF SOUGHT BY PLAINTIFFS IS FORECLOSED BY THE POLITICAL-QUESTION DOCTRINE.

The previous points notwithstanding, this Court lacks subject-matter jurisdiction over this suit under the political-question doctrine. Although the Court has jurisdiction over any actionable policy or custom of Rowan County, and may be able to fashion various forms of relief if such a policy is unconstitutional, the Court nonetheless lacks jurisdiction to prospectively define "sectarian" prayers and distinguish them from "nonsectarian" prayers, so as to bar the former and permit the latter.

This issue turns on one question: Can this Court formulate a definition and judicial standard for "sectarian prayer" in purely legal terms that can be consistently and objectively applied by the judiciary to govern prayers, whereby this Court can reliably designate every prayer as either "sectarian" or "nonsectarian," so as to permit the former while forbidding the latter as violating the Establishment Clause? If the Court answers in the negative, then the political-question doctrine applies here, and this suit must be dismissed for want of jurisdiction.

11

**A.** **The political-question doctrine applies when courts cannot formulate a plaintiff's requested relief exclusively with legal principles and standards.**

The political-question doctrine is a narrow exception to the general rule that federal courts should decide issues presented to them in litigation. *Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1427 (2012) (citation omitted). This threshold issue is jurisdictional in nature, *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007); *Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402, 407 n.9 (4th Cir. 2011), and thus must be resolved before proceeding to the merits, *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94–95 (1998). The burden is on the Plaintiffs to prove this Court has jurisdiction. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). And as with standing, Plaintiffs must prove there are no jurisdictional defects "with respect to each form of relief sought." *City of Los Angeles v. Lyons*, 461 U.S. 95, 125 (1983).

This jurisdictional issue was not before the Court in *Marsh*, as the question there concerned the constitutionality *vel non* of legislative prayers, not whether sectarian prayers were forbidden but nonsectarian prayers are acceptable. It was instead the Fourth Circuit that started drawing such distinctions over the past nine years. *See Joyner v. Forsyth Cnty.*, 653 F.3d 341, 347–49 (4th Cir. 2011); *Turner v. City Council of Fredericksburg*, 534 F.3d 352, 356 (4th Cir. 2008); *Simpson v. Chesterfield Cnty. Bd. of Sup'rs*, 404 F.3d 276, 278, 284 (4th Cir. 2005); *Wynne v. Town of Great Falls*, 376 F.3d 292, 301–02 (4th Cir. 2004).

That line of cases does not establish that this Court has jurisdiction. The Fourth Circuit never considered whether the political-question doctrine applies when the sort of

judicial relief Plaintiff seeks is requested. "When a jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1448 (2011). The Supreme Court has instructed lower courts not to read silence on jurisdictional issues as license not to fully consider jurisdictional issues raised in a later case. *E.g.*, *Hagan v. Lavine*, 415 U.S. 528, 535 n.5 (1974).

In *Baker v. Carr*, 369 U.S. 186 (1962), the Supreme Court identified six hallmarks of political questions, *id.* at 217, "the presence of any one of which may render an issue a nonjusticiable political question," *Smith v. Reagan*, 844 F.2d 195, 198 (4th Cir. 1988). The question becomes whether a court can fashion relief without crossing any of those six lines. "Discovery that any one of these factors is inextricable from a controversy denotes the presence of a political question and renders it nonjusticiable." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 950 (4th Cir. 1992) (citation omitted). Of those six, the factor most relevant here is a "lack of judicially discoverable and manageable standards for resolving" an issue arising from the decisions of political actors. *Baker*, 369 U.S. at 217. In determining when this doctrine applies "the lack of satisfactory criteria for judicial determination [is a] dominant consideration[]." *Smith*, 844 F.2d at 198. As the Seventh Circuit explained, the doctrine applies to questions that "are not amenable to judicial resolution because the relevant considerations are beyond the courts' capacity to gather and weigh." *Miami Nation of Indians of Ind., Inc. v. U.S. DOI*, 255 F.3d 342, 347 (7th Cir. 2001). Or as the Eleventh Circuit framed the inquiry, "Would resolution of the

13

question demand that a court move beyond areas of judicial expertise?" *Made in the USA Found. v. United States*, 242 F.3d 1300, 1312 (11th Cir. 2001) (citation omitted).[2]

Although some *Baker* factors apply only to matters concerning the political branches of the Federal Government (*e.g.*, showing respect to a coordinate branch of government), the Supreme Court has recently reaffirmed that the political-question doctrine also applies to non-federal political actors. The uncontestable example is the *Baker* factor implicated here, the lack of judicial standards. *See Vieth v. Jubelirer*, 541 U.S. 267 (2004). In *Vieth*, the Court dismissed a gerrymandering claim against the Pennsylvania legislature. *Id.* at 305–06. Justice Scalia wrote for a plurality of the Court:

> The second [*Baker* factor—lack of judicially discoverable and manageable standards] is at issue here, and there is no doubt of its validity. "The judicial Power" created by Article III, § 1, of the Constitution is not *whatever* judges choose to do, or even *whatever* Congress chooses to assign them. It is the power to act in the manner traditional for English and American courts. One of the most obvious limitations imposed by that requirement is that judicial action must be governed by *standard*, by *rule*. . . law pronounced by the courts must be principled, rational, and based upon reasoned distinctions.

*Id.* at 278 (emphases in original).

---

[2]     The Supreme Court is especially rigorous in examining whether there is a lack of judicially-manageable standards where religious matters are concerned. Federal courts cannot second-guess decisions of clergy on matters of "faith and doctrine." *Kedroff v. St. Nicolas Cathedral of Russian Orthodox Church*, 344 U.S. 94, 116 (1952). When a clergyman determines certain prayer language to be appropriate or required by his faith, it is a question of religious belief beyond the reach of the courts. *See Watson v. Jones*, 80 U.S. (13 Wall.) 679, 727 (1872). These cases suggest it transgresses this proscription for any judge to draw lines banning certain prayers as "sectarian" while allowing others.

    These principles were recently employed to recognize a ministerial exception to federal employment laws. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 9072–07 (2012). As the Supreme Court's latest guidance on these matters were given subsequent to *Joyner*, it is all the more important for this Court to heed how these principles caution judicial restraint in such a situation as this.

14

Justice Kennedy did not join the four Justices' plurality opinion that all redistricting gerrymandering claims are per se nonjusticiable and therefore that *Davis v. Bandemer*, 478 U.S. 109 (1986), should be overruled. But he concurred in the judgment that there were no judicially manageable standards in that case and so the suit must be dismissed as a nonjusticiable political question. *Id.* at 306–08 (Kennedy, J., concurring in the judgment). Five Justices agreed that the political-question doctrine applies to non-federal political decisions or policies when judicially discoverable and manageable standards to craft relief are wanting. That holding is binding on this Court. *See Marks v. United States*, 430 U.S. 188, 193 (1977).

The Courts of Appeals in other circuits have increasingly employed language that sounds in the political-question doctrine, as discussed below. While the parties in those cases never raised the political-question issue to the courts, and so none of the courts considered the jurisdictional implications, this language indicates that the political-question doctrine is centrally implicated in this suit.

**B.** **This Court cannot prospectively define every prayer as either sectarian or nonsectarian using only judicially-manageable terms and legal principles.**

Although the Fourth Circuit has cautioned against *frequent* sectarian references, *Joyner*, 653 F.3d at 349, 353, it did not hold that *Marsh* requires prayers to be nonsectarian per se. *Pelphrey v. Cobb Cnty.*, 547 F.3d 1263, 1266–67, 1271 (11th Cir. 2008); *accord Rubin v. City of Lancaster*, 2013 WL 1198095, at *4-*8 (9th Cir. Mar. 26, 2013; *see also Van Orden v. Perry*, 545 U.S. 677, 688 n.5 (2005) (plurality). But even if *Marsh* is construed in that fashion, the federal courts have never developed judicially-

15

manageable standards for delineating sectarian prayers from nonsectarian prayers, which ineluctably follows from the reality that courts *cannot* formulate such standards. Kenneth A. Klukowski, *In Whose Name We Pray: Fixing the Establishment Clause Train Wreck Involving Legislative Prayer*, 6 GEO. J.L. & PUB. POL'Y 219, 252–55, 268–69 (2008); *see also Pelphrey*, 547 F.3d at 1267 ("Whether invocations of 'Lord of Lords' or 'God of Abraham, Isaac, and Mohammed' are 'sectarian' is best left to theologians, not courts of law."). The *dictum* in *County of Allegheny v. ACLU of Greater Pittsburgh*, 492 U.S. 573, 603 (1989) (saying that *Marsh* upheld the prayers at issue because the prayer-giver removed references to Jesus), cannot be read to mean the opposite, since it would set this Court an impossible task. And the reason that task is an impossible one is why this Court lacks jurisdiction to fashion the relief Plaintiffs request.

Plaintiffs' argument is predicated on the assumption that some prayers are sectarian while others are not. Contrary to this assumption, from a judicial perspective there is no *legal* line demarcating the boundary between sectarian and nonsectarian prayers. While Plaintiffs cast Christianity as a "sect," and therefore that Christian prayers are sectarian prayers, this cannot be a legal standard since the reality is Christianity encompasses multitudinous religious denominations. Some of these are not even accepted as Christian by each other, further complicating a court's definitional challenge.

It seems that prayers tend to be called sectarian when they express beliefs with which a person disagrees or thinks "too few" people agree with, but accept as nonsectarian prayers that "enough" people agree with. Every theological proposition entails some level of specificity, and every such assertion of belief will include some

16

people but exclude others. To illustrate the futility of a federal court attempting to define "sectarian prayers," consider these examples where a person could regard the prayer as sectarian, while others may not:

- A Baptist who hears a Presbyterian minister reference a newborn in the town being brought into covenantal blessing with God through baptism, because Baptists only baptize individuals upon a verbal profession of Christian faith.[3]

- Either a Baptist or a Presbyterian—or for that matter any Protestant—who hears a Catholic priest invoke the Virgin Mary in prayer, since Protestants typically do not address prayers to Jesus' mother.[4]

- While a prayer "in Jesus' name" should not be sectarian to either Protestants or Catholics, it may be sectarian to a person of Jewish faith.

- While a prayer referencing Israel as a special people chosen by God by virtue of God's blessing to Jacob could unify both Christians and persons of the faith, it might be sectarian to a Muslim.

- A prayer to "God" could unify Christians, Jews, and Muslims, but could be sectarian to Wiccans such as the plaintiffs in *Wynne* and *Simpson*, who either worship a goddess—a feminine being rather than masculine—or are polytheistic (believing in many gods), or pantheistic (believing in a divine being that is not actually a person).[5]

- Deists believe in a personal god, but one that created the world and set it in motion, and never interferes in its ongoing activities, and so could view as sectarian a prayer calling for miracles or divine intervention.[6]

- Buddhists are pantheists that do not recognize a personal god at all, and could regard any prayer addressed to a personal being as sectarian.[7]

---

[3]    WAYNE GRUDEM, SYSTEMATIC THEOLOGY: AN INTRODUCTION TO BIBLICAL DOCTRINE 967–71, 975–80 (1994).

[4]    *Compare* CATECHISM OF THE CATHOLIC CHURCH §§ 963–75, 2673–82 (1994) *with* WESTMINSTER CONFESSION OF FAITH ch. XXI, ¶¶ 1–2 (1646) [Presbyterian].

[5]    *See Simpson*, 404 F.3d at 280; *Wynne*, 376 F.3d at 294; THE POPULAR ENCYCLOPEDIA OF APOLOGETICS 493–95 (Ergun Caner & Ed Hinson eds., 2008).

[6]    *See* NORMAN L. GEISLER, BAKER ENCYCLOPEDIA OF CHRISTIAN APOLOGETICS 189–92 (1999).

[7]    NEW DICTIONARY OF THEOLOGY 488 (Sinclair B. Ferguson et al. eds., 1988).

- And of course atheists believe there is no god, and therefore could regard any prayer of any sort sectarian regardless of content.

There are no rules of law by which a judge can objectively select one level of theological specificity versus another, designating all theological propositions narrower than that "sectarian," and all propositions more general than that level "nonsectarian." There are no legal principles whereby any federal court can draw a line at one level of specificity out of the eight enumerated above, designating any theological statement more specific than that forbidden by the Establishment Clause, but any theological statement more general permissible in legislative prayer. Klukowski, *supra*, at 252–55.

Another series of hypotheticals illustrations another dimension of the insoluble difficulty this Court faces in discovering judicially-manageable standards in this suit. Consider the following examples of statements a prayer-giver could say during prayer:

- "As Martin Luther King Jr. said on the steps of the Lincoln Memorial, 'I have a dream that [our children] will one day live in a nation where they will not be judged by the color of their skin but by the content of their character.'[8] Lord, move our hearts to make that dream a reality in our County."

- "As Martin Luther King Jr. said on the steps of the Lincoln Memorial, 'I have a dream that one day every valley shall be exalted, every hill and mountain shall be made low. The rough places will be made plain, and the crooked places will be made straight. And the glory of the Lord shall be revealed, and all flesh shall see it together.'"[9]

- "As Martin Luther King, Jr., once said, 'Now there is a final reason I think that Jesus says, "Love your enemies." It is this: that love has

---

[8]  Martin Luther King, Jr., I Have a Dream (Aug. 28, 1963).
[9]  *Id.* (quoting a prophesy about Jesus from *Luke* 3:5–6).

18

within it a redemptive power.'[10] Lord, help us to love, so that we redeem our town."

- "As Jesus says, 'Love your enemies and pray for those who persecute you.' Lord, give us such charitable and forgiving hearts on this Commission and throughout our County, that we may live in harmony and mutual prosperity." (quoting *Matthew* 5:44).

- "Lord, this week after our colleague Commissioner John Doe's passing, we remember that Jesus declared, 'I am the resurrection and the life.' So we ask you welcome our friend John, and look forward to the day when we may see him again." (quoting *John* 11:25).

Each of these references has moral and religious dimensions, and is more focused on Jesus Christ and more exclusive in its Christian content that the one before it (with the first reference having no direct reference to Jesus). As with the previous set of examples, there are no neutral principles of law whereby this Court can draw a distinguishing line that would permit some of these statements but bar the others.

There are other possibilities as well. Prayers may reference prominent historical figures, and could reference Jesus as a moral philosopher, just as one could reference other religious figures like Buddha, or non-religious philosophers such as Gandhi. Some could reference Jesus' teaching regarding personal virtue or charitable giving. Some may reference multiple religious figures together—*e.g.*, Jesus, Moses, and Mohammed—which would seem nonsectarian, but perhaps be more assertive in its spirituality in a way that could nonetheless make nonbelievers feel excluded. Each of these has countervailing

---

[10] Martin Luther King, Jr., Loving Your Enemies, Nov. 17, 1957, *in* A KNOCK AT MIDNIGHT: INSPIRATION FROM THE GREAT SERMONS OF REVEREND MARTIN LUTHER KING, JR. (Clayborne Caron & Peter Halloran eds., 1998), *available at* http://mlk-kpp01.stanford.edu/ index.php/kingpapers/article/a_knock_at_midnight_contents/ (last visited Apr. 22, 2013) (quoting Jesus' Sermon on the Mount, *Matthew* 5:44).

19

factors as to whether a court might call them "sectarian," and further complicates judicial efforts to define that term without making theological judgments.

The courts are deeply divided on how to answer such questions. *Simpson* cites "King of Kings" and "Lord of Lords" as "wide and embracive terms" that are acceptable in legislative prayer. *Simpson*, 404 F.3d at 284. But that terminology in the Bible is exclusively given to Jesus Christ, not as any sort of moral philosopher, but as the ruler of the universe in the Book of Revelation, coming to save those who believe in him, judge all humanity, and rule over them forever. *See Revelation* 17:14, 19:16. One is hard-pressed to think of a designation that is more purely Christian or more forcefully excludes nonbelievers. Simpson might then imply courts look only at the facial meaning of the words, which would tend to exonerate terms like "King of Kings" as nonsectarian, and presume the audience does not know their context or meaning, which would swiftly lead to the contrary conclusion that these terms are narrowly sectarian. Or perhaps it makes a difference that these verses alluded to Jesus, but did not reference him by name.

Another example held that the Constitution allows praying in the name of Allah, but not in the name of Jesus. *Hinrichs v. Bosma*, 2005 U.S. Dist. LEXIS 38330, at *20–*21 (S.D. Ind. Dec. 28, 2005) (order on post-judgment motions), *vacated sub nom. for lack of standing, Hinrichs v. Speaker of the House of Reps.*, 506 F.3d 584, 600 (7th Cir. 2007). Yet on appeal, a group of theologians filed a brief asserting that the district judge was incorrect in concluding that "Allah" is simply a generic reference to "God" in Arabic (the literal translation of the word), instead positing that when a Muslim Imam offers a prayer to Allah he is specifically appealing to the Islamic deity, whose prophet is

Mohammed and whose word is the Quran, not a generic "God." Brief for Theologians and Scholars of Religion as *Amici Curiae* Supporting Appellant, *Hinrichs v. Bosma*, 440 F.3d 393 (7th Cir. 2006) (Nos. 05-4604, 05-4781), at 20–25. A federal judge is not competent to make independent theological judgments that trump the expert view of theologians, nor to take sides in the event that each party has dueling theologians' briefs.

These hypotheticals could go on *ad infinitum*. They illustrate the insuperable challenge that would be imposed on Rowan County's Commissioners or any Member of any deliberative legislative body attempting to prospectively comply with a court order against sectarian prayers, in that none of them could reliably craft a prayer *ex ante* that is unquestionably nonsectarian. And the reason the Commissioners of Rowan County cannot write such prayers is because neither this Court nor any other court can formulate a rule using only legal standards that government officials can follow.

Several courts have highlighted the intractable problem of courts attempting to distinguish sectarian from nonsectarian prayers without crossing the line from legal principles to theological doctrines. As the Eleventh Circuit reasoned:

> We would not know where to begin to demarcate the boundary between sectarian and nonsectarian expressions, and the taxpayers have been opaque in explaining that standard. Even the individual taxpayers cannot agree on which expressions are "sectarian." . . . The taxpayers' counsel fared no better than his clients in providing a consistent and workable definition of sectarian expressions. . . . The difficulty experienced by taxpayers' counsel is a glimpse of what county commissions, city councils, legislatures, and courts would encounter if we adopted the taxpayers' indeterminate standard.

*Pelphrey*, 547 F.3d at 1272; *see also Galloway*, 681 F.3d at 28–29 (noting that attempting to draw lines between sectarian and nonsectarian prayers implicates doctrinal issues).

21

This is consistent with Justice Souter's description of the dangers of trying to impose a nonsectarian requirement, which he termed "nonpreferentialism:"

> [N]onpreferentialism requires some distinction between "sectarian" religious practices and those that would be, by some measure, ecumenical enough to pass Establishment Clause muster. Simply by requiring the enquiry, nonpreferentialists invite the courts to engage in comparative theology. I can hardly imagine a subject less amenable to the competence of the federal judiciary, or more deliberately to be avoided where possible.

*Lee v. Weisman*, 505 U.S. 577, 616–17 (1992) (Souter, J., concurring). This concurrence for three of the five Justices in the *Lee* majority explains why the Court explicitly rejected the invitation to define "nonsectarian prayer, prayer within the embrace of what is known as the Judeo-Christian tradition," *Id.* at 589 (majority opinion). Rather than try to distinguish sectarian from nonsectarian prayer, the Court realized it could draw no such distinction, and banned all high school graduation benedictions as a violation of the *Lemon* test, from *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971).[11]

Federal courts cannot devise a workable rule that resolves the finely-nuanced theological quandaries over tracing the proper contours of sectarianism. Such complex questions of how to properly classify the composition of prayers are best left to theological professionals, as they are unsuitable for judicial resolution. *Cf. Gilligan v. Morgan*, 413 U.S. 1, 10 (1973); *see also* Jesse H. Choper, *The Political Question Doctrine: Suggested Criteria*, 54 DUKE L.J. 1457, 1469–70 (2005). Although there are

---

[11]     That does not impede legislative prayers, since the Court in *Marsh* expressly declined to apply the *Lemon* test to legislative prayers. *Marsh*, 463 U.S. at 792 – 95. But the reasoning from *Lee* is fully applicable to judicial attempts to define sectarian prayer.

well-established theological principles on which such distinctions can be made, there are no corresponding legal principles a federal judge can discover or apply.

"According to entrenched Supreme Court precedent, disputes that do not lend themselves to resolution under judicially manageable standards present nonjusticiable political questions." Richard H. Fallon, *Judicially Manageable Standards and Constitutional Meaning*, 119 HARV. L. REV. 1274, 1275 (2006). If courts cannot decide a case based on legal principles, then the matter is beyond the Article III jurisdiction of the courts, because the ability to articulate a judgment in legal terms is every bit as much an element of a "case or controversy" as standing, ripeness, and the absence of mootness. It can be frustrating to litigants, as "perhaps more than any other constitutional doctrine, this one recognizes explicitly that a gap can exist between the meaning of constitutional guarantees, on the one hand, and judicially enforceable rights, on the other." *Id.* at 1276.

Just last Term the Court reaffirmed that "the political question doctrine [is] implicated when there is a lack of judicially manageable standards for resolving the question before the Court." *Zivotofsky*, 132 S. Ct. at 1428 (quoting *Nixon v. United States*, 506 U.S. 224, 228 (1993)) (internal citation and quotation marks omitted). This Court has jurisdiction to adjudicate various matters involving legislative prayer. However, just as a court can identify an equal-protection violation from gerrymandering yet not have jurisdiction to order relief, this Court's jurisdiction ends here where judicial standards are lacking to articulate a legal standard as the basis for judgment. "Courts should remain reticent to become ensnared in the 'political thicket' of adjudicating" which prayers are sectarian. *Republican Party of N.C.*, 980 F.2d at 958 (citation omitted).

23

Judicial line-drawing is fraught with peril where religion is concerned, adding an insurmountable hurdle to the political-question analysis. Whatever criteria a court might devise in other contexts, here it would require this Court to consider various religious beliefs, what theological propositions are entailed by a particular religious belief expressed in prayer language, how widely-held the belief is, or perhaps how excluded non-adherents are likely to feel. Courts would then decide which beliefs sufficiently satisfy enough of these factors to be permitted in prayer, while banning others. Far more problematic than merely a lack of neutral legal principles upon which to make these unseemly designations, federal judges would actually be engaging in a theological police action in the face of two express constitutional prohibitions regarding establishment and free exercise. The lack of judicial standards for evaluating sectarianism in legislative prayer is not limited to the challenges of formulating intelligible standards; rather, such standards cannot be formulated without violating the Establishment Clause.

This Court should therefore dismiss this suit under FED. R. CIV. P 12(b)(1), as the Court lacks subject-matter jurisdiction under the political-question doctrine to articulate in judicially discoverable and manageable standards a workable rule to differentiate sectarian and nonsectarian prayers.

## III. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THE REQUIREMENTS NECESSARY TO ESTABLISH ARTICLE III STANDING

Plaintiffs have failed to satisfy standing requirements under Article III of the U.S. Constitution; therefore, the matter should be dismissed for lack of subject matter jurisdiction.

24

The Supreme Court has stated that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp.*, 547 U.S. at 341-42 (quoting *Raines v. Bryd*, 521 U.S. 811, 818 (1997)) "Article III standing ... enforces the Constitution's case-or-controversy requirement." *Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 11 (2004). The "core component" of the requirement that a litigant have standing to invoke the authority of a federal court "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

In order to have standing "a litigant must demonstrate that he has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *EPA*, 549 U.S. at 517 (internal citations omitted). In *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 485 (1982), the Supreme Court made clear that "the psychological consequence presumably produced by an observation of conduct with which one disagrees" does not constitute "injury sufficient to confer standing under Art. III." Plaintiffs have failed to meet that standard.

Plaintiffs allege a constitutional injury based on the fact that they were subjected to prayers they consider sectarian and offensive when attending meetings of the Rowan County Commissioners. Dkt. 1, ¶¶ 9, 11, 13. They allege that these prayers make them feel excluded. *Id*. However, they allege no concrete or particularized injuries traceable to any Rowan County policy or practice. The Fourth Circuit has previously granted standing

for plaintiffs to challenge legislative prayer policies and practices where the commissioners themselves have offered the prayers; however, those situations are distinguishable from the case at bar. *Wynne,* 376 F.3d at 292.

In *Wynne,* the plaintiff demonstrated that, in addition to hearing prayers at town meetings, she was personally taunted and humiliated by the defendants when she refused to join in the prayers. *Id.* at 295. If she left the meeting to avoid the prayers, she was not permitted to return to participate in the business of the town council. *Id.* Furthermore, the council members "insisted upon invoking the name 'Jesus Christ' to the exclusion of other deities associated with any other particular religious faith." *Id.* at 295, 301. Unlike the facts of *Wynne,* Rowan County has no policy or custom requiring any Commissioner to offer any particular type of Invocation during the rotation. Plaintiffs have not alleged any actual or particularized injury directed at them by any Rowan County Commissioner as was the situation in *Wynne.* Even after expressing their dislike of the Invocations, the Plaintiffs have continued to participate in Commission meetings on the same basis as any other citizen. Dkt. 1 ¶¶ 8, 10, 12. Plaintiffs could easily avoid hearing any objectionable prayers if they chose to do so.

No particularized injuries similar to those in *Wynne* are alleged by the Plaintiffs. Unlike the plaintiffs in *Wynne,* Plaintiffs do not allege that Rowan County Commissioners have ever taken any injurious action against them personally for objecting to the prayers nor have they ever been prevented from participating in Commission meetings as a result of their non Christian status or their dislike of Christian prayers. Dkt. 6, Pl's Mem. for Prelim. Inj. Ex. A ¶¶ 4, 5 ,7, Ex. B ¶¶ 5-7, Ex. C ¶¶ 4, 5,

26

12. The Plaintiffs merely claim that they subjectively feel offended and excluded and they fear, without any supporting facts, that their participation in Commission meetings might be compromised by their objection to the prayers. Dkt. 6, Ex's A-C ¶¶ 9-13. Absent more, mere contact with legislative prayer under the circumstances that exist in Rowan County does not provide sufficient injury in fact to confer standing on these Plaintiffs.

There is no indication in Plaintiffs' Complaint that they have sustained any injury in fact that is concrete and particularized, and actual or imminent. Even without action by this Court, Plaintiffs are currently under no obligation to participate in any Commission prayer they find offensive, they are not excluded from participation, and they are not being subjected to harassing, taunting or otherwise humiliating actions by the Rowan County Commissioners. Thus, there are no claims sufficient for this court to grant standing to the Plaintiffs.

## CONCLUSION

Plaintiffs have sued the wrong party. Defendant Rowan County is not liable under *Monell*, either because there is no *Monell* custom here, or because any custom here within *Monell* is merely a custom of allowing rotating Invocations without regard to sectarianism. All the conduct Plaintiffs complain of is instead traceable to the five Commissioners of Rowan County, each acting in his individual capacity as an elected representative. All that notwithstanding, the Court lacks subject-matter jurisdiction under the political-question doctrine to grant the specific relief requested by Plaintiffs because there are no legal standards that federal judges can discover and consistently manage to

27

differentiate sectarian from nonsectarian prayers. Furthermore, Plaintiffs have failed to satisfy Article III requirements for injury sufficient to confer standing.

For these reasons, the Court should grant the Motion to Dismiss under FED. R. CIV. P. 12(b)(1) and 12(b)(6).

Respectfully submitted this 29th day of April, 2013.

GIBBS LAW FIRM, P.A.

/s/ David C. Gibbs III
David C. Gibbs III *
D.C. Bar No.: 448476
Gibbs Law Firm, P.A.
President, National Center for
Life and Liberty
5666 Seminole Blvd., Suite 2
Seminole, FL 33772
Ph: 727-362-3700
Fax: 727-398-3907
dgibbs@gibbsfirm.com

and

/s/ Kenneth Klukowski
Kenneth A. Klukowski *
Indiana Bar No. 28272-06
Liberty University School of Law
1971 University Blvd.
Lynchburg, Virginia 24502
Phone (434) 592-5300
Facsimile (434) 592-5400
kklukowski@liberty.edu
*Pursuant to Local Rule 83.1(d)*

/s/ Bryce Neier
Bryce Neier - Local NC Counsel
2525 Raeford Road, Suite D
P.O. Box 87164
Fayetteville, NC 28304
Ph: (910) 423-5000
Fax: (910) 423-5000
bryceneier@aol.com
*COUNSEL FOR DEFENDANT*

28

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2013 I electronically filed the foregoing Defendant's Memorandum of Law in Support of its Motion to Dismiss Based on Failure to State a Claim and the Political Question Doctrine, using the CM/ECF system which will send notifications of such filings to the following counsel:

Christopher A. Brook
Legal Director, ACLU of North Carolina
P.O. Box 28004
Raleigh, NC 27611
cbrook@acluofnc.org

Daniel Mach
Heather L. Weaver
ACLU
915 15th Street
Washington, D.C. 20005
dmach@aclu.org
hweaver@aclu.org

Dated: April 29, 2013

GIBBS LAW FIRM, P.A.

/s/ David C. Gibbs III
David C. Gibbs III *
D.C. Bar No.: 448476
Gibbs Law Firm, P.A.
President, National Center for
Life and Liberty
5666 Seminole Blvd., Suite 2
Seminole, FL 33772
Ph: 727-362-3700
Fax: 727-398-3907
dgibbs@gibbsfirm.com

*By special appearance pursuant to Local Rule 83.1(d)*

29