IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:13-cv-207-JAB-JLW

| | |
|---|---|
| NANCY LUND, LIESA MONTAG-SIEGEL, and ROBERT VOELKER, <br><br>   Plaintiffs, <br><br> v. <br><br> ROWAN COUNTY, NORTH CAROLINA, <br><br>   Defendant. | **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

/s/ Christopher A. Brook
Christopher A. Brook
NC Bar No. 33838
Legal Director, American Civil Liberties Union
of North Carolina Legal Foundation
Post Office Box 28004
Raleigh, North Carolina 27611
Telephone: (919) 834-3466
Facsimile: (866) 511-1344
Email: cbrook@acluofnc.org

Daniel Mach*
Heather L. Weaver*
ACLU Program on Freedom of Religion and Belief
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
Fax: (202) 546-0738
Email: dmach@aclu.org
hweaver@aclu.org

* Appearing pursuant to Local Rule 83.1(d)

# TABLE OF AUTHORITIES

**CASES**

*Elrod v. Burns*, 427 U.S. 347 (1976)……………………………………………………….…10

*Hall v. Bradshaw*, 630 F.2d 1018 (4th Cir. 1980)……………………………………………...8

*Joyner v. Forsyth County, N.C.*, No. 1:07CV243, 2009 WL 3787754
(M.D.N.C. Nov. 9, 2009)……………………………………………………………………......3

*Joyner v. Forsyth County, N.C.*, 653 F.3d 341 (4th Cir. 2011)………………………........…passim

*Lambeth v. Bd. of Comm'rs of Davidson County, N.C.*, 321 F.Supp. 688 (M.D.N.C. 2004)….…..5

*Marsh v. Chambers*, 463 U.S. 783 (1983)……………………………………………………...5

*Mellen v. Bunting*, 327 F.3d 355 (4th Cir. 2003)……………………………………………….4, 8, 9

*N.C. Civil Liberties Union Found. v. Constangy*, 947 F.2d 1145 (4th Cir. 1991)………………...8

*Pelphrey v. Cobb County, Ga.*, 547 F.3d 1263 (11th Cir. 2008)………………………………….3

*Simpson v. Chesterfield County Bd. of Sup'rs.*, 404 F.3d 276 (4th Cir. 2005)……………......6, 10

*Suhre v. Haywood County, N.C.*, 131 F.3d 1083 (4th Cir. 1997)……………………………3, 4, 5

*Turner v. City Council of Fredricksburg*, 534 F.3d 352 (4th Cir. 2008)……………………….5, 6

*Wynne v. Town of Great Falls*, 376 F.3d 292 (4th Cir. 2004)………………………………3, 6, 7

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:13-cv-207-JAB-JLW

| | |
|---|---|
| NANCY LUND, LIESA MONTAG-SIEGEL, and ROBERT VOELKER, <br><br> Plaintiffs, <br><br> v. <br><br> ROWAN COUNTY, NORTH CAROLINA, <br><br> Defendant. | **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

Pursuant to Local Civil Rules 7.1, 7.2, 7.3(h) and 65.1, Plaintiffs file this reply brief in support of their Motion for Preliminary Injunction [Doc. 5], and in opposition to Defendant's Brief in Support of Its Motion in Opposition to Plaintiffs' Motion for Preliminary Injunction [Doc. 24] (hereinafter "Def. Opp.").

## INTRODUCTION

The U.S. Court of Appeals for the Fourth Circuit has time and again made clear that "[s]ectarian prayers must not serve as the gateway to citizen participation in the affairs of local government" because such prayers "run[] afoul of the promise of public neutrality among faiths that resides at the heart of the First Amendment's religion clauses." *Joyner v. Forsyth County, N.C.*, 653 F.3d 341, 342-43 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1097 (2012). The Rowan County Board of Commissioners has flouted this clear law for at least the past five-and-a-half years, opening 97% of its meetings with sectarian invocations delivered by Board members themselves. All of the sectarian invocations have been expressly Christian, closing in the name of Jesus, Christ, or the Savior, and many have preached other specific Christian beliefs, including

the belief that Jesus "is the only way to eternal life." Not one of the prayers delivered in this time period has invoked tenets specific to another faith.

Unable to reconcile the Fourth Circuit's legislative-prayer precedent with this overwhelmingly sectarian prayer practice, Defendant simply ignores it, suggesting in its Opposition to Plaintiffs' Motion for Preliminary Injunction that the case at hand is entirely distinguishable from the governing case law and is, therefore, somehow a case of first impression. In place of the clear standards set forth by the Fourth Circuit, Defendant instead makes up new requirements for Establishment Clause standing and applies its own mangled version of the endorsement test. The Fourth Circuit has already rejected Defendant's standing argument, however, and the endorsement test – when properly understood and applied – offers no additional safe haven for sectarian legislative prayers. A thorough review of the law and facts demonstrates that the Fourth Circuit has consistently found similar – and indeed, less egregious – legislative prayer practices unconstitutional. Plaintiffs are thus entitled to a preliminary injunction enjoining the Board from continuing its sectarian prayer practice.

I.  **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR ESTABLISHMENT CLAUSE CLAIM.**

   A.  **Plaintiffs Meet All Requirements for Establishment Clause Standing.**

Although the County never expressly argues that Plaintiffs do not have standing, it repeatedly claims that Plaintiffs "present no allegation of actual injury, such as being personally humiliated and/or harassed by the Commissioners or being excluded from participation in legislative meetings."[1] Def. Opp. 6. The County's novel theory of Establishment Clause injury

---

[1] *See, e.g.*, Def. Opp. 5 ("[T]here is no actual or particularized harm or injury being suffered by the Plaintiffs that a preliminary injunction could remedy. The Plaintiffs are not required to participate in or to hear any of the Board's Invocations that offend them or make them feel excluded. The Plaintiffs are not being subjected to any personal injury, such as harassment or

2

would place a very heavy burden on plaintiffs seeking to vindicate their religious-liberty rights and is not supported by case law. Indeed, no federal court has held that Establishment Clause plaintiffs must show that they were harassed or humiliated or ejected from meetings in order to demonstrate a cognizable injury.[2]

Rather, as with other Establishment Clause litigants, Plaintiffs here need only show "[d]irect contact with an unwelcome religious exercise or display" to meet the injury requirement. *See Suhre v. Haywood County, N.C.*, 131 F.3d 1083, 1086 (4th Cir. 1997); *see also Pelphrey v. Cobb County, Ga.*, 547 F.3d 1263, 1279 (11th Cir. 2008) ("[Plaintiff] suffered a personal injury sufficient to confer standing because he had direct contact with the practice of the Planning Commission during 2003-2004. The district court found that [plaintiff] attended three Planning Commission meetings in person and viewed additional Planning Commission meetings via the internet, during which invocations were given."); *Joyner v. Forsyth County, N.C.*, No. 1:07CV243, 2009 WL 3787754, at *3, *5 (M.D.N.C. Nov. 9, 2009) (holding that plaintiffs had standing where they had attended one Board of Commissioners meeting that had opened with unwelcomed sectarian prayer), *aff'd*. 653 F.3d 341 (4th Cir. 2011); *Wynne*, 376 F.3d at 295 (noting that Plaintiff "regularly" attended Council meetings at which prayers occurred).

In their sworn affidavits supporting their motion for a preliminary injunction, Plaintiffs have all stated that they have attended multiple Board meetings at which sectarian invocations

---

humiliation by the Board, nor are they being treated differently from any other citizen with regard to participating in Board meetings."); *id.* at 2 & 11-12 (making similar statements).

[2] Defendant notes in its brief that the Plaintiff in *Wynne v. Town of Great Falls*, 376 F.3d 292 (4th Cir. 2002), was harassed as a result of her opposition to the town's sectarian invocations and denied the opportunity to participate in the meeting. Def. Opp 2-3. But Wynne's experience has no bearing on whether Plaintiffs here have a cognizable injury, as the Fourth Circuit has never suggested that every Establishment Clause plaintiff must suffer actual harassment in order to demonstrate standing.

were delivered. *See* Plf. Mem., Ex. A, ¶ 7; Ex. B ¶ 7; Ex. C ¶ 4. Plaintiffs have affirmed that, as non-Christians, the sectarian invocations offend them because they convey a message that the County and its Commissioners favor adherents of Christianity and disfavor its non-adherents. *Id.* And Plaintiffs have testified via their affidavits that the prayers make them feel excluded from the community and the local political process. *Id.* Moreover, Plaintiffs have stated that, because all Board members stand and indicate that the audience should stand during the prayers, and, because nearly all in attendance bow their heads, Plaintiffs feel pressured to participate in the prayers in this manner. *Id.*

Defendant erroneously implies several times that this alleged injury is inadequate because it stems from Plaintiffs' "subjective feelings of offense and exclusion based upon their own religious or non[-]beliefs." Def. Opp. 2. On the contrary, these facts plainly support Plaintiffs' asserted injuries because, under the Establishment Clause, a cognizable spiritual injury *must* be one that is personal and specific to the particular plaintiff (i.e., subjective) and based upon the plaintiff's own spiritual beliefs. *See, e.g., Suhre*, 131 F.3d at 1086 (noting that a litigant who asserts a "mere abstract objection to unconstitutional conduct" and is not "directly affected" by such action lacks injury sufficient to confer standing).

Defendant also suggests, wrongly, that Plaintiffs suffer no harm from the County's sectarian prayer because "[n]o citizen is required to participate in the Invocation and may instead remain seated, leave the room, or arrive after the Invocation and participate only in the Pledge of Allegiance and the business portion of the meeting." Def Opp. 5. But as the Fourth Circuit has held, "the First Amendment prohibits . . . [government officials] from requiring religious objectors to alienate themselves from the . . . community in order to avoid a religious practice." *Mellen v. Bunting*, 327 F.3d 355, 372 (4th Cir. 2003). Thus, even if Plaintiffs did remain seated,

4

leave the room, or arrive after the invocation, as Defendant advocates, their altered conduct would merely provide *another* basis upon which they could assert injury. However, "[s]uch an extraordinary showing of injury, while sufficient, is not necessary to support standing to bring an Establishment Clause claim." *See Suhre*, 131 F.3d at 1088; *see also Lambeth v. Bd. of Comm'rs of Davidson County.* 321 F. Supp. 2d 688, 691 (M.D.N.C. 2004) ("Plaintiffs need not allege that they changed their conduct to avoid contact with the offensive display [in Establishment Clause context]."). Plaintiffs here have suffered direct contact with the County's sectarian invocations and have made clear that this contact inflicted upon them a spiritual injury that can only be redressed by this Court.[3] Plaintiffs are required to do no more for standing purposes.

### B. Defendant's Invocation Practice Plainly Runs Afoul of the Fourth Circuit's Governing Case Law.

In *Marsh v. Chambers*, 463 U.S. 783 (1983), the Supreme Court carved out a very narrow exception to the Establishment Clause's prohibition on government-sponsored prayer. The Fourth Circuit has made clear in multiple opinions that legislative bodies may not avail themselves of the so-called "legislative prayer" exception by resort to sectarianism:

> [T]his [c]ourt's legislative prayer decisions have recognized that the exception created by *Marsh* is limited to the sort of nonsectarian legislative prayer that solemnizes the proceedings of legislative bodies without advancing or disparaging a particular faith. Put differently, legislative prayer must strive to be nondenominational so long as that is reasonably possible—it should send a signal of welcome rather than exclusion. It should not reject the tenets of other faiths in

---

[3] Citing to its recently filed Motion to Dismiss, the County also argues that "[t]here are no appropriate Defendants to enjoin and there is no policy or custom of Rowan County with the force of law to be enjoined . . ." Def. Opp. 5. This claim recycles arguments, previously rejected by the Fourth Circuit, that legislative prayer is not government speech. As in those cases, Defendant "has not cited a single case in which a legislative prayer was treated as individual or private speech." *Turner v. City Council of City of Fredericksburg*, 534 F.3d 352, 355 (4th Cir. 2008) (holding that opening invocations offered by members of city council constituted government speech). Plaintiffs will address this argument in more detail in their brief in opposition to Defendant's Motion to Dismiss, and hereby incorporate all arguments set forth in that filing, due on May 23, 2013.

5

favor of just one. Infrequent references to specific deities, standing alone, do not suffice to make out a constitutional case. But legislative prayers that go further—prayers in a particular venue that repeatedly suggest the government has put its weight behind a particular faith—transgress the boundaries of the Establishment Clause.

*See Joyner*, 653 F.3d at 349 (internal citation and quotation marks omitted); *id.* at 347-49 (recounting Fourth Circuit's legislative prayer decisions interpreting *Marsh* exception). As the Court of Appeals has explained, the Establishment Clause's demand that the government remain neutral among faiths, even within the legislative-prayer exception, is not borne out of hostility to religion or any particular faith. Rather, the neutrality mandate recognizes that "[f]aith is as deeply important as it is deeply personal, and the government should not appear to suggest that some faiths have it wrong and others got it right." *Id.*

The Court has thus both upheld non-sectarian invocation practices, reasoning that they do not affiliate the government with one faith,[4] and enjoined practices that employ prayers that are overwhelmingly specific to one religion because they amount to "government advancement and effective endorsement of one faith," which "carries a particular sting for citizens who hold devoutly to another." *See id.* at 355; *see also Wynne*, 376 F.2d at 301 ("Here, the Town Council insisted upon invoking the name 'Jesus Christ,' to the exclusion of deities associated with any other particular religious faith, at Town Council meetings in public prayers in which the Town's citizens participated. Thus, the Town Council clearly 'advance[d]' one faith, Christianity, in preference to others, in a manner decidedly inconsistent with *Marsh*.").

Given the Fourth Circuit's strong language and clear guidance regarding sectarian legislative prayer practices, it is not surprising that Defendant's brief barely mentions this long

---

[4] *See, e.g., Simpson v. Chesterfield Cnty. Bd. of Sup'vrs*, 404 F.3d 276, 287 (4th Cir.2005) (upholding prayer practice that explicitly required nonsectarian prayers); *accord, e.g., Turner*, 534 F.3d at 356 (upholding nonsectarian prayer policy as "squarely within the range of conduct permitted by *Marsh* and *Simpson*").

6

line of precedent: If the prayer practices enjoined in *Wynne* and *Joyner* did not pass constitutional muster, there is no way that Rowan County's practice is tolerable. Whereas "almost four-fifths of the prayers delivered" under Forsyth County's policy were sectarian (i.e. 80%), *Joyner*, 653 F.3d at 344, 97% of Rowan County Board meetings in the past five-and-a-half years have featured expressly Christian prayer. Complaint ¶ 25. While *Wynne* made clear that "prayers frequently refer[ring] to Christ," even if each prayer "did so only once," unconstitutionally advance Christianity, 376 F.3d at 300, Rowan County frequently goes much further. A number of Board invocations have incorporated and proclaimed specific tenets of Christianity, including, among others, the Virgin Birth, the resurrection, the Cross at Calvary, and the belief "there is only one way to salvation and that is Jesus Christ." Complaint at ¶ 27. Defendant's invocations, in addition, have never referenced another deity. Complaint ¶ 29; *see also Wynne*, 376 F.3d at 294, 300 n.5; *Joyner*, 653 F.3d at 343. Even those arguing for a less robust interpretation of the Establishment Clause than the Fourth Circuit has employed deem conduct similar to Defendant's unconstitutional. *See Joyner*, 653 F.3d at 362 (Niemeyer, J., dissenting) (distinguishing between sectarian prayers delivered by clergy in *Joyner* and those proffered by council members in *Wynne*, which "clearly 'advance[d]' one faith, Christianity, in preference to others, in a manner decidedly inconsistent with *Marsh*") (quoting *Wynne*, 376 F.3d at 301).

Dismissing this precedent out-of-hand as "distinguishable" from this case, Def. Opp. 2, Defendant instead seeks refuge in the endorsement test, claiming that Plaintiffs "do not meet the standard of a reasonable observer in this matter" because "[i]t is apparent from the Plaintiffs' pleadings in this case that they are not aware of the history and context of Rowan County's

7

Invocations and the utter lack of any religiously coercive elements regarding these Invocations." *Id.* at 11. The approach is misguided for several reasons.

Most importantly, Defendant's argument wrongly assumes that the Fourth Circuit's legislative prayer analysis is substantively different from the endorsement test and, would, therefore, result in a different outcome. While the Fourth Circuit does not technically employ the "reasonable observer" framework in its legislative prayer analysis, as noted above the Court has made clear that sectarian prayer policies improperly advance and endorse religion. *See supra* at 6 (citing *Joyner*, 653 F.3d at 355).

Moreover, even if the "reasonable observer" endorsement test were different in scope and nature than the Fourth Circuit's legislative prayer analysis, the resulting determination would be the same. Indeed, when judicial analysis of government-sponsored prayer is removed from the purview of *Marsh* and its Fourth Circuit progeny, the conclusion that such prayer is unconstitutional is all the more inevitable: The federal courts, including the Fourth Circuit, have consistently held that, outside of the narrow legislative-prayer exception, government-sponsored prayer – whether sectarian or nonsectarian – violates the Establishment Clause.[5] Here, a reasonable objective observer[6] – aware of the County's long history of promulgating exclusively

---

[5] *See, e.g.*, *Mellen*, 327 F.3d at 375 (declining to apply *Marsh* exception to state military university's nonsectarian supper prayers and holding that they violated the *Lemon*, endorsement, and coercion tests); *N.C. Civil Liberties Union Found. v. Constangy*, 947 F.2d 1145, 1149, 1153 (4th Cir. 1991) (refusing to extend *Marsh* exception to protect courtroom prayers and enjoining them as unconstitutional); *Hall v. Bradshaw*, 630 F.2d 1018, 1023 (4th Cir. 1980) (holding "Motorists' Prayer" included in state map impermissible because, "[w]hen government officially approves a prayer, it unconstitutionally favors one religious view over others and breaches the constitutional neutrality mandated by the Establishment Clause.").

[6] As noted above, Defendant suggests that Plaintiffs are unaware of the key facts surrounding the invocation practice. But Plaintiffs' affidavits and briefing make clear that they are well aware of the history and context of the County's prayer and that they have personally experienced the religiously coercive manner in which the prayers are carried out. *See* Plf. Mem., Ex. A, ¶¶ 4, 7, 9-13; Ex. B ¶¶ 5-6, 9-13; Ex. C ¶ 6, 9-11, 13-14. And, in any event, Plaintiffs' subjective

8

Christian invocations, the overtly proselytizing content of many of those prayers, and the County's steadfast adherence to this practice despite citizens' objections would unquestionably view the invocations as "convey[ing] a message of endorsement" of Christianity. *See Mellen*, 327 F.3d at 374 (internal quotation marks omitted).

## II. THE REMAINING PRELIMINARY INJUNCTION FACTORS WEIGH IN PLAINTIFFS' FAVOR.

As set forth in Plaintiffs' Memorandum in support of their Motion for Preliminary Injunction, the remaining preliminary injunction factors weigh strongly in Plaintiffs' favor. Defendant's claim that Plaintiffs face no irreparable injury again misconstrues the nature of the injury required under the Establishment Clause. To assert a valid, cognizable injury under the Establishment Clause, Plaintiffs are not required to contend that they "are prevented from attending or participating in any Commission meeting," Def. Opp. 11-12, although at least one Plaintiff does assert that the County's prayer practice inhibits his ability to fully participate in meetings. *See* Ex. C ¶ 13. Nor are they required to establish that "they are personally harassed or intimidated or rejected by any Commissioner." Def. Opp. 12. Plaintiffs also need not demonstrate that they are "required to participate in any Invocation . . . [or] will be required to do so in the future," *id.* at 12, although all three Plaintiffs have provided evidence that, by virtue of the County's prayer practice, they feel coerced into participating in the prayers, which profess religious beliefs specific to a faith that they do not share. Ex. A ¶¶ 9, 11, Ex. B ¶¶ 9, 11, Ex. C ¶¶ 7, 10.

---

knowledge is irrelevant to the endorsement inquiry because, as Defendant notes, a Court charged with applying the endorsement test must evaluate the challenged actions from the perspective of the hypothetical reasonable observer who is informed of the history and context surrounding the events at issue.

Plaintiffs must show only that they have had direct contact with an unwelcome religious practice and that they will continue to do so. They have made the required demonstration here. Because that injury constitutes a deprivation of their rights under the Establishment Clause of the First Amendment to the U.S. Constitution it is, by its very nature, irreparable. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *see also, e.g.*, Plf. Mem. at 16.

With Plaintiffs' irreparable injury firmly established, it becomes even clearer that the balance of equities favor Plaintiffs. As discussed above, *supra* note 3, the County's invocations do not constitute the private speech of commissioners. The prayers are government speech, subject to the limitations of the Establishment Clause. Because the County has no right to engage in speech that violates the Establishment Clause, it will suffer no harm as a result of a preliminary injunction. Finally, the public interest is well served by prohibiting government bodies like Rowan County from "repeated invocations of the tenets of a single faith," which "undermines our commitment to participation by persons of all faiths in public life . . . [and] runs counter to the credo of American pluralism and discourages the diverse views on which our democracy depends." *Simpson*, 404 F.3d at 283

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court enter a Preliminary Injunction as set forth in the previously submitted Motion and Verified Complaint.

Respectfully submitted this 20th day of May, 2013.

/s/ Christopher A. Brook
Christopher A. Brook
NC Bar No. 33838
Legal Director, ACLU-NCLF
Post Office Box 28004
Raleigh, North Carolina 27611
Telephone: (919) 834-3466
Facsimile: (866) 511-1344
Email: cbrook@acluofnc.org

Daniel Mach*
Heather L. Weaver*
ACLU Program on Freedom of Religion and Belief
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
Fax: (202) 546-0738
Email: dmach@aclu.org
hweaver@aclu.org
* Appearing pursuant to Local Rule 83.1(d)

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2013, I electronically filed the foregoing Motion for Preliminary Injunction using the CM/ECF system which will send notification of such filings to the following counsel:

David C. Gibbs III
Gibbs Law Firm, P.A.
President, National Center for Life and Liberty
5666 Seminole Blvd., Suite 2
Seminole, FL 337722
dgibbs@gibbsfirm.com

Kenneth Klukowski
Liberty University Law School
1971 University Blvd.
Lynchburg, Virginia 24502
kklukowski@liberty.edu

Bryce Neier
P.O. Box 87164
Fayetteville, NC 28304
bryceneier@aol.com

This is the 20th day of May, 2013.

/s/ Christopher A. Brook
Christopher A. Brook