IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:13-cv-207-JAB-JLW

| | | |
|---|---|---|
| NANCY LUND, LIESA MONTAG-SIEGEL, and ROBERT VOELKER, | ) ) ) | |
| Plaintiffs, | ) ) ) ) ) | **PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | ) ) | |
| ROWAN COUNTY, NORTH CAROLINA, | ) ) | |
| Defendant. | ) ) | |

/s/ Christopher A. Brook
Christopher A. Brook
NC Bar No. 33838
Legal Director, American Civil Liberties Union
of North Carolina Legal Foundation
Post Office Box 28004
Raleigh, North Carolina 27611
Telephone: (919) 834-3466
Facsimile: (866) 511-1344
Email: cbrook@acluofnc.org

Daniel Mach*
Heather L. Weaver*
ACLU Program on Freedom of Religion and Belief
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
Fax: (202) 546-0738
Email: dmach@aclu.org
hweaver@aclu.org

* Appearing pursuant to Local Rule 83.1(d)

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………………………ii

TABLE OF AUTHORITIES …………………………………………………………………iii

INTRODUCTION…………………………………………………………………………..1

FACTS……………………………………………………………………………............2

ARGUMENT…………………………………………………………………………...3

I. THE COUNTY IS LIABLE FOR SECTARIAN PRAYERS DELIVERED BY COUNTY COMMISSIONERS AS PART OF THE OFFICIAL AGENDA OF COUNTY BOARD MEETINGS AND PURSUANT TO THE COUNTY'S "PERMANENT" AND "REGULARLY OBSERVED" INVOCATION PRACTICE…………………………………………………………………………..3

    A. Plaintiffs' Allegations Sufficiently Support the Existence of an Official Policy or Custom of Using Sectarian Prayer to Open Board Meetings…………………..4

        1. *Monell* liability may be established pursuant to either an unwritten, official policy or a custom or usage………………………………….…4

        2. Plaintiffs' Complaint adequately states a claim under *Monell* and its progeny……………………………………………………………………5

    B. The County is a Proper Defendant…………………………………………...9

II. THIS CASE DOES NOT PRESENT A NON-JUSTICIABLE POLITICAL QUESTION……………………………………………………………….......................11

CONCLUSION…………………………………………………………………………..13

# TABLE OF AUTHORITIES

**CASES**

*Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990)…………………………..........7, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)………..…………………………………………..............3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)………..……………………………………..4

*Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir.1984)……....……………………………..……...8

*Bennett v. Roark Capital Gp., Inc.*, 738 F. Supp. 2d 157 (D. Me. 2010)…..………....…...………...6

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)……....……………………………...……...11

*Connick v. Thompson*, 131 S. Ct. 1350 (2011)…………....……………….......…..………...7

*County of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573 (1989)……....…………12

*Depew v. City of St. Marys*, 787 F.2d 1496 (11th Cir. 1986)………………………………...…9

*Doe v. Pittsylvania County*, 842 F. Supp. 2d 906 (W.D. Va. 2012)…………………………10, 13

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435 (4th Cir. 2011)……............4, 6

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004)…………………………………12

*Grech v. Clayton County*, 335 F.3d 1326 (11th Cir. 2003)……………………………………….7

*Hirst v. Gertzen*, 676 F.2d 1252 (9th Cir. 1982)……………………………………………………11

*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004)…………….…………..9

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EECOC,* 132 S. Ct. 694 (2012).……..13

*Joyner v. Forsyth County*, 653 F.3d 341 (4th Cir. 2011),
    *cert. denied*, 132 S. Ct. 1097 (2012).............................................................10, 11, 12, 13

*Lee v. Weisman*, 505 U.S. 577 (1992)……………………………………………………………12

*Kopf v. Wing*, 942 F.2d 265 (4th Cir. 1991)……………………………………………….. 9

*Marsh v. Chambers*, 463 U.S. 783 (1983)……………………………………………………12

*Meyers v. City of Cincinnati*, 14 F.3d 1115 (6th Cir. 1994)………………………………………..10

*Monell v. City of New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978)………………….........…1, 5

*Molex Co., LLC v. Andress*, 887 F. Supp. 2d 1189 (N.D. Ala. 2012)…………………………….6

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)…………………………………………...4, 5

*Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012)…………..………………....7

*Simpson v. Chesterfield Cnty. Bd. of Sup'vrs*, 404 F.3d 276 (4th Cir. 2005)……………............10

*Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987)……………………………………………..passim

*Turner v. City Council of Fredricksburg*, 534 F.3d 352 (4th Cir. 2008)………………..……….9, 10

*Whitney v. Guys, Inc.*, 700 F.3d 1118 (8th Cir. 2012)……………………………………………….7

*World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747 (5th Cir. 2009)….7

*Wynne v. Town of Great Falls*, 376 F.3d 292 (4th Cir. 2004)……………………………….10, 12

*Zivotofsky ex rel. Zivotofsky v. Clinton*, 132 S. Ct. 1421 (2012)…………………………….11, 13

**RULES**

M.D.N.C. Local Civ. R. 7.1, 7.2, 7.3(f)……..………………………………………………………..3

Fed. R. Civ. P. 12(b)(1), (b)(6)………………………………………………………………………1, 3

**Introduction**

Despite conceding that its invocation "tradition dates back decades," "can be regarded as permanent," and is "regularly observed and . . . well settled," the County argues that this case should be dismissed because Plaintiffs have not pled facts sufficient to support the existence of a policy or custom of opening County meetings with sectarian prayer and because the County is not a proper defendant. Def. Mot. to Dismiss ("Def. Mot.") 3-10. Defendant's motion, brought under Federal Rule of Civil Procedure 12(b)(6), should be denied for three reasons: First, it mischaracterizes and ignores the detailed factual allegations set forth in Plaintiffs' well-pleaded Complaint; second it misstates the law with respect to *Monell v. City of New York Department of Social Services*, 436 U.S. 658 (1978), and its progeny in an effort to evade liability; and third, it recycles the defense – already rejected by the Fourth Circuit – that legislative prayer is private, rather than government, speech.

Defendant's motion under Federal Rule of Civil Procedure 12(b)(1) also should be denied. The political question doctrine does not bar this Court from reviewing the County's legislative prayer practice. No court has ever held that a legislative prayer claim is non-justiciable on these grounds, and the plethora of judicial decisions adjudicating the constitutionality of specific legislative prayer practices, as well as federal case law defining "sectarian" prayer, make clear that judicially manageable standards for resolving these questions are readily available. Moreover, Plaintiffs plainly have standing, as explained in Plaintiffs' preliminary-injunction briefing.[1]

---

[1] Because Plaintiffs have already responded to Defendant's standing arguments in their Reply Brief in Support of Preliminary Injunction (Doc. 26), this brief does not address standing. Plaintiffs respectfully incorporate here their prior briefing on standing. *See* Reply Br. (Doc. 26) 2-5, 9-10.

## Facts

On March 12, 2013, Plaintiffs filed a Complaint (Doc. 1) against Defendant Rowan County alleging, pursuant to 42 U.S.C. § 1983, that the County had violated their rights under the Establishment Clause of the First Amendment to the U.S. Constitution and the Constitution of North Carolina by "opening meetings of its Board of Commissioners with Christian prayer." Compl. ¶¶ 3, 5. The Complaint identifies as Plaintiffs three longtime citizens and residents of Rowan County: Nancy Lund, Liesa Montag-Siegel, and Robert Voelker. *Id.* ¶¶ 8-14. The Complaint alleges that Plaintiffs, who have been subjected to sectarian prayers while attending Board of Commissioner meetings, are offended by the prayers, feel excluded from the community and local political process because of them, and feel coerced into participating in them, even though they promote a faith to which none of the Plaintiffs subscribes. *Id.*

The Complaint further states that "Rowan County's practice of delivering sectarian prayer" at Board meetings "constitutes an official policy, practice, custom, and/or usage for purposes of 42 U.S.C. § 1983." *Id.* ¶¶ 4, 35. In support of this claim, Plaintiffs allege a number of specific, pertinent facts describing the nature and operation of the County's prayer practice, the Board's role in promulgating the practice, and the content of the prayers. Specifically, among other facts, Plaintiffs allege:

- From November 5, 2007, through the date of the Verified Complaint, "[p]er the Board's published agendas," Rowan County Board of Commissioners meetings have "generally open[ed] with the call to Order, Invocation, and Pledge of Allegiance." *Id.* ¶¶ 18-19.

- After the meetings are called to order (usually by the Board chair), the Board chair indicates that everyone in attendance should stand and the invocation is delivered, followed by the Pledge of Allegiance. *Id.* ¶¶ 20-21.

- The Board Chair or another Board member delivers the invocation during meetings, and during the relevant time period, 97% (or 139 of 143) invocations were sectarian in that they "invoked the Christian faith by ending with one or more references to Jesus Christ or other beliefs specific to Christianity." *Id.* ¶¶ 25-26 (setting forth specific examples of sectarian references incorporated into prayers at 97% of Board meetings).

- Many of the invocations delivered by Commissioners have "incorporated Christian doctrine and tenets to an even greater extent." *Id.* ¶ 27 (detailing the text of specific prayers offered at Board meetings).

- During the relevant time period, "every individual who has been a member of the Board has delivered one more sectarian invocations," and "no invocation has referenced a deity specific to one faith other than Christianity." *Id.* ¶¶ 28-29.

- The ACLU notified the Board via letter that its prayer practice was unconstitutional and asked the Board to comply with the law as established by the U.S. Court of Appeals for the Fourth Circuit. The Board failed to respond to the letter, although several Board members publicly proclaimed their intention to continue offering Christian prayers. *Id.* ¶¶ 30-31.

On April 29, 2013, Defendant filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 22). Plaintiffs' response brief in opposition to this motion is filed pursuant to M.D.N.C. Local Civ. R. 7.1, 7.2, and 7.3(f).

## Argument

**I. THE COUNTY IS LIABLE FOR SECTARIAN PRAYERS DELIVERED BY COUNTY COMMISSIONERS AS PART OF THE OFFICIAL AGENDA OF COUNTY BOARD MEETINGS AND PURSUANT TO THE COUNTY'S "PERMANENT" AND "REGULARLY OBSERVED" INVOCATION PRACTICE.**

The allegations set forth in Plaintiffs' Complaint are more than sufficient to support a "reasonable inference" that the County has established either an official, unwritten policy or a custom and usage of opening Board meetings with sectarian prayer. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim

3

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal citation omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.* 637 F.3d 435, 440 (4th Cir. 2011) ("To survive the motion [dismiss], a complaint . . . must contain sufficient facts to state a claim that is plausible on its face. Nevertheless, a complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests. Further . . . [we] draw all reasonable inferences in favor of the plaintiff.") (internal citations and quotation marks omitted). The County is, therefore, liable for the resulting constitutional violations and a proper Defendant in this case.

> A. **Plaintiffs' Allegations Sufficiently Support the Existence of an Official Policy or Custom of Using Sectarian Prayer to Open Board Meetings.**
>
>> 1. Monell *liability may be established pursuant to either an unwritten, official policy or a custom or usage.*

Plaintiffs need not point to a specific written policy or law authorizing the use of sectarian invocations at Board meetings to assert a valid claim for the deprivation of their constitutional rights under 42 U.S.C. § 1983. The Supreme Court has recognized that, for purposes of establishing municipal liability under *Monell*, the pertinent "official policy" can "refer[] to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).[2]

---

[2] Defendant incorrectly assumes that an "official policy" must be written. Def. Mot. 5-6. In *Pembaur*, however, the Supreme Court distinguished between a custom or usage and an unwritten official policy or action. 475 U.S. at 484 n.10. There, the Court considered only whether the City's warrantless search of a home in connection with deputies' service of capasies

Whether written or unwritten, "consciously adopted courses of governmental action" constitute an official policy, and such a policy may be "fairly attributed to a municipality" where it is directly made by its governing body, a municipal agency, or an official "having final authority to establish and implement the relevant policy." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987).

Moreover, where no official written or unwritten policy exists (or the existence of an official policy is uncertain or unknown to litigants), "local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-691. Municipal practices that are "persistent and widespread," although not technically law, "could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *See id*. at 691 (internal quotation marks omitted). Liability for these widespread practices attaches when the municipality's governing body (here, the Board of Commissioners) has actual or constructive knowledge that "the practices have become customary among its employees." *Spell*, 824 F.2d at 1387.

2. *Plaintiffs' Complaint adequately states a claim under* Monell *and its progeny.*

In opposing Defendant's Motion to Dismiss, then, Plaintiffs need show only that the factual allegations of the Complaint, if accepted as true, support a plausible claim that the

---

constituted an official unwritten policy. *See id.* at 474 (noting that Sheriff's Department had no written policy respecting the serving of capiases on the property of third persons"). While the Court concluded that the County's actions had established an official policy, it explained in a footnote that, "[b]ecause there is no allegation that the action challenged here was pursuant to a local 'custom,' this aspect of *Monell* is not at issue in this case." *Id.* at at 484 n.10.

5

County is liable either for an unwritten, official policy of using sectarian prayer at Board meetings or a similar custom "so permanent and well settled" that it can be considered equivalent to an official policy. *See Spell*, 824 F.2d at 1387. In their complaint, Plaintiffs do just that, alleging a number of specific facts to support their claim that "Defendant's past and continued delivery of invocations at its Board meetings . . . constitutes an official policy, practice, custom, and/or usage for purposes of § 1983." Compl. ¶ 35. These detailed allegations, *supra* pp. 2-3, belie Defendant's claim that Plaintiffs rely solely on "naked assertions devoid of further factual enhancement."[3] Def. Mot. 4-5.

Plaintiffs' numerous factual allegations easily support a "reasonable inference" that – as evinced by the official agendas listing the invocations, the Board's conduct of the prayers during meetings, and the content of the prayers – the Board has settled on an unwritten understanding or policy "to be followed under similar circumstances consistently and over time" with regard to the use of sectarian prayer to open Board meetings. *See Spell*, 824 F.2d at 1387. The County, which "exercises its power . . . through its elected Board," Compl. ¶15, is thus liable for the prayers.[4]

---

[3] *See, e.g.*, *Molex Co., LLC v. Andress*, 887 F. Supp. 2d 1189, 1206 (N.D. Ala. 2012) (rejecting Defendant's "trite contentions" that "plaintiffs' complaint contains too many conclusory allegations to satisfy the requirements of the Supreme Court's *Twombly* and *Iqbal* decisions, and noting that "defendant's characterizations were inaccurate, for many of the identified sentences actually [did] contain factual allegations," and that other sentences, although conclusory when viewed in isolation, were "accompanied by . . . [allegations] that provide[d] more factual detail"); *Bennett v. Roark Capital Gp., Inc.*, 738 F. Supp. 2d 157, 161 (D. Me. 2010) (holding that Plaintiffs stated a "plausible claim" when complaint was read as a whole and "the more detailed, relevant factual allegations" not cited by Defendant were taken into account).

[4] The commissioners' affidavits, filed in support of Defendant's Motion to Dismiss are improper and may not be considered by the Court because a motion to dismiss must be adjudicated based on the contents of the Complaint alone. *See E.I. du Pont de Nemours*, 637 F.3d at 450, 453 (reversing grant of motion to dismiss because the district court erred in "accepting statements

6

Alternatively, even if Plaintiffs allegations do not plausibly support the existence of an unwritten official policy, they plainly evince – at a minimum – the existence of a custom or usage of opening Board meetings with sectarian prayer. The practice is persistent and widespread: In a five-and-a-half year period, 97% of the Board's twice-monthly meetings were opened with expressly Christian prayer. The practice is also permanent and well-settled, as revealed by the duration and frequency of the prayers, and as conceded by the County. By virtue of these qualities, the Board's prayer practice constitutes a custom with the force of official policy; *i.e.*, the force of law.[5]

---

beyond the Counterclaim and making inferences on that basis in favor" of the opposing party). For similar reasons, the County's suggestion that Plaintiffs must, at this stage, "proffer . . . evidence of any official policy ever being adopted," Def. Mot. 6, is without merit. *See Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128-29 (8th Cir. 2012) ("We refuse, however, to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly* . . . The question for us to address at this preliminary stage is . . . whether he [plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims."). Even if the Court could properly consider outside evidence, the commissioners contradict themselves within their affidavits: They admit that the County has a "long-standing tradition" of rotating the invocation among the Board's members, yet deny that this tradition amounts to a "written or unwritten or policy," despite going on to describe, in detail, how this non-policy works. *See* Def. Mot., Exs. A-E, ¶¶ 3-17. The affidavits, accordingly, do not foreclose the existence of an official, unwritten policy, as alleged by Plaintiffs.

[5] *See, e.g.*, *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("Official municipal policy includes . . . practices so persistent and widespread as to practically have the force of law."); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) ("An official policy or custom may be established by means of . . . a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy . . ."); *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753 (5th Cir. 2009) ("One way plaintiffs may prove *Monell*'s 'municipal policy or custom' requirement is to show a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.") (internal quotation marks omitted); *Grech v. Clayton County*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003) ("A custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy."); *Andrews v. City of*

7

Defendant thus misconstrues *Monell* and subsequent cases when it argues that the County's prayer practice "carries no force of law because (1) it does not alter the legal rights or obligations of any citizen of Rowan County, (2) it is not relevant to the outcome of any policy question, and (3) Plaintiffs proffer no evidence, of any type, of any governmental consequences resulting from" it. Def. Mot. 6. Putting aside the fact that these claims ignore the nature of the prayers and the harm that they have caused Plaintiffs, *see* Reply Br. (Doc. 26) 2-5, 9-10, the County's three "force of law" criteria are not supported by any case law. *Monell* and its progeny make clear that, even if the Board never approved an unwritten policy allowing sectarian prayers, once the prayer custom became entrenched and pervasive, nothing more was required to imbue it with the force of official policy. And because Board members deliver the prayers themselves, their actual knowledge of this custom – and the County's resulting liability – are well established.[6] Accordingly, Plaintiffs' alleged facts, accepted as true for the motion-to-dismiss inquiry, are eminently sufficient to sustain Plaintiffs' claims.[7]

---

*Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute law.") (internal quotation marks omitted).

[6] Defendant suggests that, because the Board is not an executive body, it cannot be held liable for a custom or usage. *See* Def. Mot. 6-7. However, the Fourth Circuit's case law makes no such distinction. As long as a governing body has notice of a custom or usage, it may be held liable under *Monell*. *See Spell*, 824 F.2d at 1387 ("Actual knowledge [of a custom] may be evidenced by recorded reports to or discussions by a municipal governing body. Constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them."); *see also Bennett v. City of Slidell*, 728 F.2d 762, 767-68 (5th Cir. 1984) ("Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information.").

[7] The facts and evidence submitted in Plaintiffs' Verified Complaint and in support of their Motion for Preliminary Injunction are also sufficient to establish that Plaintiffs are likely to

Defendant thus misconstrues *Monell* and subsequent cases when it argues that the County's prayer practice "carries no force of law because (1) it does not alter the legal rights or obligations of any citizen of Rowan County, (2) it is not relevant to the outcome of any policy question, and (3) Plaintiffs proffer no evidence, of any type, of any governmental consequences resulting from" it. Def. Mot. 6. Putting aside the fact that these claims ignore the nature of the prayers and the harm that they have caused Plaintiffs, *see* Reply Br. (Doc. 26) 2-5, 9-10, the County's three "force of law" criteria are not supported by any case law. *Monell* and its progeny make clear that, even if the Board never approved an unwritten policy allowing sectarian prayers, once the prayer custom became entrenched and pervasive, nothing more was required to imbue it with the force of official policy. And because Board members deliver the prayers themselves, their actual knowledge of this custom – and the County's resulting liability – are well established.[6] Accordingly, Plaintiffs' alleged facts, accepted as true for the motion-to-dismiss inquiry, are eminently sufficient to sustain Plaintiffs' claims.[7]

---

*Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute law.") (internal quotation marks omitted).

[6] Defendant suggests that, because the Board is not an executive body, it cannot be held liable for a custom or usage. *See* Def. Mot. 6-7. However, the Fourth Circuit's case law makes no such distinction. As long as a governing body has notice of a custom or usage, it may be held liable under *Monell*. *See Spell*, 824 F.2d at 1387 ("Actual knowledge [of a custom] may be evidenced by recorded reports to or discussions by a municipal governing body. Constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them."); *see also Bennett v. City of Slidell*, 728 F.2d 762, 767-68 (5th Cir. 1984) ("Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information.").

[7] The facts and evidence submitted in Plaintiffs' Verified Complaint and in support of their Motion for Preliminary Injunction are also sufficient to establish that Plaintiffs are likely to

### B. The County is a Proper Defendant.

Given the Fourth Circuit's clear precedent barring the type of sectarian legislative prayer practice challenged here, it is not surprising that the County seeks to distance itself from the prayers by arguing that there is no causal connection between the Board's custom and the alleged deprivations because the prayers sectarian content "is entirely attributable to choices individual made by each commissioner." Def. Mot. 9-10. However, where, as here, a local government policy "is itself unconstitutional, i.e., when it directly commands or authorizes constitutional violations, the causal connection between policy and violation is manifest and does not require independent proof." *See Spell*, 824 F.2d at 1388 (internal citation omitted). And, even if it were permissible for this Court to consider the affidavits attached to the County's Motion to Dismiss – though it clearly is not, *see supra* note 4 – they would not negate the County's liability for its policy or custom of using sectarian prayers at Board meetings.

Tellingly, Defendant "has not cited a single case in which a legislative prayer was treated as individual or private speech." *See Turner v. City Council of City of Fredericksburg*, 534 F.3d

---

succeed on the merits of their claim brought pursuant to Section 1983 and the Establishment Clause. Defendant's admission that its prayer "tradition" is permanent, regularly observed, and well settled further bolsters this conclusion. *See, e.g., Kopf v. Wing*, 942 F.2d 265, 269 (4th Cir. 1991) (reversing grant of summary judgment against County in Section 1983 case and holding that "a fair-minded jury could find that the county has a custom or practice of letting incidents of excessive force go unpunished" if Plaintiff could prove "the numerous instances of excessive force she alleges, in conjunction with the circumstantial evidence of a 'circle the tents' approach to police brutality complaints"); *cf. Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1294 (11th Cir. 2004) (holding that teacher's "practice of conducting a daily moment for silent prayer – which she actually referred to as a 'ritual' – was sufficiently systematic to be considered a pattern or custom for which the Board may be held accountable"); *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir.1986) ("The continued failure of the city to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983.").

9

352, 355 (4th Cir. 2008) (O'Connor, J. (ret.), sitting by designation). Rather, the Fourth Circuit and other courts have consistently held that legislative prayers like those challenged here constitute government speech. As the Fourth Circuit has explained, while Board members may "take some personal responsibility for their Call to Order prayers[,] . . .given the focus of the prayers on government business at the opening of . . . [government] meetings, . . . the prayers at issue are government speech." *See id.* (holding that opening invocations offered by members of city council constituted government speech).[8] The prayers' content is part and parcel of the County's prayer policy or custom, and the County cannot avoid liability by characterizing the prayers as private speech. *See, e.g.*, *Doe v. Pittsylvania County*, 842 F. Supp. 2d 906, 913 (W.D. Va. 2012) (holding that County's contention that "there is no causal connection between any official Board action and the sectarian content of the invocations delivered by the individual Board members" has "no merit").

Moreover, "[a] municipality may not escape *Monell* liability . . . by simply delegating decisionmaking authority to a subordinate official and thereafter studiously refusing to review his unconstitutional action on the merits." *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118 (6th Cir. 1994). Thus, the County may not cede, to its individual members, final authority over the content of prayers that, as a matter of law, constitute government speech and then wash its hands

---

[8] *See also Simpson v. Chesterfield Cnty. Bd. of Sup'vrs*, 404 F.3d 276, 288 (4th Cir. 2005) (determining that legislative prayers delivered by local religious leaders were government speech); *cf. Joyner v. Forsyth County*, 653 F.3d 341, 351 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1097 (2012) (rejecting claim that religious leaders could proffer sectarian legislative invocations and noting that "[i]t was the governmental setting for the delivery of sectarian prayers that courted constitutional difficulty, not those who actually gave the invocation"); *Wynne v. Town of Great Falls*, 376 F.3d 292, 302 (4th Cir. 2004) (affirming injunction barring town council members from opening meetings with Christian prayer).

10

of the unconstitutional result. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 126-27 (1988) ("If, however, a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose.").

For the reasons explained above, the Complaint adequately states a claim against the County pursuant to Section 1983, and Plaintiffs are entitled to relief against the County. Plaintiffs have not, therefore "sued the wrong Defendant," Def. Mot. 5, as the County argues. *See, e.g., Hirst v. Gertzen*, 676 F.2d 1252, 1265 (9th Cir. 1982) ("If appellants' claim or claims against the city and the county do in fact rest on some official policy, practice, or custom of those entities, these entities will be a proper defendant in appellants' § 1983 action.").

## II. THIS CASE DOES NOT PRESENT A NON-JUSTICIABLE POLITICAL QUESTION.

No court has ever held that review of a legislative prayer practice is barred by the political-question doctrine. As the Fourth Circuit has recognized, "[t]o exercise no review at all—to shut our eyes to patterns of sectarian prayer in public forums—is to surrender the essence of the Establishment Clause and allow government to throw its weight behind a particular faith." *Joyner*, 653 F.3d at 351.

The number of court decisions considering the issue of legislative prayer illustrates that there are, in fact, "judicially manageable standards for resolving the question before the Court." *See* Def. Mot. 23 (quoting *Zivotofsky ex rel. Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1428 (2012)). Indeed, the federal case law is replete with discussions and examples of sectarian prayer, which define the term "sectarian" repeatedly and straightforwardly.

11

In his dissent in *Lee v. Weisman*, 505 U.S. 577, 641 (1992), for example, Justice Scalia "concede[d]":

> [O]ur constitutional tradition, from the Declaration of Independence and the first inaugural address of Washington . . . down to the present day, has, with a few aberrations, ruled out of order government-sponsored endorsement of religion . . . where the endorsement is sectarian, in the sense of specifying details upon which men and women who believe in a benevolent, omnipotent Creator and Ruler of the world are known to differ (for example, the divinity of Christ).

The majority's opinion in *Lee* similarly defined a "sectarian" prayer as one that "uses ideas or images identified with a particular religion . . . ." *Id.* at 588. And reflecting on the prayers upheld in *Marsh v. Chambers*, 463 U.S. 783 (1983), the Supreme Court explained that the legislative invocations did not have the impermissible "effect of affiliating the government with any one specific faith or belief" precisely because "the particular chaplain had 'removed all references to Christ.'" *County of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 598 (1989) (quoting *Marsh*, 463 U.S. at 793 n.14).[9]

Furthermore, many local legislative bodies have injunctions in place with no evidence of difficulty with compliance. *See e.g.*, *Wynne*, 376 F.3d at 302 (upholding district court injunction

---

[9] The *Allegheny* Court noted elsewhere that "praise to God in Christian terms is indisputably religious—indeed sectarian . . ." 492 U.S. at 598. *See also Lee*, 505 U.S. at 589 (noting that a nonsectarian prayer would not include "explicit references to the God of Israel, or to Jesus Christ, or to a patron saint"); *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 42 (2004) (O'Connor, J., concurring) (explaining that the Pledge of Allegiance is not sectarian: "It does not refer to a nation 'under Jesus' or 'under Vishnu,' but instead acknowledges religion in a general way: a simple reference to a generic 'God'"); *Joyner*, 653 F. 3d at 364 (Niemeyer, J., dissenting) ("To be sure, a prayer that references Jesus is sectarian."); *Wynne*, 376 F.3d at 300 ("The prayers sponsored by the Town Council have invoked a deity in whose divinity *only* those of the Christian faith believe. This is not . . . a 'nonsectarian prayer' without 'explicit references . . . to Jesus Christ, or to a patron saint' – references that can 'foster a different sort of sectarian rivalry than an invocation or benediction in terms more neutral.'") (quoting *Lee*, 505 U.S. at 588, 589) (emphasis in *Wynne*).

12

barring the Town Council "from invoking the name of a specific deity associated with any one specific faith or belief in prayers given at Town Council meetings") (internal quotation marks omitted). Local governments and the courts can find substantial guidance in these workable standards, already in use around the country, as well as in the existing case law.

The political-question doctrine is a "narrow exception" to the well-established maxim that the "[j]udiciary has a responsibility to decide cases properly before it, even those it would gladly avoid." *See Zivotofsky*, 132 S. Ct. at 1427. There is simply no basis for applying it here.[10] *See Pittsylvania County*, 842 F. Supp. 2d at 921 n.8 (rejecting county's argument that challenge to sectarian legislative prayer practice was non-justiciable under the political-question doctrine). As in *Joyner*, the County's "bar . . . is hardly a high one." 653 F.3d at 354. Here, "the constitutional standard asks of the County no more than what numerous public and governmental entities already meet." *Id.*

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss.

---

[10] The County's reliance on *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EECOC*, 132 S. Ct. 694 (2012), and other cases cited in footnote 2 of its brief, is misplaced. Def. Mot. 14. The Court's decisions in those cases were not based on, and do not even mention, the political-question doctrine or the unavailability of judicially manageable standards. Rather, the cases concerned the rights of churches and religious organizations to govern their internal, ecclesiastical operations pursuant to the Establishment Clause and the Free Exercise Clause. *Hosanna-Tabor*, for example, pertained to a religious school's right to fire a teacher who served in a ministerial role. 132 S. Ct. at 710. The County, by contrast, is plainly not a religious organization and, as a governmental body, is barred by the Establishment Clause from sponsoring sectarian invocations.

Respectfully submitted this 23rd day of May, 2013.

/s/ Christopher A. Brook
Christopher A. Brook
NC Bar No. 33838
Legal Director, ACLU-NCLF
Post Office Box 28004
Raleigh, North Carolina 27611
Telephone:  (919) 834-3466
Facsimile:   (866) 511-1344
Email:  cbrook@acluofnc.org

Daniel Mach*
Heather L. Weaver*
ACLU Program on Freedom of Religion and Belief
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
Fax: (202) 546-0738
Email: dmach@aclu.org
hweaver@aclu.org
* Appearing pursuant to Local Rule 83.1(d)

*Counsel for Plaintiffs*

14

# CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2013, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filings to the following counsel:

David C. Gibbs III
Gibbs Law Firm, P.A.
President, National Center for Life and Liberty
5666 Seminole Blvd., Suite 2
Seminole, FL 337722
dgibbs@gibbsfirm.com

Kenneth Klukowski
Liberty University Law School
1971 University Blvd.
Lynchburg, Virginia 24502
kklukowski@liberty.edu

Bryce Neier
P.O. Box 87164
Fayetteville, NC 28304
bryceneier@aol.com

This is the 23rd day of May, 2013.

/s/ Christopher A. Brook
Christopher A. Brook