IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NANCY LUND, | ) | |
| LIESA MONTAG-SIEGEL, and | ) | |
| ROBERT VOELKER, | ) | |
| | ) | |
| Plaintiffs, | ) | 1:13CV207 |
| | ) | |
| v. | ) | |
| | ) | |
| ROWAN COUNTY, NORTH | ) | |
| CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

BEATY, District Judge.

This matter is before the Court on a Motion for Preliminary Injunction [Doc. #5] filed by Plaintiffs Nancy Lund, Liesa Montag-Siegel, and Robert Voelker ("Plaintiffs") seeking to enjoin Defendant Rowan County, North Carolina ("Defendant" or "Rowan County") from "knowingly and/or intentionally delivering or allowing to be delivered sectarian[1] prayers at meetings of the Rowan County Board of Commissioners." (Pls.' Mot. for Prelim. Inj. [Doc. #5], at 2.) Also before the Court are a Motion to Dismiss [Doc. #22] and a Motion to Stay Proceedings or in the Alternative for a Status and Scheduling Conference ("Motion to Stay") [Doc. #30] filed by Defendant. All Motions are fully briefed and ready for the Court's

---

[1] Defendant challenges the categorization of the legislative prayers at issue in this case as "sectarian" or "nonsectarian" on the grounds that the Court cannot provide a legal definition of such terms. As such, Defendant contends that this case presents a "nonjusticiable political question" and, therefore, the Court lacks subject matter to hear this case pursuant to the political question doctrine. The Court will address Defendant's contentions in this regard below in Part II.C. of this Memorandum Opinion and Order.

consideration.  For the reasons set forth below, the Court will deny Defendant's Motion to Stay and Motion to Dismiss and will grant Plaintiffs' Motion for Preliminary Injunction.

I.    FACTUAL BACKGROUND

Plaintiffs allege the following facts in their Complaint.  Defendant Rowan County exercises its power as a county through an elected Board of Commissioners ("the Board").  The Board typically holds public meetings twice per month.  Per the Board's published agendas, the meetings generally open with a Call to Order, an Invocation, and the Pledge of Allegiance, each delivered by either the Board Chairman or another Board member.  After the meeting is called to order, the Board chairman generally asks everyone to stand for the Invocation and the Pledge of Allegiance.  The Board members always stand for this portion of the meeting and the Board members also generally bow their heads during the prayer.  In addition, most audience members stand and bow their heads during the prayer.  Since November 5, 2007, 139 of 143 Board meetings, or 97% of the meetings, have opened with a Board member delivering a sectarian prayer that invokes the Christian faith.[2]  Such prayers typically include one or more of the following references to Jesus or another tenet of the Christian faith: "in Jesus' name," "in the name of Jesus the Christ," "in the name of Jesus," "in the knowledge of our Lord and Savior

---

[2]  According to Plaintiffs' Brief in support of their Motion for Preliminary Injunction, at two meetings, June 4, 2012, and August 20, 2012, "then-Commissioner Coltrain (who is no longer a Board member) asked that the audience that [sic] 'join me in a moment of silence or prayer for our meeting' rather than reciting an invocation. . . .  In addition, on March 19, 2012, and November 5, 2012, Coltrain prayed 'in His Holy name' and 'in your Holy name.'"  (Pls.' Br. in Support of Prelim. Inj. [Doc. #6], at 4 n.3.)  Plaintiffs consider the latter two prayers to be sectarian, but counted only those prayers that mentioned "Jesus," Christ," or the "Savior" as being "clearly Christian" for purposes of this action.

2

Jesus Christ," "in the name of Jesus, the one and only way to salvation," "in Christ's name, for His sake," "in the name of Jesus, the King of Kings and Lord of Lords," "in the name of Jesus and for the sake of His Kingdom," "in the name of Christ our Savior," "through Jesus Christ our Lord," "in the name of the Risen Lord, Jesus Christ," "Jesus our Savior," "in my Lord and Savior's name," and "in the name of our Lord and Savior, Jesus Christ." (Compl. ¶ 26.) In addition, Plaintiffs allege that "[m]any prayers delivered at Board meetings have incorporated Christian doctrine and tenets to an even greater extent." (Compl. ¶ 27.) Plaintiffs have listed such prayers in the Complaint[3] as follows:

a. Father, we thank you for your grace and your glory. We ask you to be with us this evening as we conduct the business of Rowan County. We'd also like to ask you to have your will as it relates to all the burdens and problems the citizens of Rowan County have today. As we get ready to celebrate the Christmas season, we'd like to thank you for the Virgin Birth, we'd like to thank you for the Cross at Calvary, and we'd like to thank you for the resurrection. Because we do believe that there is only one way to salvation, and that is Jesus Christ. I ask all these things in the name of Jesus. Amen. December 3, 2007.

b. Let us pray. Our Heavenly Father, we will never, ever forget that we are not alive unless your life is in us. You saved us and you call us with the holy calling. We are the recipients of your immeasurable grace and glory. We are the richest people in the world. Because of our salvation through our Lord Jesus Christ, we cannot be defeated, we cannot be destroyed, and we won't be denied, because we're going to live forever with Him. We confess our sins and we ask you for forgiveness, and we thank you for your blessings. I ask you to be with us as we conduct the business of Rowan County this evening, and ask these things in the name of Jesus and for the sake of His Kingdom. Amen. June 2, 2008.

---

[3] In addition to incorporating the prayer language into their Complaint, Plaintiffs have attached a sworn Affidavit of attorney Christopher Brook to their Brief in Support of their Motion for Preliminary Injunction which indicates that the prayers listed in the Complaint, and others, were transcribed from videos of Board meetings posted on Rowan County's website. (Brook Aff. [Doc. #6-4].)

3

c.      Our Heavenly Father, we will never, ever forget that we are not alive unless your life is in us. We are the recipients of your immeasurable grace. We can't be defeated, we can't be destroyed, and we won't be denied, because of our salvation through the Lord Jesus Christ. I ask you to be with us as we conduct the business of Rowan County this evening, and continue to bless everyone in this room, our families, our friends, and our homes. I ask all these things in the name of Jesus, Amen. May 18, 2009.

d.      Let us pray. Father, I pray that all may be one as you, Father, are in Jesus, and He in you. I pray that they may be one in you, that the world may believe that you sent Jesus to save us from our sins. May we hunger and thirst for righteousness, be made perfect in holiness, and be preserved, whole and entire, spirit, soul, and body, irreproachable at the coming of our Lord Jesus Christ. And I pray, Father, that you will continue to bless this nation, because without your blessings, we don't have any hope. I ask all these things in the name of Jesus. Amen. October 5, 2009.

e.      Heavenly Father, we give you thanks for the many, many blessings that you give to us each and every day, especially during this time of the year when we celebrate the birth of your Son, our Savior, who came to show us how we should interact with each other for the benefit of each other. As servants for this community, please help us as the commissioners to really practice that principle so that we can have a positive effect on the lives of the citizens of the county, for your honor and glory. In Jesus' name we pray. Amen. December 13, 2010.

f.      Let us pray. Holy Spirit, open our hearts to Christ's teachings, and enable us to spread His message amongst the people we know and love through the applying of the sacred words in everyday lives. In Jesus' name I pray. Amen. March 7, 2011.

g.      Let us pray. Lord, we confess that we have not loved you with all our heart, and mind and strength, and that we have not loved one another as Christ loved us. We have also neglected to follow the guidance of the Holy Spirit, and have allowed sin to enter into our lives. Forgive us for what we've been and by your spirit, direct what we shall be. In Jesus' name I pray. Amen. August 1, 2011.

h.      Let us pray. Merciful God, although you made all people in your image, we confess that we live with deep division. Although you sent Jesus to be Savior of the world, we confess that we treat Him as our own personal God. Although you are one, and the body of Christ is one, we fail to display that unity in our worship, our mission, and our fellowship. Forgive our pride and arrogance, heal our souls, and renew our vision. For the sake of your Son, our Savior, the Lord

4

Jesus Christ, Amen.  October 3, 2011.

i.      Let us pray. Father we do thank you for your love, mercy, and your grace.  We
        thank you for this time of the year when we celebrate the birth of Jesus Christ.
        Lord, we realize that the most important thing was not His birth, but His death
        that made a way for us to have life, and have it more abundantly.  We pray you
        would be with us today; give us grace and mercy.  Lord, give us wisdom in the
        decisions that we need to make.  I pray that you would help us, God, to guide
        this county in a way that you would see fit.  Lord, we thank you for it.  In Jesus'
        name, Amen.  December 19, 2011.

j.      Let us pray.  Our Heavenly Father, we will never forget that we are not alive
        unless your life is in us.  We have been blessed to be the recipients of your
        immeasurable grace. We can't be defeated, we can't be destroyed, and we can't
        be denied because we are going to live forever with you through the salvation of
        Jesus Christ.  Lord, be with us today and provide us with your supreme guidance
        and wisdom as we conduct the business of Rowan County.  And, as we pick up
        the Cross, we will proclaim His name above all names, as the only way to eternal
        life.  I ask this in the name of the King of Kings, the Lord of Lords, Jesus Christ.
        March 5, 2012.

k.      Let us pray.  Lord, we do not look to the world for strength or encouragement,
        but we look to your word where we are convinced that you will protect and guard
        that which you have entrusted to us.  By the empowerment of your in-dwelling
        Holy Spirit, help us boldly stand when the world, even those close to us, assault
        our faith.  It is in your strength and your power that we remain faithful.  May the
        purifying of our faith bring praise, glory and honor to Jesus, our Lord and Savior,
        Amen.  May 21, 2012.

l.      Father God, in the name of Jesus, we come to you today thanking you for all
        you've done for us.  Thank you for forgiving us of our sins and giving us eternal
        life.  Lord, we pray that you'll bless us in these meetings today.  We pray that
        you'll guide and direct our thoughts.  Help us to make the right decisions for
        Rowan County, Lord.  We thank you so much for the rain you sent early this
        morning.  We thank you for all you do, in Jesus' name, Amen.  July 2, 2012.

m.      Let us pray.  Father God, we thank you for this day.  Thank you for grace and
        mercy and love.  I thank you so much, Lord, for sending your Son; this is the
        reason for the season, Jesus Christ.  We thank you for all you've done for us
        these last four year.  We pray that you will bless these men and women.  God, I
        pray to you today, that these new commissioners will seek your guidance.  I pray
        that the citizens of Rowan County will love you Lord, and that they will put you

                                        5

first.  In Jesus's name, Amen.  December 3, 2012.

(Compl. ¶ 27(a)-(m) (emphasis omitted); Brook Aff. [Doc. #6-4].)

Since November 5, 2007, every individual who has been a member of the Board has delivered one or more sectarian invocation at a Board meeting, and no invocation given since November 5, 2007, has referenced a deity specific to a faith other than Christianity.  On February 15, 2012, the American Civil Liberties Union of North Carolina Legal Foundation sent a letter to the Board informing the Board that the sectarian prayers delivered at the Board meetings violate the First Amendment of the United States Constitution.  Defendant Rowan County never formally responded, but certain Board members publicly proclaimed their intentions to continue offering Christian prayers.  "For example, then-Commissioner Carl Ford told a local television news station, 'I will continue to pray in Jesus' name.  I am not perfect so I need all the help I can get, and asking for guidance for my decisions from Jesus is the best I, and Rowan County, can ever hope for.'" (Compl. ¶ 31.)

Plaintiffs Lund, Montag-Siegel, and Voelker are long-time citizens and residents of Rowan County, North Carolina, and are active members within the Rowan County community. Each Plaintiff has attended Board meetings on a number of occasions and each Plaintiff has witnessed Board members deliver sectarian prayers that invoke the Christian faith at those meetings.  According to Plaintiffs' Complaint, each Plaintiff intends to continue attending Board meetings but "objects to and is offended by" the sectarian prayers offered at the Board meetings.  Specifically, Plaintiff Lund objects to the legislative prayer practice at issue "because it affiliates the County with one particular faith, Christianity, and sends a message that the

6

County and its Commissioners favor adherents of that faith." (Compl. ¶ 9.) Plaintiff Lund alleges that, as a non-Christian, the sectarian prayers make her feel excluded from the community and the local political process and, further, that she feels pressured to participate in the sectarian prayers when she is present at the Board meetings. Plaintiff Montag-Siegel also objects to the sectarian prayers delivered by the Board, alleging that the prayers cause her to feel excluded at meetings and excluded from the community and, further, that she feels coerced into participating in the prayers, which are not in accordance with her Jewish faith. Plaintiff Montag-Siegel also alleges that "the prayers send a message that the County and the Board favor Christians and that non-Christians, like her, are outsiders." (Compl. ¶ 11.) Plaintiff Voelker similarly objects to the sectarian prayers delivered at the Board meetings, alleging that the prayers make him feel excluded from the community and the local political process. Plaintiff Voelker further alleges that he feels pressured to stand and participate in such prayers because all Commissioners and most audience members stand during the Invocation, and the Invocation is immediately followed by the Pledge of Allegiance, for which Plaintiff Voelker feels strongly that he needs to stand. In addition, Plaintiff Voelker alleges that he expressed his concern about the sectarian prayer practice at a Board meeting and proposed a non-sectarian prayer that the Board could use instead to open the meetings. Plaintiff Voelker now worries that "his failure to participate in the sectarian prayers and his open questioning of this practice will be noted by the Board and make him a less effective advocate before the Board on other issues of interest to him such as educational funding." (Compl. ¶ 14.)

Based on these allegations, Plaintiffs have filed the present action seeking declaratory and

injunctive relief against Defendant Rowan County pursuant to 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and Article I, §§ 13 and 19 of the North Carolina Constitution. In response to Plaintiffs' claims, Defendant contends that Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction, and that Plaintiffs' Motion for Preliminary Injunction should be denied. In addition, Defendant asks that the Court stay further proceedings in this matter pending the United States Supreme Court's decision in the legislative prayer case Galloway v. Town of Greece, N.Y., 681 F.3d 20 (2d Cir. 2012), cert. granted, 133 S. Ct. 2388, 185 L. Ed. 2d 1103 (U.S. May 20, 2013) (No. 12-696). The Court will address the Motion to Dismiss, the Motion for Preliminary Injunction, and the Motion to Stay in turn.

II.     MOTION TO DISMISS

      A.     Legislative Prayer Background

The Fourth Circuit has long prohibited legislative prayer practices involving sectarian prayer under circumstances similar to this case. See e.g., Joyner v. Forsyth Cnty., 653 F.3d 341 (4th Cir. 2011), cert. denied, 132 S. Ct. 1097, 181 L. Ed. 2d 978 (2012); Turner v. City Council of Fredericksburg, 534 F.3d 352 (4th Cir. 2008), cert. denied, 555 U.S. 1099, 129 S. Ct. 909, 173 L. Ed. 2d 109 (2009); Wynne v. Town of Great Falls, 376 F.3d 292 (4th Cir 2004), cert. denied, 545 U.S. 1152, 125 S. Ct. 2990, 162 L. Ed. 2d 910 (2005). In 2011, the Fourth Circuit in Joyner affirmed this Court's ruling granting summary judgment and issuing a permanent injunction against Forsyth County based on a legislative prayer practice that had the effect of affiliating the government with a particular faith. See Joyner, 653 F.3d at 355. In doing so, the Fourth Circuit

8

conducted a thorough analysis of Supreme Court and Fourth Circuit precedent, beginning with Marsh v. Chambers, 463 U.S. 783, 103 S. Ct. 3330, 77 L. Ed. 2d 1019 (1983). The Supreme Court in Marsh acknowledged the legitimacy of legislative prayer generally, noting that such prayer "is deeply embedded in the history and tradition of this country." Marsh, 463 U.S. at 786, 103 S. Ct. at 3333. The Supreme Court then addressed the specific legislative prayer practice at issue in that case, noting that "[a]lthough some of [the chaplain's] earlier prayers were often explicitly Christian, [the chaplain] removed all references to Christ after a 1980 complaint from a Jewish legislator." Id. at 793 n.14, 103 S. Ct. at 3337 n.14. Ultimately, the Supreme Court upheld the legislative prayer practice at issue as constitutional because there was "no indication that the prayer opportunity ha[d] been exploited to proselytize or advance any one, or to disparage any other, faith or belief." Id. at 794-95, 103 S. Ct. at 3338.

Based on the principles set forth in Marsh, the Joyner court noted that Fourth Circuit decisions "have hewed to [the Supreme Court's] approach, approving legislative prayer only when it is nonsectarian in both policy and practice." Joyner, 653 F.3d at 347, 348 ("[B]oth the Supreme Court and this circuit have been careful to place clear boundaries on invocations. That is because prayer in governmental settings carries risks. The proximity of prayer to official government business can create an environment in which the government prefers–or appears to prefer–particular sects or creeds at the expense of others. Such preferences violate '[t]he clearest command of the Establishment Clause': that 'one religious denomination cannot be officially preferred over another.'" (quoting Larson v. Valente, 456 U.S. 228, 244, 102 S. Ct. 1673, 1683, 72 L. Ed. 2d 33 (1982))). As such, the Fourth Circuit stated unambiguously in

9

<u>Joyner</u> that "in order to survive constitutional scrutiny, invocations must consist of the type of nonsectarian prayers that solemnize the legislative task and seek to unite rather than divide. Sectarian prayers must not serve as the gateway to citizen participation in the affairs of local government. To have them do so runs afoul of the promise of public neutrality among faiths that resides at the heart of the First Amendment's religious clauses." <u>Joyner</u>, 653 F.3d at 342-43.

In its Motion to Dismiss, Defendant contends that the present case is distinct from the cases noted above, arguing that the Plaintiffs in this case lack standing to bring the underlying action, that the Court otherwise lacks subject matter jurisdiction based on the political question doctrine, and that Plaintiffs have failed to state a claim against Defendant Rowan County based on the principles set forth in <u>Monell v. N.Y. Department of Social Services of City of New York</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and its progeny. This Court will address each of Defendant's arguments in turn.

B.    <u>Standing</u>

Defendant first contends that Plaintiffs lack standing to bring the present action based on the allegations set forth in the Complaint. In general, "[t]o meet the constitutional minimum for [Article III] standing, a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." <u>Friends of the Earth, Inc. v. Gaston Cooper Recycling Corp.</u>, 204 F.3d 149, 154 (4th Cir. 2000) (internal quotations and citations omitted). Where, as in this case, the plaintiffs seek to bring an Establishment Clause claim, the Fourth Circuit has recognized that "[t]he injury that gives

10

standing to plaintiffs in these cases is that caused by unwelcome direct contact with a religious display that appears to be endorsed by the state." Suhre v. Haywood County, 131 F.3d 1083, 1086 (4th Cir. 1997); see also Pelphrey v. Cobb Cnty., 547 F.3d 1263, 1279 (11th Cir. 2008) ("An actual injury occurs if the plaintiff is subjected to unwelcome religious statements and is directly affected by the law and practices against [which his or her] complaints are directed." (quotations and citations omitted) (alteration in original)).

In the present case, Plaintiffs allege that they each attended a number of Board meetings at which they heard Board members delivering sectarian prayers at the start of each meeting that invoked the Christian faith. Plaintiffs further allege that they intend to continue attending Board meetings, but that they object to and are offended by the legislative prayer practice at issue because Plaintiffs do not subscribe to the religious beliefs promoted by the sectarian prayers delivered. In addition, Plaintiffs allege that the sectarian prayers make them feel excluded from the community and the local political process. Defendant contends that Plaintiffs lack standing to bring the present action because such allegations do not demonstrate "concrete or particularized injuries traceable to any Rowan County policy or practice." (Def.'s Br. in Support of Mot. to Dismiss [Doc. #23], at 31.)[4]  Specifically, Defendant contends that "Plaintiffs are currently under no obligation to participate in any Commission prayer they find offensive, they are not excluded from participation, and they are not being subjected to harassing, taunting or otherwise humiliating actions by the Rowan County Commissioners." (Def.'s Br. in Support

_____

[4] When referring to the page numbers of Defendant's Brief in Support of its Motion to Dismiss [Doc. #23], the Court will use the page number assigned to the document by the Clerk's Office during docketing rather than the page number assigned by Defendant.

11

Mot. to Dismiss [Doc. #23], at 33.)

In support of its position, Defendant appears to contend that Plaintiffs can establish standing *only* upon allegations that they suffered harassment or humiliation of some kind that goes beyond merely hearing the sectarian legislative prayers that Plaintiffs allegedly find offensive. More specifically, Defendant contends that in order to maintain standing in this case Plaintiffs must allege "particularized injuries" like those suffered by the plaintiff in <u>Wynne v. Town of Great Falls</u>, 376 F.3d 292 (4th Cir. 2004). In <u>Wynne</u>, the plaintiff objected to the town council's legislative prayer practice, which involved council members delivering prayers that frequently invoked the Christian faith, a faith to which the plaintiff did not subscribe. <u>Wynne</u>, 376 F.3d at 294-95. After the plaintiff proposed to the town council an alternative to the prayer practice which would limit prayer references to "God" instead of to a uniquely Christian deity, the plaintiff experienced threats and harassment from town citizens and also received negative commentary from certain council members while attending council meetings. <u>Id.</u> at 295. Although the Fourth Circuit did not expressly address the question of standing in <u>Wynne</u>, the court ultimately affirmed the district court's entry of judgment for the plaintiff, "finding that the challenged prayers violated the Establishment Clause and enjoining the Town Council from invoking the name of a specific deity associated with any one specific faith or belief in prayers given at Town Council meetings." <u>Id.</u> at 302 (quotations omitted).

Defendant contends that because Plaintiffs have failed to allege circumstances akin to those experienced by the plaintiff in <u>Wynne</u>, Plaintiffs lack standing to proceed in this case. In considering Defendant's contentions, the Court notes that although allegations of harassment

12

like that suffered by the plaintiff in <u>Wynne</u> likely would be *sufficient* to establish Article III standing in the present case, Defendant cites no authority for its position that alleging such harassment is *necessary* to establish standing under the principles outlined above. Rather, "it is plain that [Plaintiffs], by alleging that [they have] personally heard the consistently Christian prayers of the Board at its meetings, [have] alleged the direct injury sufficient to confer standing to bring this Establishment Clause challenge." <u>Doe v. Pittsylvania Cnty.</u>, 842 F. Supp. 2d 906, 912 (W.D. Va. 2012). Therefore, based on the allegations set forth in the Complaint, the Court concludes that Plaintiffs have standing to bring the present action against Defendant. As such, the Court will deny Defendant's Motion to Dismiss on standing grounds.

C.    <u>Political Question Doctrine</u>

Defendant next contends that the Court lacks subject matter jurisdiction over this case because the relief sought by Plaintiffs is foreclosed by the political question doctrine. As noted above, Plaintiffs ask the Court for a declaratory judgment declaring Defendant's legislative prayer policy, practice, or custom unconstitutional, and further asks the Court to enjoin Defendant "from knowingly and/or intentionally delivering or allowing to be delivered sectarian prayers at meetings of the Rowan County Board of Commissioners." (Pls.' Mot. for Prelim. Inj. [Doc. #5], at 2.) Defendant contends that the Court cannot "formulate a definition and judicial standard for 'sectarian prayer' in purely legal terms that can be consistently and objectively applied by the judiciary to govern prayers." (Def.'s Br. in Support of Mot. to Dismiss [Doc. #23], at 17.) Therefore, Defendant contends that the Court is unable to "designate every prayer as either 'sectarian' or 'nonsectarian,'" as Plaintiffs allegedly request. (Def.'s Br. in Support of

13

Mot. to Dismiss [Doc. #23], at 17.)  As such, Defendant contends that the Court faces a "'nonjusticiable political question'" in this case over which the Court does not have subject matter jurisdiction.  (Def.'s Br. in Support of Mot. to Dismiss [Doc. #23], at 19 (quoting <u>Smith v. Reagan</u>, 844 F.2d 195, 198 (4th Cir. 1988)).)

In consdering Defendant's contentions regarding the political question doctrine, the Court notes that Defendant fails to cite to any legislative prayer case wherein the court has found that the political question doctrine bars consideration of, or ruling on, the "sectarian" or "nonsectarian" nature of prayers delivered as part of a legislative prayer policy, practice, or custom challenged under the Establishment Clause.  Rather, contrary to Defendant's position on this matter, courts, and specifically the Fourth Circuit, have readily analyzed the constitutionality of legislative prayer policies, practices, and customs in view of claims that the legislative prayers involved are impermissibly "sectarian."  <u>See, e.g.</u>, <u>Joyner</u>, 653 F.3d at 349 (noting, in the context of discussing the sectarian nature of the legislative prayers at issue, that "legislative prayer must strive to be nondenominational so long as that is reasonably possible—it should send a signal of welcome rather than exclusion.  It should not reject the tenets of other faiths in favor of just one. Infrequent references to specific deities, standing alone, do not suffice to make out a constitutional case. But legislative prayers that go further—prayers in a particular venue that repeatedly suggest the government has put its weight behind a particular faith—transgress the boundaries of the Establishment Clause"); <u>Wynne</u>, 376 F.3d at 300 (distinguishing "sectarian" prayer and "nonsectarian" prayer, the court stated that "[t]he prayers sponsored by the Town Council have invoked a deity in whose divinity *only* those of the

14

Christian faith believe. This is not a 'prayer within the embrace of what is known as the Judeo–Christian tradition,' which is a 'nonsectarian prayer' without 'explicit references . . . to Jesus Christ, or to a patron saint'—references that can 'foster a different sort of sectarian rivalry than an invocation or benediction in terms more neutral.' [Lee v. Weisman, 505 U.S. 577, 588, 589, 112 S. Ct. 2649, 2655, 2656, 120 L. Ed. 2d 467 (1992)]. Thus, we must reject the Town Council's contention that the Marsh Court's approval of a nonsectarian prayer 'within the Judeo–Christian tradition' equates to approval of prayers like those challenged here, which invoke the exclusively Christian deity—Jesus Christ" (alterations and emphasis in original)); Simpson v. Chesterfield Cnty. Bd. of Sup'rs, 404 F.3d 276, 284 (4th Cir.), cert. denied, 546 U.S. 937, 126 S. Ct. 426, 163 L. Ed. 2d 324 (2005) (upholding the county's legislative prayer policy and noting that the county "aspired to nonsectarianism and requested that invocations refrain from using Christ's name or, for that matter, any denominational appeal"); see also County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter, 492 U.S. 573, 598, 109 S. Ct. 3086, 3103, 106 L. Ed. 2d 472 (1989) ("Indeed, the crèche in this lawsuit uses words, as well as the picture of the Nativity scene, to make its religious meaning unmistakably clear. 'Glory to God in the Highest!' says the angel in the crèche—Glory to God because of the birth of Jesus. This praise to God in Christian terms is indisputably religious—indeed sectarian—just as it is when said in the Gospel or in a church service.").

        Based on this precedent, the relief sought by Plaintiffs in the present case does not ask the Court to resolve a "nonjusticiable political question" over which it does not have subject matter jurisdiction. Rather, the Court finds that it is able both to analyze the sectarian or

15

nonsectarian nature of the legislative prayers delivered as a part of the policy, practice or custom at issue in this case and to grant Plaintiffs the relief requested, as may be warranted.[5]  As the Fourth Circuit noted in <u>Joyner</u>, "[t]he bar for [the] County is hardly a high one.  Public institutions throughout this country manage to regularly commence proceedings with invocations that provide all the salutary benefits of legislative prayer without the divisive drawbacks of sectarianism. . . .  In the end, the constitutional standard asks of the County no more than what numerous public and governmental entities already meet."  <u>Joyner</u>, 653 F.3d at 354.  Based on the foregoing, the Court finds that it has subject matter jurisdiction over the present case and will, therefore, deny Defendant's Motion to Dismiss based on its political question doctrine challenge.

        D.     <u>*Monell* Liability</u>

Defendant further contends that Plaintiffs have failed to state a claim upon which relief can be granted based on the principles set forth in <u>Monell</u>.  As such, Defendant moves to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6).  In reviewing a Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must "'take the facts in the light most favorable to the [non-moving party],' but '[it] need not accept the legal conclusions drawn from the facts,' and '[it] need not accept as true unwarranted inferences, unreasonable conclusions,

---

[5]  In finding that the Court can properly undertake an analysis of the sectarian or nonsectarian nature of legislative prayer in the present case, the Court notes that it has not, and will not, "parse" the content of any particular prayer to determine whether Plaintiffs have sufficiently alleged a constitutional violation.  However, as the Fourth Circuit has stated, "to exercise no review at all–to shut our eyes to patterns of sectarian prayer in public forums–is to surrender the essence of the Establishment Clause and allow government to throw its weight behind a particular faith."  <u>Joyner</u>, 653 F.3d at 351.

or arguments.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). The Supreme Court, in Ashcroft v. Iqbal, noted that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). In this regard, the Iqbal Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," but Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 677-78, 678-79, 129 S. Ct. at 1949, 1950. Thus, dismissal of a complaint is proper where a plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 683, 129 S. Ct. at 1952 (internal quotation omitted)).

Pursuant to Monell, a municipality is not vicariously liable under 42 U.S.C. § 1983 for actions of its employees. See Monell, 436 U.S. at 691-92, 98 S. Ct. at 2036. A municipality is only liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694, 98 S. Ct. at 2037-38. A plaintiff can establish liability under Monell where the constitutional injury is proximately caused by a written policy or ordinance, or by a widespread practice that is "so permanent and well settled as to constitute a 'custom or

17

usage' with the force of law." <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127, 108 S. Ct. 915, 926, 99 L. Ed. 2d 107 (1988) (citation omitted); <u>Lytle v. Doyle</u>, 326 F.3d 463, 471 (4th Cir. 2003).

In the present case, Defendant contends that Plaintiffs have not alleged an unconstitutional policy, practice, or custom of Rowan County for which the County can be held liable. Rather, Defendant contends that Rowan County has a "tradition" of "rotating through the Commissioners to offer a prayer or preside over a moment of silence," and that "[t]he choice of whether to pray, and what to pray, is made by the individual Commissioners, not Rowan County." (Def.'s Br. in Support of Mot. to Dismiss [Doc. #23], at 7.) Defendant further contends that although this "tradition dates back decades, and can be regarded as permanent," it does not carry the force of law and, therefore, <u>Monell</u> liability does not attach to Rowan County. (Def.'s Br. in Support of Mot. to Dismiss [Doc. #23], at 12.) In addition, Defendant contends that "[i]f <u>Monell</u> liability attaches to anything in this suit, it is only to a custom of rotating opportunities for prayer or silent reflection as expressly permitted in <u>Marsh v. Chambers</u>." (Def.'s Br. in Support of Mot. to Dismiss [Doc. #23], at 10.)

Defendant appears to contend first that <u>Monell</u> does not apply in this case because, in Defendant's view, the choice of whether to pray and what to pray about is exclusively that of the individual Commissioners and not that of Rowan County. Therefore, Defendant appears to contend that the prayers delivered by the Commissioners at Board meetings are private rather than government speech. In considering Defendant's contention, the Court notes that Defendant cites no support for its position that prayers delivered by the Commissioners at

18

Board meetings constitute private speech. Moreover, the Court notes that Defendant's argument in this regard has been foreclosed by the Fourth Circuit. See Turner, 534 F.3d at 355 ("It is true that Turner and the other Council members take some personal responsibility for their Call to Order prayers. But given the focus of the prayers on government business at the opening of the Council's meetings, we agree with the District Court that the prayers at issue are government speech. . . . Turner has not cited a single case in which a legislative prayer was treated as individual or private speech."); see also Doe, 842 F. Supp. 2d at 913 ("The Fourth Circuit has repeatedly considered opening prayers at local government meetings to be government speech."). As the Fourth Circuit noted in Joyner, it is "the governmental setting for the delivery of sectarian prayers that court[s] constitutional difficulty, not those who actually gave the invocation." Joyner, 653 F.3d at 350. In the present case, the setting in which the prayers at issue are delivered is a local governmental meeting wherein government business is discussed and where the Commissioners pray in support of that business and of Rowan County. Therefore, the Court finds that the legislative prayers at issue in this case constitute government, rather than private, speech.

Furthermore, to the extent that Defendant contends that Monell does not apply because Rowan County's longstanding tradition with regard to the delivery of prayers at Board meetings does not have the force of law, the Court finds that Defendant misconstrues Monell and its progeny. For example, Defendant makes the following statement in its brief:

> [T]he only possibility under Monell is for a "custom" that rises to the level of being "official municipal policy of some nature." (citation omitted). Such custom must be: (1) "permanent," (2) "well settled," and (3) have "force of law."

19

(Def.'s Br. in Support of Mot. to Dismiss [Doc. #23], at 12 (quoting <u>Adickes v. S.H. Kress &</u> <u>Co.</u>, 398 U.S. 144, 167-168, 90 S. Ct. 1598, 1613-14, 26 L. Ed. 2d 142 (1970).)  Defendant contends that the listed terms constitute the three "elements" required for <u>Monell</u> liability, and that Plaintiffs have failed to allege facts in support of "element" three, that is, that any Rowan County custom has the force of law.  However, Defendant cites to no authority requiring that a plaintiff allege these three "elements" for purposes of <u>Monell</u> liability.  Rather, in <u>Adickes</u>, from which Defendant quotes, the Supreme Court stated that "[a]lthough not authorized by written law, such practices of state officials could well be so permanent and well settled *as to constitute a 'custom or usage' with the force of law*." <u>Adickes</u>, 398 U.S. at 167-168, 90 S. Ct. at 1613-14 (emphasis added).  Such language, taken in context, shows that it is the permanent and well-settled nature of the practice that gives rise to a "custom" with the force of law.  <u>See id</u> at 167, 90 S. Ct. at 1613 ("[W]e think it clear that a 'custom or usage', of (a) State' for purposes of § 1983 must have the force of law *by virtue of the persistent practices of state officials*." (emphasis added)). There are no "elements" to consider, and ultimately prove, separately.  In the present case, Defendant concedes that there is a legislative prayer practice in Rowan County that is both permanent and well-settled.  In fact, Defendant describes such practice as a "tradition" that "dates back decades."  (Def.'s Br. in Support of Mot. to Dismiss [Doc. #23], at 12.)  In view of these statements, and the allegations set forth in the Complaint regarding the nature of the legislative prayers delivered, the Court finds that Plaintiffs have alleged a legislative prayer practice in Rowan County that constitutes a custom with the force of law for purposes of <u>Monell</u> liability.

Furthermore, to the extent that Defendant contends that any policy, practice, or custom in place comports with the Supreme Court's decision in Marsh, and, therefore does not violate Plaintiffs' rights in any way, the Court finds that Plaintiffs sufficiently allege facts to the contrary. In that regard, the Court notes that it is Rowan County's legislative prayer policy, practice, or custom, *as implemented*, that raises constitutional concern in this case. As the Fourth Circuit noted in Joyner, "we cannot turn a blind eye to the practical effects of the invocations at issue here." Joyner, 653 F.3d at 354. As alleged in the Complaint, the practical effects of the legislative prayer practice, policy, or custom alleged in this case are as follows. Plaintiffs allege that 97% of the prayers delivered at Rowan County Board meetings referenced Jesus or another tenet of the Christian faith. As a matter of comparison, the Court notes that, in practice, the legislative prayer policy challenged, and struck down, in Joyner resulted in a reference to Jesus or another tenet of the Christian faith in four-fifths (80%) of the prayers delivered at the start of board meetings. Joyner, 653 F.3d at 344. Furthermore, in the present case, as in Joyner, Plaintiffs allege that they felt unwelcome at the Board meetings, coerced into endorsing Christian prayer, and excluded from their community and local political process because Plaintiffs do not "subscribe to the religious beliefs promoted by the prayers." (Compl. ¶¶ 9, 11, 13.) In addition, although the present case differs from Joyner with respect to who, in practice, delivered the prayers at the governmental meetings–Board members in the present case, versus private clergy members in Joyner–such distinction does not alter the constitutional analysis set forth in Joyner. See Joyner, 653 F.3d at 350 ("It was the governmental setting for the delivery of sectarian prayers that courted constitutional difficulty, not those who actually gave the

21

invocation."). Moreover, the Fourth Circuit has previously found unconstitutional a legislative prayer practice similar to that in the present case where government officials themselves delivered sectarian legislative prayers to start the governmental meeting. Wynne, 376 F.3d at 302 (finding unconstitutional a legislative prayer practice whereby town council members repeatedly delivered sectarian invocations to open council meetings). In addition, Plaintiffs in this case allege that no legislative prayer delivered by the Board referenced any deity specific to any faith other than Christianity during the time period relevant to this case and, further, that the Commissioners intend to continue delivering legislative prayers "'in Jesus' name.'" (Compl. ¶ 31.)

Based on the foregoing, the Court finds that the allegations in the present case are at least comparable to, and arguably more egregious than, other legislative prayer practices struck down by the Fourth Circuit for failure to comport with the constitutional dictates in Marsh. See Wynne, 376 F.3d at 298-99 ("Rather than engaging in the sort of 'legislative prayer' approved of in Marsh, the Town Council has improperly 'exploited' a 'prayer opportunity' to 'advance' one religion over others. . . . In Marsh, the approved prayer was characterized as 'nonsectarian' and 'civil'; indeed, the chaplain had affirmatively 'removed all reference to Christ. Here, on the other hand, the prayers sponsored by the Town Council 'frequently' contained references to 'Jesus Christ,' and thus promoted one religion over all others, dividing the Town's citizens along denominational lines. . . . Indeed, the Allegheny Court clarified that it only upheld the prayer in Marsh against Establishment Clause challenge because the Marsh prayer did *not* violate this nonsectarian maxim–'*because* the particular chaplain had removed all references to Christ.'"

Wynne, 376 F.3d at 298-99 (quoting Allegheny, 492 U.S. at 603, 109 S. Ct. at 3106) (emphasis in original) (internal citations omitted)).  Therefore, the Court concludes that Plaintiffs have sufficiently alleged an unconstitutional practice, policy, or custom under Monell for which Defendant Rowan County may be held liable and have otherwise alleged facts sufficient to defeat Defendant's Motion to Dismiss for failure to state a claim.  As such, the Court will deny Defendant's Motion to Dismiss in this regard.

III.    MOTION FOR PRELIMINARY INJUNCTION

Based on the allegations discussed throughout this Memorandum Opinion and Order, Plaintiffs have filed a Motion for Preliminary Injunction seeking to enjoin Defendant Rowan County from knowingly and/or intentionally delivering or allowing to be delivered sectarian prayers at meetings of the Rowan County Board of Commissioners.  "A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008).  A movant seeking injunctive relief must establish four elements before such relief may issue: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  Id. at 20, 129 S. Ct. at 374.  All four elements must be satisfied.  Id.

With regard to the likelihood of success on the merits, Defendant's arguments against granting Plaintiffs' Motion for Preliminary Injunction are essentially the same as those raised in favor of granting Defendant's Motion to Dismiss.  As noted above, the Court finds that Plaintiffs have sufficiently alleged facts to support its claims in this action and to defeat

23

Defendant's Motion to Dismiss on all grounds asserted. Based on the Fourth Circuit precedent discussed herein and the evidence Plaintiffs have submitted in this case, including affidavits of each of the Plaintiffs, Board meeting agendas, and transcriptions of the prayers delivered at Board meetings since November 5, 2007, the Court finds that Plaintiffs have shown a likelihood of success on the merits of all claims.

With regard to the likelihood of irreparable harm, the Supreme Court has held that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter, 555 U.S. at 22, 129 S. Ct. at 375 (emphasis in original); see also The Real Truth About Obama, Inc. v. Federal Election Comm'n, 575 F.3d 342, 347 (4th Cir. 2009), vacated and remanded, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010), reissued as to Parts I and II, 607 F.3d 355 (4th Cir. 2010) ("Winter requires that the plaintiff make a clear showing that it is likely to be irreparably harmed absent preliminary relief."). In the present case, Plaintiffs have provided evidence that 97% of the Board meetings since November 5, 2007, have included a sectarian prayer invoking the Christian faith, that no prayer has invoked a deity specific to any faith other than Christianity, and that Commissioners have expressed their intent to continue delivering prayers in Jesus' name at the start of the Board meetings. Furthermore, Plaintiffs have shown that they intend to continue attending Board meetings in the future, but that they are offended by the sectarian prayers delivered therein and feel excluded from the community and the political process as a result of such prayers. Based on the foregoing, the Court finds that Plaintiffs likely will suffer irreparable harm each time they attend a Board meeting unless the Court enjoins Defendant from delivering or allowing others to deliver

24

sectarian prayers at the Board meetings during the pendency of this suit.  See Doe, 842 F. Supp. 2d at 935 ("The evidence that the Board routinely opens its meetings with Christian prayer makes it abundantly clear that plaintiff is likely to prevail on the claimed Establishment Clause violations which, even for a short period of time, constitute irreparable harm sufficient for preliminary injunction purposes. Every time plaintiff attends a Board meeting and comes in direct contact with an overtly Christian prayer, she experiences a recurring First Amendment injury.  The uncontradicted evidence submitted in support of the preliminary injunction motion establishes that the Board's opening prayers consistently, repeatedly and specifically refer to the Christian deity.  Because plaintiff asserts that she will continue attending Board meetings in the future, she will likely suffer this First Amendment injury over and over again during the pendency of this litigation as long as the Board continues its routine practice of beginning each meeting with a decidedly Christian invocation.").

In considering whether to impose a preliminary injunction, the Court must also "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  Winter, 555 U.S. at 24, 129 S. Ct. at 376 (internal quotations omitted).  In the present case, as noted above, Plaintiffs will suffer irreparable harm absent an injunction.  In contrast, Rowan County will not be not harmed in any way by the issuance of a preliminary injunction "that prevents it from continuing its [sectarian] prayer practice, which, on this record, is likely to be found unconstitutional."  Doe, 842 F. Supp. 2d at 935.  Moreover, issuing a preliminary injunction in this case will not prevent Defendant from solemnizing the Board meetings in a manner consistent with the Constitution and the cases

cited herein. As such, the Court finds that the balance of equities tips in favor of injunction in this case.

Finally, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24, 129 S. Ct. at 376-77 (internal quotation omitted). In that regard, the Fourth Circuit has stated that "upholding constitutional rights surely serves the public interest." Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 521 (4th Cir. 2002). For the reasons discussed throughout this Memorandum Opinion and Order, the Court finds that the injunctive relief sought by Plaintiffs in this case would serve that public interest. Therefore, based on the foregoing, the Court will grant Plaintiffs' Motion for Preliminary Injunction and will enjoin Defendant from knowingly and/or intentionally delivering or allowing to be delivered sectarian prayers at meetings of the Rowan County Board of Commissioners during the pendency of this suit.

IV.    MOTION TO STAY

After briefing both the Motion for Preliminary Injunction and the Motion to Dismiss, Defendant filed a Motion to Stay further proceedings in this case pending the Supreme Court's decision in Galloway v. Town of Greece, N.Y., 681 F.3d 20 (2d Cir. 2012), cert. granted, 133 S. Ct. 2388, 185 L. Ed. 2d 1103 (U.S. May 20, 2013) (No. 12-696). In Galloway, the Second Circuit, in a case of first impression for that court, reversed the district court's grant of summary judgment, which was in favor of the town council's legislative prayer practice, and concluded that "an objective, reasonable person would believe that the town's prayer practice had the

26

effect of affiliating the town with Christianity." Galloway, 681 F.3d at 33. Defendant requests that the Court hold the present case in abeyance because the parties, and the Court, "potentially [will] be required to revisit the issue[s in this case] in light of whatever standards the Supreme Court sets in Galloway." (Def.'s Br. in Support of Mot. to Stay [Doc. #32], at 8-9.)[6]

In considering Defendant's Motion to Stay, the Court notes that Defendant's request requires the Court to speculate about how the Supreme Court may resolve Galloway and what impact the Supreme Court's decision may have on the present case. However, as discussed above, the applicable law, as it stands today, prohibits the type of sectarian legislative prayer at issue in Galloway, and alleged in this case. See e.g., Joyner, 653 F.3d 341; Turner, 534 F.3d 352; Wynne, 376 F.3d 292. The Court finds no reason to ignore the current state of the law and stay this case in anticipation of what the Supreme Court may or may not do at some point in the future. Based on current and binding precedent, and for the reasons noted above, the Court finds that Plaintiffs are entitled to injunctive relief at this time. Furthermore, the Court finds that Plaintiffs will suffer irreparable harm should the Court delay granting such injunctive relief due to operation of a Stay. Therefore, to provide Plaintiffs the protection of a Preliminary Injunction, to which they are presently entitled under current law, the Court will deny Defendant's Motion to Stay at this time.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss [Doc. #22] is DENIED. IT IS FURTHER ORDERED that Plaintiffs' Motion for Preliminary Injunction

_____

[6] When referring to the page numbers of Defendant's Brief in Support of its Motion to Stay [Doc. #32], the Court will use the page number assigned to the document by the Clerk's Office during docketing rather than the page number assigned by Defendant.

[Doc. #5] is GRANTED and Defendant Rowan County, North Carolina is hereby ENJOINED from knowingly and/or intentionally delivering or allowing to be delivered sectarian prayers at meetings of the Rowan County Board of Commissioners during the pendency of this suit. FINALLY, IT IS ORDERED that Defendant's Motion to Stay Proceedings or in the Alternative for a Status and Scheduling Conference [Doc. #30] is DENIED.

This, the 23rd day of July, 2013.

United States District Judge