# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### No.: 1:13-cv-207-JAB-JLW

LUND, et al.       )
  Plaintiffs,     )  **DEFENDANT'S BRIEF**
          )  **IN SUPPORT OF ITS**
v.         )  **MOTION FOR**
          )  **SUMMARY JUDGMENT**
ROWAN COUNTY, NORTH CAROLINA )
  Defendant.     )

/s/ David C. Gibbs III
David C. Gibbs III *
D.C. Bar No.: 448476
President, National Center for
Life and Liberty
P.O. Box 270548
Flower Mound, Texas 75027-0548
Ph: (727) 362-3700
Fax: (727) 398-3907
dgibbs@gibbsfirm.com


/s/ Bryce Neier
Bryce Neier - Local NC Counsel
2525 Raeford Road, Suite D
P.O. Box 87164
Fayetteville, NC 28304
Ph: (910) 423-5000
Fax: (910) 423-5000
bryceneier@aol.com

*COUNSEL FOR DEFENDANT*

*\* By special appearance pursuant to Local Rule 83.1(d)*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………….…………………….................iii

STATEMENT OF THE CASE………………………………………………….................1

STATEMENT OF UNCONTESTED RELEVANT MATERIAL FACTS…….…...............2

ARGUMENT …………………………………………………………………….............3

I.      THE UNITED STATES SUPREME COURT IN *TOWN OF GREECE*
        REAFFIRMED ITS *MARSH* LEGISLATIVE INVOCATION STANDARD
        PERMITTING REPEATED EXPOSURE TO LEGISLATIVE PRAYERS WITH
        SECTARIAN CONTENT………………………………………………….…........3

II.     IN *TOWN OF GREECE*, THE U.S. SUPREME COURT SPECIFICALLY
        STATED THAT PERMITTING REPEATED EXPOSURE TO LEGISLATIVE
        PRAYERS WITH DISTINCTLY SECTARIAN CONTENT DOES NOT
        VIOLATE THE CONSTITUTION EVEN WHEN IT OFFENDS SOME
        LISTERNERS.............................................................................................................5

III.    DEFENDANT'S LEGISLATIVE INVOCATIONS MEET THE SUPREME
        COURT'S STANDARD FOR CONSTITUTIONALITY WITH REGARD TO
        CONTENT……………………………………………………………………......7

        A.      Rowan County's opening legislative prayers do not preach conversion,
                denigrate other faiths, or threaten damnation……………………………..9

        B.      Rowan County's Commissioners do not coerce citizens to participate in the
                opening legislative prayers or make participation in the prayers a factor in
                policymaking.………………………………………………………….....…11

IV.     LEGISLATIVE INVOCATIONS MAY BE OFFERED BY ANYONE, WHETHER
        PRIVATE CITIZENS, CLERGY, CHAPLAINS, LEGISLATORS OR OTHER
        GOVERNMENT OFFICIALS.………………………………….....…………….13

V.      DEFENDANT'S LEGISLATIVE INVOCATIONS CONFORM TO CONTENT
        SEEN THROUGHOUT AMERICAN HISTORY AND ARE, THEREFORE,
        CONSISENT WITH THE ESTABLISHMENT CLAUSE………………………..16

CONCLUSION.…………………………………………………..………….19

Case 1:13-cv-00207-CCE-JLW   Document 51-1   Filed 01/20/15   Page 2 of 25

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................................2

*A.T. Massey Coal Co. v. Massanari*, 305 F.3d 226 (4th Cir. 2002)..........................…........11

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998)……………………………….…………..........14

*County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573 (1989)......1, 3, 4, 12

*Galloway v. Town of Greece*, 681 F.3d 20 (2nd Cir. 2013), *rev'd*, 134 S.Ct. 1811 (May 5, 2014)......................................................................................................................6, 12

*Gravel v. U.S.,* 408 U.S. 606 (1972)..................................................................................14

*Joyner v. Forsyth County,* District Court Case No. 10-1232, Order, Slip Op at 4 (January 28, 2010)…………………………………………………………………….……..15

*Joyner v. Forsyth County, N. C.*, 653 F.3d 341 (4th Cir. 2011)..........................1, 3-4. 6, 8

*Lee v. Weisman*, 505 U.S. 577 (1992)........................................................................10, 17

*Marks v. United States*, 430 U.S. 188 (1977). ...................................................................11

*Marsh v. Chambers*, 463 U.S. 783 (1983)...............................................................passim

*Town of Greece v. Galloway*, 134 S.Ct. 1811 (2014)..……………….…………….passim

*United States v. Cotton*, 535 U.S. 625 (2002)……………………….….……………..14

*United States v. Johnson*, 383 U.S. 169 (1966)..................................................................14

*Valley Forge Christian Coll. v. Ams. United*, 45 U.S. 464 (1982)…………….……….14

*W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943)........................................................12

Case 1:13-cv-00207-CCE-JLW   Document 51-1   Filed 01/20/15   Page 3 of 25

## UNITED STATES CONSTITUTION

U.S. CONST. art. I, § 6, cl. 1.....................................................................................................13

## STATUTES

42 U.S.C. § 1983.........................................................................................1, 14

## RULES

Fed. R. Civ. P. 56........................................................................................2

## OTHER

*Joyner v. Forsyth Cnty*, Case No. 1:07-cv-00234-JAB-LPA, Minute Entry (11/20/2014)...................................................................................15

iv

Defendant Rowan County respectfully submits this Memorandum in support of its Motion for Summary Judgment under Fed. R. Civ. P. 56, because there are no genuine issues of relevant material fact and Defendant is entitled to judgment as a matter of law.

## STATEMENT OF THE CASE

Plaintiffs filed their Complaint on March 12, 2013, seeking declaratory and injunctive relief and nominal damages against Defendant regarding sectarian content in its legislative invocations, pursuant to 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and Article I, §§ 13 and 19 of the North Carolina Constitution. ECF 1 ¶ 5. On July 23, 2013, this Court preliminarily enjoined Defendant (relevant to its Board of County Commissioners) from continuing to offer legislative invocations with sectarian content, relying on U.S. Court of Appeals for the Fourth Circuit precedent prohibiting certain legislative prayer practices with sectarian content. *See e.g., Joyner v. Forsyth County* , 653 F.3d 341 (4th Cir. 2011), *cert. den'd,* 132 S.Ct. 1097 (2012).

On May 5, 2014, in *Town of Greece v. Galloway*, 134 S.Ct. 1811, 1823-24 (2014), the United States Supreme Court clarified and reaffirmed its previous holding in *Marsh v. Chambers,* 463 U.S. 783, 794-95 (1983)---thereby making clear that the content of a legislative invocation is of no concern to judges where there is no indication the prayer opportunity was "exploited to proselytize or advance any one, or to disparage any other, faith or belief." *Id.* This is "the *Marsh/Town of Greece"* standard for protection of legislative prayer. In addition, the Court rejected an interpretation of dictum in *County of*

1

*Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 603 (1989), which had been used to suggest that sectarian content in legislative invocations is unconstitutional.

The matter of Rowan County's legislative invocations is now before this Court on cross motions for Summary Judgment under Fed. R. Civ. P. 56. *See*, e.g., *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

## STATEMENT OF UNCONTESTED RELEVANT MATERIAL FACTS

Rowan County is a political subdivision of the State of North Carolina with a commission form of legislative government. ECF 25, p. 3. The Plaintiffs are citizens and residents of Rowan County, North Carolina. ECF 1, ¶¶ 8, 10, 12. Plaintiffs have attended various meetings of the Rowan County Board of Commissioners (hereinafter, "Board") and allege they were offended and felt excluded and uncomfortable by the sectarian content of some Commissioners' invocations. Plaintiffs further allege that they have felt coerced and fear diminished political effectiveness because of their disagreements with the invocations; however, the Plaintiffs do not either allege or produce evidence to demonstrate actual coercion or that they have ever actually suffered penalties or been denied the opportunity to participate in the local political process based on their objections to the prayers. *See, e.g.,* ECF 1, ¶¶ 9, 11, 13; ECF. 6, Exh A ¶¶ 10 – 13; Exh B ¶¶ 6, 9 – 13; Exh C ¶¶ 5, 7 - 13.

The Board has no written prayer policy. ECF 23, Exhs. A-E at ¶¶ 5 & 7. Instead, each Commissioner is permitted, on a rotating basis, to voluntarily decline to pray or choose to offer a prayer to solemnize the meeting after the legislative session has been

2

called to order. The decision of whether or how to solemnize the Board meeting is determined by each individual Commissioner during his or her turn in the rotation. No citizen is required to participate in the invocation. Attendees may remain seated, leave the room, or arrive after the invocation has been given to participate only in the Pledge of Allegiance and the business portion of the meeting. *Id.* at ¶¶ 6, 8-19.

## ARGUMENT

**I.     The United States Supreme Court in *Town of Greece* reaffirmed its *Marsh* legislative invocation standard permitting repeated exposure to legislative prayers with sectarian content.**

The interpretation by the U.S. Court of Appeals for the Fourth Circuit imposing constitutional limits on the sectarian or theological content of legislative invocations has been expressly rejected by the U.S. Supreme Court. *Town of Greece v. Galloway*, 134 S.Ct. 1811, 1818-24 (2014). The Fourth Circuit Court of Appeals previously prohibited frequent references in opening legislative prayers to Deities distinctive to a particular faith, such as Christianity, based on its interpretation of Supreme Court precedent set forth in *Marsh v. Chambers*, 463 U.S. 783, 794-95 (1983), in light of dictum in *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 603 (1989). The Supreme Court has now made clear in *Town of Greece* that the legislative invocations, which are the subject of this litigation, do not violate the Constitution.

The Fourth Circuit Court of Appeals, and therefore this Court, previously relied on dictum in *Allegheny*, 492 U.S. at 603, in support of its finding "requiring legislative prayers to embrace a non-sectarian ideal." *Joyner v. Forsyth County*, 653 F.3d 341, 347 (4th Cir.

3

2011). The Circuit Court had concluded that *Marsh* was the only Supreme Court precedent to have directly considered a challenge to legislative prayers, but that "efforts at ecumenism were essential to the [*Marsh*] Court's holding." *Joyner* at 347. The Fourth Circuit Court accepted *Allegheny's* recasting of the facts and rationale of *Marsh* so as to conclude that "[t]he legislative prayers involved in *Marsh* did not violate [the Establishment Clause] *because* the particular chaplain had 'removed all references to Christ.'" *Joyner* at 348 (citing *Allegheny*, 492 U.S. at 603) (emphasis in the original).

The United States Supreme Court has now expressly rejected that interpretation of *Allegheny*'s dictum, clearly stating:

> The contention that legislative prayer must be generic or nonsectarian derives from dictum in *Allegheny*, 492 U.S. 573, that was disputed when written and has been repudiated by later cases.... Four dissenting Justices disputed that endorsement could be the proper test.... ... The Court sought to counter this criticism by recasting *Marsh* to permit only prayer that contained no overtly Christian references ....
>
> ....
>
> This proposition is irreconcilable with the facts of *Marsh* and with its holding and reasoning. *Marsh* nowhere suggested that the constitutionality of legislative prayer turns on the neutrality of its content.... Nor did the Court imply the rule that prayer violates the Establishment Clause any time it is given in the name of a figure deified by only one faith or creed....
>
> ....
>
> To hold that invocations must be nonsectarian would force the legislatures that sponsor prayers and the courts that are asked to decide these cases to act as supervisors and censors of religious speech, a rule that would involve government in religious matters to a far greater degree than is the case under the town's current practice of neither editing or approving prayers in advance nor criticizing their content after the fact.

*Town of Greece*, 134 S.Ct. at 1821-22.

Not only has the Supreme Court clearly rejected the *Allegheny* dicta previously relied on by the Fourth Circuit and therefore by this Court, the Supreme Court also clarified

4

that government may not limit the theological content of opening legislative prayers and must permit prayers to contain content distinctive to the prayer giver's faith, stating, "Once it invites prayer into the public sphere, government must permit a prayer giver to address his or her own God or gods as conscience dictates, unfettered by what an administrator or judge considers to be nonsectarian." *Town of Greece* at 1822-23.

The decision in *Town of Greece* is not limited to prayers offered by invited clergy, but applies to all legislative invocations.[1] This decision is now binding on this Court, and therefore, requires judgment as a matter of law for the Defendant.

## II. In *Town of Greece,* the U.S. Supreme Court specifically stated that permitting repeated exposure to legislative prayers with distinctly sectarian content does not violate the Constitution even when it offends some listeners.

Plaintiffs' Complaint alleged offense at observing repeated Christian references during opening invocations at Board meetings; however, the Supreme Court has now made clear in *Town of Greece* that Plaintiffs' feelings of offense, of being left out, and fears of divisiveness and diminished political effectiveness do not amount to unconstitutional religious coercion. The relevant material facts in *Town of Greece* and in the case at bar are

---

[1] In *Town of Greece,* the Supreme Court clarified that the *Marsh* standard protecting legislative prayer is not dependent on the theological content of the prayers or on the identity of the prayer giver, but focuses on the purpose of those prayers.

> The relevant constraint [on content] derives from its place at the opening of legislative sessions, where it is meant to lend gravity to the occasion and reflect values long part of the Nation's heritage. Prayer that is solemn and respectful in tone, that invites lawmakers to reflect upon shared ideals and common ends before they embark on the fractious business of governing, serves that legitimate function.

*Town of Greece,* 134 S.Ct at 1823.

Case 1:13-cv-00207-CCE-JLW   Document 51-1   Filed 01/20/15   Page 9 of 25

strikingly similar. In both cases the opening legislative prayers were challenged because the prayer givers primarily chose to deliver prayers with distinctly Christian references. ECF 1, ¶ 27; *Town of Greece*, 134 S.Ct. at 1817-18. In both cases the challengers claimed that being exposed to repeated Christian prayers at a local public meeting was offensive to the Plaintiffs and constituted impermissible coercion. ECF No. 1 ¶¶ 9, 11, 13, 14; *Town of Greece* at 1824-25. In both cases, the challengers argued that the sectarian theological content of these prayers rendered them unconstitutional as violative of the First Amendment Establishment Clause. ECF 1 ¶ 5; *Town of Greece* at 1817. And in both cases, the Circuit Courts concluded that the mere presence of repeated Christian prayers was sufficient to create an effective governmental endorsement of Christianity in violation of the Constitution. *Joyner v. Forsyth*, 653 F.3d 341, 354-55 (4th Cir. 2011); *Galloway v. Town of Greece*, 681 F.3d 20, 30 (2nd Cir. 2013), *rev'd*, 134 S.Ct. 1811 (May 5, 2014).

Faced with claims about offense and the divisive impact of sectarian Christian prayers at public meetings, the Supreme Court, in *Town of Greece*, expressly rejected the contention that such concerns support the finding of a constitutional violation. Indeed, the Court rejected the contention that a faith-specific legislative invocation violates the Constitution:

> Prayer that reflects beliefs specific to only some creeds can still serve to solemnize the occasion....
> ....
> Even those who disagree as to religious doctrine may find common ground in the desire to show respect for the divine in all aspects of their lives and being. Our tradition assumes that adult citizens, firm in their own beliefs, can tolerate and perhaps appreciate a ceremonial prayer delivered by a person of a different faith.

6

*Town of Greece*, 134 S.Ct. at 1823.

In response to plaintiff claims that sectarian prayers offended them and made them feel coerced, excluded and disrespected, the Court responded, "Offense, however, does not equate to coercion. Adults often encounter speech they find disagreeable; and an Establishment Clause violation is not made out any time a person experiences a sense of affront from the expression of contrary religious views in a legislative forum ...." *Id.* at 1826. The Court further noted that "in the general course legislative bodies do not engage in impermissible coercion merely by exposing constituents to prayer they would rather not hear and in which they need not participate." *Id.* at 1827. Similarly, in the case at bar, Plaintiffs' claims of offense, coercion and hurt feelings do not justify an adverse ruling by this Court against Rowan County.

The Supreme Court's *Town of Greece* decision does not support claims of offense as the basis for declaring legislative prayer unconstitutional, thereby dictating that this Court follow Supreme Court precedent in granting judgment to Rowan County as a matter of law.

## III.    Defendant's legislative invocations meet the Supreme Court's standard for constitutionality with regard to content.

In *Town of Greece,* the Supreme Court clarified that the standard governing the constitutionality of legislative prayer is not dependent upon the theological content of the prayers. *Town of Greece*, 134 S.Ct. at 1822-23. The Court cautioned only against prayer practices which, over time, clearly demonstrate that the invocations actually denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion. *Id.* at 1824.

7

That *Marsh/Town of Greece* standard in now binding on this Court, effectively nullifying the Fourth Circuit's previous declaration that even "sectarian" prayers that are non-denigrating, non-threatening, and that do not preach conversion constitute impermissible proselytizing and advance a particular religion. *Joyner,* 653 F.3d at 352 ("[W]e looked at the district court's factual findings about the frequency with which the council 'invoked 'Jesus,' 'Jesus Christ,' 'Christ,' or 'Savior'' in determining whether the prayer actually did proselytize or advance a particular sect").

Therefore, the sectarian content of legislative invocations chosen by individual Commissioners in Rowan County does not render them unconstitutional, despite the hurt feelings, fears or offense taken by Plaintiffs when such prayers are offered. *Town of Greece* at 1824 ("Absent a pattern of prayers that over time denigrate, proselytize, or betray an impermissible government purpose, a challenge based solely on the content of a prayer will not likely establish a constitutional violation"). Rowan County's legislative invocations are consistent with the Establishment Clause, as *Town of Greece* has restated and reaffirmed the *Marsh* standard for the protection of sectarian legislative prayers. In *Town of Greece*, the Supreme Court restated the rule for legislative prayer, clarified *Marsh* and reaffirmed the *Marsh* standard in its entirety.

Since there are no genuine issues pertaining to any relevant material fact and the Commissioners' prayers are fully authorized both by *Marsh* and *Town of Greece*, Defendant is entitled to judgment as a matter of law.

## A. Rowan County's opening legislative prayers do not preach conversion, denigrate other faiths, or threaten damnation.

Prayer content only violates the Establishment Clause if it preaches conversion, or denigrates or threatens damnation to adherents of other faiths or of no faith. The Supreme Court emphasized that federal judges are not concerned with prayer content so long as "there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief." *Town of Greece*, 134 S.Ct. at 1814 (quoting *Marsh*, 463 U.S. at 794–95). Plaintiffs in the case at bar, however, have attempted to redefine "proselytize" and "disparage" to encompass far more than the dictionary or the Court's definitions of those words. *See, e.g.*, ECF 1 ¶ 27. Furthermore, any prayers (even nonsectarian ones) arguably advance the particular faith of the prayer giver because a prayer will always express some religious belief or non-belief with which at least some people hearing the prayer will disagree. For example, for an atheist plaintiff, *any* prayer to *any* God or gods would express a belief that he or she does not share.

Apparently realizing these difficulties, the Supreme Court in *Town of Greece* reinforced the plain dictionary meaning of those words, restating the rule from *Marsh* that legislative prayer violates the Establishment Clause only if the prayer opportunity is exploited to "denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion[.]" *Town of Greece* at 1823. The Court noted that typical legislative prayers seek blessings such as justice and freedom, and do not become an establishment of religion merely if "a prayer is given in the name of Jesus, Allah, or Jehovah, or . . . makes passing references to religious doctrines[.]" *Id.*

9

"To hold that invocations must be nonsectarian would force the legislatures that sponsor prayers and the courts that are asked to decide these cases to act as supervisors and censors of religious speech, a rule that would involve government in religious matters to a far greater degree[.]" *Id.* at 1822. The Establishment Clause requires no such rule, and moreover, prohibits any rule enabling courts to sit as theological review boards.

"Government may not mandate a civic religion that stifles any but the most generic reference to the sacred any more than it may prescribe a religious orthodoxy." *Id.* (citing, *inter alia*, *Lee v. Weisman*, 505 U.S. 577, 590 (1992)). The Supreme Court in *Town of Greece* rejected the argument that prayers must be addressed "to a generic god," because the "law and the Court could not draw this line" or require individuals to set aside their specific personal beliefs. *Town of Greece*, 134 S.Ct. at 1822. Instead the Court held that if a body chooses to have legislative prayer at all, "government must permit a prayer giver to address his or her own God or gods as conscience dictates, unfettered by what an administrator or judge considers to be nonsectarian." *Id.* at 1822-1823. Furthermore, isolated violations of these principles do not invalidate a prayer practice. *Id.* at 1824. ("*Marsh*, indeed, requires an inquiry into the prayer opportunity as a whole, rather than into the contents of a single prayer." (*citing Marsh*, 463 U.S. at 794-795)).

Absent a "pattern of prayers" that transgresses the lines of preaching conversion, threatening damnation, or denigrating those of differing faiths, there is no Establishment Clause violation. *Id.* at 1824. No such pattern is present in the instant case, requiring judgment as a matter of law for the Defendant.

10

**B.**   **Rowan County's Commissioners do not coerce citizens to participate in the opening legislative prayers or make participation in the prayers a factor in policymaking.**

*Town of Greece* noted several factors that might have changed the Court's analysis. These were (1) local legislators required the audience to participate in the prayer, (2) legislators singled out dissidents for scorn, and (3) proposals or requests presented by dissenters would receive less favorable consideration. *Id.* at 1826 (plurality opinion of Kennedy, J.).[2] The Plaintiffs here have alleged only non-specific and subjective fears of such behaviors in Rowan County, with no evidentiary support. Even when the audience might be invited to rise or join in the prayer, Plaintiffs do not allege any specific occurrences where penalties were actually imposed for ignoring an invitation. ECF 1. The Supreme Court pointed out that the fact that local legislators or municipal staff might stand, bow heads, or make the sign of the cross, does not in any way coerce the public to do the same. *Town of Greece,* 134 S.Ct. at 1826. Only a policy or custom "that classified citizens based on their religious views would violate the Constitution[.]" *Id.* Plaintiffs do not allege any such thing is happening in Rowan County, nor could they.

Instead, this Court's inquiry turns on whether Rowan County's legislative prayers are used to "coerce or intimidate" the Plaintiffs, *id.* (plurality opinion), in a way that is "real and substantial[.]" *Id.* at 1827. "But in the general course legislative bodies do not engage in impermissible coercion merely by exposing constituents to prayer they would rather not

---

[2] In addition to the majority opinion, Justice Kennedy's plurality opinion is likewise controlling. *A.T. Massey Coal Co. v. Massanari*, 305 F.3d 226, 236 (4th Cir. 2002) (*citing Marks v. United States*, 430 U.S. 188, 193 (1977)).

Case 1:13-cv-00207-CCE-JLW   Document 51-1   Filed 01/20/15   Page 15 of 25

hear and in which they need not participate." *Id.* (*citing Allegheny*, 492 U.S. at 670 (Kennedy, J., concurring in the judgment in part and dissenting in part)).

"It is an elemental First Amendment principle that government may not coerce its citizens 'to support or participate in any religion or its exercise.'" *Town of Greece,* 134 S.Ct. at 1825 (*quoting Allegheny*, 492 U.S. at 659 (Kennedy, J., concurring in the judgment in part and dissenting in part)). In adopting the coercion test from the *Allegheny* dissenters as the principle underlying the *Marsh/Town of Greece* standard, the Court rejected the notion that the endorsement test narrowly adopted 5-4 in *Allegheny*, 492 U.S. at 592, applies to legislative prayer cases.[3]

The mere act of hearing legislative prayers with which one disagrees is not coercive. "That many appreciate these acknowledgements of the divine in our public institutions does not suggest that those who disagree are compelled to join the expression or approve of its content." *Town of Greece*, 134 S.Ct. at 1825 (citing *W. Va. Bd. of Ed. v. Barnette,* 319 U.S. 624, 642 (1943)). Plaintiffs have not provided evidentiary support for their allegations of coercion or diminished political influence in the instant case, and Defendant is entitled to judgment as a matter of law.

---

[3] The Court said nothing to cabin this part of its holding to legislative prayer, suggesting that this coercion test may now have replaced the endorsement test as the general rule for Establishment Clause cases. The Supreme Court dismissed the applicability of the "endorsement" test by refusing to even consider that test in the context of legislative prayers. *Galloway v. Town of Greece*, 681 F.3d 20, 30 (2nd Cir. 2013), and *Town of Greece*, 134 S.Ct. 1811 (2014).

12

## IV. Legislative invocations may be offered by anyone, whether private citizens, clergy, chaplains, legislators, or other government officials.

Legislative prayers may be offered either by invited citizens or by government officials. Such prayer givers would include the legislators themselves. The Supreme Court's *Marsh/Town of Greece* legislative prayer standard does not omit legislators as prayer givers. In fact, the Court mentioned legislators in the context of invocations, noting that "[f]or members of town boards and commissions, who often serve part-time and as volunteers, ceremonial prayer may also reflect the values they hold as private citizens. The prayer is an opportunity for them to show who and what they are without denying the right to dissent by those who disagree." *Town of Greece*, 134 S.Ct. at 1826.

The discussion in *Town of Greece* concerning private citizen/clergy prayers resulted from the challengers' efforts to "distinguish the [challenged] prayer practice from the tradition upheld in *Marsh*[.]" *Town of Greece* at 1824. The Court rejected all of those distinctions, and upheld the municipality's prayer practice in *Town of Greece* by applying the same test under which government officials (*i.e.,* a paid chaplain) offered prayers in *Marsh*. There is no difference between a legislative prayer offered by an invited clergy member or citizen and a legislative prayer offered by a government official, which would include legislators.[4] Legislative invocations in Rowan County must be evaluated under this *Marsh/Town of Greece* standard.

---

[4] Defendant contends that legislators have even more constitutional protections with regard to their invocations than invited clergy (in *Town of Greece*) or paid chaplains (in *Marsh*) since legislators have additional constitutional immunity protection for any speech or debate uttered during a legislative session. U.S. CONST. art. I, § 6, cl. 1 ("The Senators and Representatives . . . for any Speech or Debate in either House, they shall not be questioned in any other Place.") This would include speech used to solemnize the meeting. While Defendant would welcome the

13

*Town of Greece* noted with full approval that Congress' practice—both in the First Congress that wrote the Establishment Clause, as well as today—is to "appoint and pay official chaplains." *Town of Greece* at 1818. Nothing in *Town of Greece* suggests the Supreme Court was overruling *Marsh* to hold that legislative prayers by government officials are unconstitutional, while only those offered by invited guests are constitutional.

---

opportunity to more fully brief this Court on the issue of legislative immunity as it would relate to invocations offered by Rowan County legislators; in short, precisely like members of Congress, Rowan County Commissioners are absolutely immune from suit for *all* legislative activities.

The common-law analogue of this constitutional protection applies also to state and local legislators. The United States Supreme Court held in *Bogan v. Scott-Harris*, 523 U.S. 44 (1998), that local legislators have absolute immunity from liability under 42 U.S.C. §1983 when acting in their legislative capacity. *Bogan*, 523 U.S. at 49. While *Bogan* and other legislative immunity cases have been decided under circumstances where the legislators themselves are sued; nevertheless, although Rowan County is the Defendant in the instant case, the subject of this lawsuit is the words of invocations used to solemnize legislative meetings, words that are uttered by the legislators themselves during the course of their legislative session. While legislative immunity does not relieve legislators from responsibility for actions taken outside the scope of their office, the U.S. Supreme Court has clearly recognized both in *Marsh* and *Town of Greece* that invocations have always been an integral part of legislative tradition. Neither the Supreme Court nor any federal appellate court has ever denied that legislative immunity attaches to invocations offered by legislators during a legislative meeting.

The U.S. Supreme Court set forth a two-tiered approach for claims of absolute legislative immunity in *Gravel v. U.S.*, 408 U.S. 606, 625 (1972). Both tiers---(1) speech or debate on the legislative floor itself and (2) words and actions that are a integral part of how a legislative body operates---are illustrative here with regard to immunity protections for legislative invocations in Rowan County. First, the speech challenged in the instant case involves "speech or debate" during legislative sessions. Second, legislative invocations have been "an integral part" of how a legislative body operates since well before the Founding of this Nation. Opening invocations, as an integral part of legislative proceedings, serve to "solemnize" and "lend gravity" to those proceedings. *Town of Greece*, 134 S.Ct. at 1823. Any consequences for the speech that is the subject of this lawsuit can only be imposed by other legislators under their governing rules, or by voters on Election Day.

Like all justiciability doctrines, legislative immunity also limits the power of federal courts to a role consistent with our Nation's system of separated powers. *See, Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). Additionally, in a case arising out of the Fourth Circuit Court of Appeals, legislative immunity was considered "an important protection of the independence and integrity" for legislative bodies. *See, United States v. Johnson*, 383 U.S. 169, 178 (1966). This issue is relevant here because "subject-matter jurisdiction . . . involves a court's power to hear a case, [and] can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002).

Applying these longstanding legislative immunity principles to the instant case, the legislative invocations offered by Rowan County's Commissioners during their legislative meetings are both encompassed in and protected by the general principle of legislative immunity. If that is so, then this Court would be without jurisdiction to pass judgment upon any words spoken by local legislators during legislative meetings, even words ending with "Amen."

14

The Supreme Court clarified in *Town of Greece* that the government must permit all prayer givers to offer prayers distinctive to their own faith, stating, "Once it invites prayer into the public sphere, government must permit a prayer giver to address his or her own God or gods as conscience dictates, unfettered by what an administrator or judge considers to be nonsectarian." *Id.* at 1822-23. The *Marsh/Town of Greece* standard for protection of legislative prayer does not recognize a distinction between opening legislative prayers offered by paid chaplains (in *Marsh*), invited clergy (in *Town of Greece*), or legislators (in Rowan County).

In fact, this District Court's original Order in *Joyner v. Forsyth County* noted that prayers could be offered by the legislators themselves, rather than by an invited clergy. The Order stated:

> [T]he Court notes that going forward, several options remain open to the Forsyth County Board of Commissions. First, the Board of Commissioners could choose not to open meetings with prayer. Second, the Board of Commissioners could choose to open their meeting with non-sectarian prayers. [internal citation omitted] **Such non-sectarian prayers could be offered by one of the commissioners...**

*Joyner v. Forsyth County,* District Court Case No. 10-1232, Order, Slip Op at 4 (January 28, 2010) (emphasis added).

On November 20, 2014, the Injunction against legislative invocations in Forsyth County was lifted based upon the Supreme Court's decision in *Town of Greece. See, Joyner v. Forsyth County*, Case no. 1:07-cv-00234-JAB-LPA, Minute Entry entered on 11/20/2014. Similarly, the Preliminary Injunction against Rowan County should now be

15

lifted and this Court should grant Defendant's Motion for Summary Judgment as a matter of law.

## V. Defendant's legislative invocations conform to content seen throughout American history and are, therefore, consistent with the Establishment Clause.

The Establishment Clause in general—and legislative invocations in particular— "must be interpreted by reference to historical practices and understandings." *Town of Greece*, 134 U.S. at 1813 (citation and internal quotation marks omitted). Any test for determining the constitutionality of legislative prayers "must acknowledge a practice . . . accepted by the Framers" that has "withstood the critical scrutiny of time and political change." *Id.* at 1813.

"The Court's inquiry, then, must be to determine whether the prayer practice in the *Town of Greece* [or in Rowan County] fits within the tradition long followed in Congress and the state legislatures." *Id.* Prayers offered by government officials, as well as those with sectarian references, easily fit within that tradition. Therefore, the prayers offered by the Rowan County Commissioners are constitutional even when they contain sectarian references.

Like the Plaintiffs here, the *Town of Greece* respondents not only demanded nonsectarian references, but going further took specific issue with prayers that contained repeated references not only to Jesus, but also to "specifics of Christian theology" including the final Resurrection, the Holy Spirit, and Pentecost. *Id.* at 1820. Rejecting such arguments in their entirety, the Supreme Court held that any "insistence of nonsectarian or ecumenical

16

prayer as a single, fixed standard is not consistent with the tradition of legislative prayer outlined in the Court's cases." *Id.* To the contrary, the "Congress that drafted the First Amendment would have been accustomed to invocations containing explicitly religious themes of the sort [Plaintiffs] find objectionable." *Id.* Such prayers are as fully constitutional today as they were then. "The decidedly Christian nature of these prayers must not be dismissed as the relic of a time when our Nation was less pluralistic than it is today. Congress continues to permit its appointed and visiting chaplains to express themselves in a religious idiom." *Id.*

The U.S. Supreme Court held only that the government cannot deliberately exclude certain faiths from participating on a non-preferential basis. *Id.* at 1824 (requiring that government not show "aversion or bias" and instead "maintain[...] a policy of nondiscrimination"). The Court was careful, however, to caution that "a quest to promote 'a diversity of religious views' would require . . . wholly inappropriate judgments[.]" *Id.* (quoting *Lee*, 505 U.S., at 617 (Souter, J., concurring)). In Rowan County, the faith or non-faith of the elected officials and their individual decisions regarding what is an appropriate invocation to solemnize the legislative meeting is the determining, nondiscriminatory factor in the content of legislative prayers that otherwise meet the *Marsh/Town of Greece* standard for legislative invocations.[5]

---

[5] There is no way to remove politics from legislative venues. Citizens in San Francisco or New York City might be less likely to elect an Evangelical Christian to their legislative body. Certain localities and states have large proportions of particular denominations, and the political reality is that adherents of those faiths would, therefore, be more likely than others to succeed politically in certain locales. Courts cannot fashion a rule of law to overcome that democratic element, nor does the Constitution require it. In *Town of Greece*, the legislature was not required to artificially overcome its majority Christian constituency when inviting volunteer clergy to offer its legislative Invocations.

Case 1:13-cv-00207-CCE-JLW   Document 51-1   Filed 01/20/15   Page 21 of 25

Far from forbidding prayers by government officials, when the Supreme Court in *Town of Greece* reaffirmed *Marsh* in its entirety, it reiterated that Nebraska's practice of hiring a paid chaplain was consistent with the Establishment Clause. The sole prayer-giver for the 16 years relevant to *Marsh*—Reverend Robert Palmer—held "a permanent, appointed position in a legislature." *Town of Greece,* 134 S.Ct at 1821. If 16 years of exclusively Christian prayers by a single Christian minister is acceptable under the Establishment Clause, then Defendant's legislative invocations must likewise be held constitutional as a matter of law.

The Establishment Clause permits government officials to offer sectarian prayers. The Supreme Court noted with approval as an example of an acceptable prayer one that ended, "All this we ask in the name and through the merits of Jesus Christ, Thy Son and our Saviour, Amen." *Town of Greece* at 1823 (*quoting* the prayer of Rev. Jacob Duché, Sept. 7, 1774). The Court went on to hold that the Establishment Clause was not violated by such prayers because "[o]ur tradition assumes that adult citizens, firm in their own beliefs, can tolerate and perhaps appreciate a ceremonial prayer delivered by a person of a different faith." *Id.* at 1823 (citation omitted).

"That the First Congress provided for the appointment of chaplains only days after approving language for the First Amendment demonstrates that the Framers considered legislative prayer a benign acknowledgment of religion's role in society." *Id.* at 1819. The Constitution was not violated by any of those early practices any more than it is by the modern legislative invocations in *Town of Greece* or in Rowan County.

18

Given the continuing *Marsh/Town of Greece* standard for protecting legislative prayers, so recently clarified and reaffirmed by the United States Supreme Court, Rowan County's legislative invocations are constitutional as a matter of law and this Court should grant Defendant's Motion for Summary Judgment.

## CONCLUSION

For all the foregoing reasons, and particularly in light of the continuing *Marsh* standard for the protection of opening legislative prayers as clarified and reaffirmed in *Town of Greece*, when Rowan County Commissioners rotate an opportunity to solemnize their legislative Board meetings with prayer, the Defendant Rowan County does not violate the First Amendment Establishment Clause, even when citizens who disagree with the content of those prayers are offended or otherwise upset. Rowan County's legislative invocations fully comport with our Nation's legislative prayer traditions and fall squarely within the legislative prayer protections of the *Marsh/Town of Greece* legislative prayer standard. The U.S. Supreme Court's precedent is now clear in this matter. Defendant's Motion for Summary Judgment should accordingly be granted and its preliminary injunction dissolved.

19

Respectfully submitted this 20th day of January, 2015.

/s/ David C. Gibbs III *
D.C. Bar No.: 448476
President, National Center for Life and Liberty
P.O. Box 270548
Flower Mound, Texas 75027-0548
Ph: 727-362-3700
Fax: 727-398-3907
dgibbs@gibbsfirm.com
*Pursuant to Local Rule 83.1(d)*

and

/s/ Bryce Neier
Local NC Counsel
2525 Raeford Road, Suite D
P.O. Box 87164
Fayetteville, NC 28304
Ph: (910) 423-5000
Fax: (910) 423-5000
bryceneier@aol.com
*By special appearance pursuant to Local Rule 83.1(d)*

*COUNSEL FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2015, I electronically filed the foregoing Memorandum in Support of Defendant's Motion for Summary Judgment, using the CM/ECF system which will send notifications of such filings to the following counsel:

Christopher A. Brook
Legal Director, ACLU of North Carolina
P.O. Box 28004
Raleigh, NC 27611
Ph: (919) 834-3466
Fax: (866) 511-1344
cbrook@acluofnc.org

Heather L. Weaver
ACLU
915 15th Street, NW, 6th Floor
Washington, D.C. 20005
Ph: (202) 675-2330
Fax: (202) 546-0738
hweaver@aclu.org

Dated: January 20, 2015

Daniel Mach
ACLU
915 15th Street, NW, 6th Floor
Washington, D.C.  20005
Ph: (202) 675-2330
Fax: (202) 546-0738
dmach@aclu.org

National Center for Life and Liberty

/s/ David C. Gibbs III
David C. Gibbs III *

* *Pursuant to Local Rule 83.1(d)*

21