IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1-13-cv-207-JAB-JLW

| | |
|---|---|
| NANCY LUND, LIESA MONTAG-SIEGEL and ROBERT VOELKER, <br><br> Plaintiffs <br><br> vs. <br><br> ROWAN COUNTY, NORTH CAROLINA <br><br> Defendant | PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

## INTRODUCTION

Rowan County coerces its citizens to participate in prayer. The facts of the current controversy differ starkly from *Town of Greece v. Galloway*, 134 S. Ct. 1811, 1825 (2014), in which the Supreme Court recently upheld a legislative prayer practice. Rowan County Commissioners focus their prayers on the broader public; prayer was an internal act for town board members in *Greece*. Rowan County Commissioners routinely direct Rowan County citizens such as the Plaintiffs to participate in their prayers; Greece town board members never did so. And Rowan County Commissioners have turned their Board meetings into a hostile environment for prayer nonparticipants by deriding those who question their prayer practice; nothing of the sort took place in Greece. Defendant responds with a sanitized version of the facts and a selective reading of the law. A fair reading of the case law demonstrates that Rowan County's prayer practice coerces in a manner not present in *Greece* and incompatible with First Amendment protections. Plaintiffs are thus entitled to summary judgment.

1

# ARGUMENT

**I. THE FACTS OF THE CURRENT CONTROVERSY DIFFER FROM *GREECE* IN THAT THE PLAINTIFFS HAVE DEMONSTRATED THAT ROWAN COUNTY HAS PRESSED RELIGIOUS OBSERVANCES UPON THEM.**

In *Town of Greece v. Galloway*, the Supreme Court reaffirmed the "elemental First Amendment principle that government may not coerce its citizens 'to support or participate in any religion or its exercise.'" 134 S. Ct. at 1825 (internal citation omitted). The Court did not find impermissible coercion in *Greece* because the prayers were for the benefit of elected officials, who, in turn, never directed the public to participate in the prayers or signaled disfavor toward nonparticipants. *Greece*, 134 S. Ct. at 1825-26. By contrast, Rowan County's prayers were externally focused, with elected officials soliciting public participation and labeling as persecutors those who dared questioned this practice.

**A. The prayers delivered by Rowan County Commissioners were not an internal act but instead were focused on the broader public.**

Central to the finding that the prayers in *Greece* were constitutional was the fact that they were "an internal act" for the benefit of the town board. *Id.* at 1825 (quoting *Chambers v. Marsh*, 504 F. Supp. 585, 588 (Neb. 1980)). Concerns that Greece was pressing religious observances upon its citizens were allayed by this solemnizing focus: "The principal audience for these invocations is not, indeed, the public but lawmakers themselves, who may find that a moment of prayer or quiet reflection sets the mind to a higher purpose[.]" *Greece*, 134 S. Ct. 1825. This is not the case here. In place of "guest ministers" praying for the government officials in *Greece*, *id.* at 1826, prayers are delivered by Rowan County Commissioners directly to the public. Prelim. Inj. Order, *supra* at 2; *see also Greece*, 134

2

S. Ct. at 1822 (criticizing practices that "would involve government in religious matters" by "editing or approving the prayers in advance"). And these County Commissioners have pointedly disavowed the notion that these prayers are principally for their benefit. *See Lund v. Rowan Cnty.*, No. 1:13cv207, at *6 (M.D.N.C. July 23, 2013) (order granting preliminary injunction) (hereinafter "Prelim. Inj. Order") (Commissioner Carl Ford: "I am not perfect so I need all the help I can get, and asking for guidance for my decisions from Jesus is the best help I, *and Rowan County*, can ever hope for.") (emphasis added); Karissa Minn, *Barber's Turn for Opening Prayer; Coltrain Only Commissioner Willing to Change Wording*, SALISBURY POST, March 3, 2012 (Board Chairman Chad Mitchell: "[I]f it takes public money, I'm still willing to fight [in litigation], because *it's not just fighting for these five* [County Commissioners'] *rights but for all the citizens of Rowan County*.") (emphasis added). The external focus of Rowan County's prayer practice divides and coerces in a way the internally directed practice in *Greece* did not.

      In its response brief, Defendant ignores what has transpired in this case. Chairman Mitchell's acknowledgment that the case is about more than the Commissioners, *id.*, is not mentioned. Defendant re-imagines Commissioner Ford's bluntly divisive and externally focused characterization of the prayer purpose as merely describing an opportunity for "lawmakers to reflect upon shared ideals." Def.'s Resp. to Pls.' Cross Mot. for Summ. J., *Lund v. Rowan Cnty.*, No. 1:13cv207, at *6 (M.D.N.C. Jan. 30, 2015) (hereinafter MSJ Resp. Br.). Along the same lines, Rowan County presents its Commissioners' post-litigation statements that "[a]ny invocation offered is for the edification and benefit of the commissioners" as determinative despite the surrounding context. *Id*. at 5 (quoting ECF

3

23, Commissioner Affs., Exhs. 1-5, ¶ 15). Defendant's conclusory assertions to the contrary cannot change the fact that these prayers are intended for more than the five Rowan County Commissioners.

### B. Rowan County Commissioners directed and solicited public participation in the prayers they delivered.

Consistent with its internal focus, the prayer practice in *Greece* did not involve governmental officials directing and soliciting public participation. "[B]oard member themselves stood, bowed their heads, or made the sign of the cross during the prayers[.]" *Greece*, 134 S. Ct. at 1826. But, crucially, these government officials "at no point solicited similar gestures by the public." *Id.* "If town board members [had] directed the public to participate in the prayers . . . [t]he analysis would [have] be[en] different." *Id.* Rowan County Commissioners time and again directed public prayer participation, soliciting those attending Board meetings to stand for their prayers as well as the Pledge of Allegiance. *See*, *e.g.*, Compl. ¶ 21 ("If you will stand for the invocation and pledge, I will lead us tonight.").[1] These distinct facts warrant a different legal analysis and conclusion from the one applied in *Greece*.

Defendant responds to the evidence its Commissioners directed prayer participation by recasting *Greece*'s prohibition on "direct[ing] the public to participate in prayers," 134

---

[1] The proximity of the prayer to the Pledge of Allegiance puts to lie Defendant's contention that audience members can seamlessly "leave the room for the prayer and return for the Pledge." MSJ Resp. Br., *supra* at 3; *see also* Prelim. Inj. Order, *supra* at 7 (Plaintiff Voelker "feels pressured to stand and participate in [the] prayers because all Commissioners and most audience members stand during the Invocation, and the Invocation is immediately followed by the Pledge of Allegiance, for which [he] feels strongly that he needs to stand.").

4

S. Ct. at 1826, as a requirement that Plaintiffs show its Commissioners "command[ed]" acquiescence.² MSJ Resp. Br., *supra* at 1. In case the legal distinction between a directive and a commandment from a government official is unclear, Defendant clarifies that no coercion has occurred here because "no citizen is ever penalized for not standing[.]" *Id.* at 2. *Greece* mandates no such showing to prove coercion, however. The Court paid far more attention to who asked the audience to participate in prayer than tonal vagueries such as the force or cordiality of the request. *See Greece*, 134 S. Ct. at 1826 ("Respondents point to several requests where audience members were asked to rise for the prayer. *These requests, however, came not from town leaders but from the guest ministers*[.]") (emphasis added). Rowan County's effort to muddy the legal standard governing this case speaks to the troubling nature of Defendant's prayer solicitations.

C. **Rowan County Commissioners have created a hostile atmosphere for prayer nonparticipants at its Board meetings.**

The internal nature of the prayer practice, and corresponding lack of governmental direction to the public, ameliorated any coercion in *Greece*. The focus predicted the atmosphere: there was limited opportunity to "signal disfavor toward nonparticipants or suggest that their stature in the community was in any way diminished"³ because the prayer

---

² The word "command," or any variant thereof, does not appear in *Greece*'s majority opinion, nor in any opinions' coercion discussion. The majority instead speaks, interchangeably, of directions, solicitations, asks, and requests in its coercion analysis. *Greece,* 134 S. Ct. at 1826.

³ Instead of diminishing religious minorities, Greece "invited a Jewish layman and the chairman of the local Baha'I temple to deliver prayers." *Id.* at 1817 (noting also that a "Wiccan priestess who had read press reports about the prayer controversy requested, and was granted, an opportunity to give the invocation."). Rowan County offers no such opportunity.

interaction in *Greece* was predominantly between town leaders and guest ministers. 134 S. Ct. at 1826. In contrast, the fact that Rowan County's prayers were focused on the broader public led to Commissioners directing prayer participation and, ultimately, disapproving of those who did not fall in line. Specifically, County Commissioners have labelled religious minorities in Rowan County "evil" and charged those who object to the prayer practice with the "persecution" of Board members. *School Board: Bible Classes Stay, Curriculum to Undergo Evaluation*, SALISBURY POST (Oct. 10, 2014), http://www.salisburypost.com/2014/10/10/school-board-bible-classes-stay-curriculum-to-undergo-evaluation/ (Board Chairman Jim Sides: "I am sick and tired of being told by the minority what's best for the majority. My friends, we've come a long way – the wrong way. We call evil good and good evil."); *In Jesus' Name, Amen? This Afternoon Will Tell for Rowan County Co. Commission*, Crime in Charlotte (Aug. 5, 2013) (Commissioner Jon Barber on Plaintiffs' lawsuit: "God will lead me through this persecution and I will be His instrument."). Such leadership has begotten an inhospitable setting for those individuals, such as Plaintiffs, who want to play a role in their government but do not want to participate in prayers. Compl. ¶ 32 ("Rowan County resident, Shakeisha Gray, was jeered by audience members for expressing opposition to the Board's" prayer practice.) Rowan County Commissioners have created "the very divisions along religious lines that the Establishment Clause seeks to prevent." *Greece*, 134 S. Ct. at 1819.

Defendant's response to the divisiveness sown by its Commissioners is to distort the prescribed "fact-sensitive" legislative prayer inquiry, *id.* at 1825, into a blinkered assessment that would improperly require the Court to turn a blind eye to the full context

6

in which the invocation policy has been implemented. First, Rowan County contends that its Commissioners' comments on religious minorities and prayer nonparticipants "are irrelevant to the question of whether the content and setting of the Board's legislative invocations is constitutional" if not delivered from the dais. MSJ Resp. Br., *supra* at 4. This elevates form over substance and is incompatible with *Greece*'s inquiry into whether governmental officials disfavored or diminished prayer nonparticipants "in any way." *Greece*, 134 S. Ct. at 1826. Second, instead of the candid pre- and post-litigation revelations from Commissioners Sides and Barber about those who question their prayer practice, Defendant offers the sanitized, post-litigation statements that "[t]he Commissioners respect the right of any citizen" to "disregard the Invocation." MSJ Resp. Br., *supra* at 4 (quoting ECF 23, Commissioner Affs., Exhs. 1-5, ¶ 14). And, perhaps most tellingly, Defendant simply washes its hands of the predictable consequences of Rowan County Commissioners "singl[ing] out dissidents for opprobrium," *Greece*, 134 S. Ct. at 1826: "it was other citizens, not the Defendant, who allegedly did the 'jeering'" of a Rowan County prayer dissenter. MSJ Resp. Br., *supra* at 4. "Constraints remain" on legislative prayer, *Greece*, 134 S. Ct. at 1823, a reality Defendant cannot escape by a selective reading of *Greece* and the facts of the current controversy.

II. **<u>*HUDSON* IS PERSUASIVE AUTHORITY HIGHLIGHTING THAT ROWAN COUNTY'S PRAYER PRACTICE IS IMPERMISSIBLE PURSUANT TO AN EVEN-HANDED READING OF *GREECE*.</u>**

*Hudson v. Pittsylvania Cnty.*, No. 4:11cv043, slip op. at 3 (W.D.Va. Aug. 4, 2014) provides support for Plaintiffs' contention that Rowan County's prayer practice coerces in a fashion not found in *Greece* and inconsistent with the Establishment Clause.

Differentiating that case from the precedent on point, the Court noted "the active role of the Pittsylvania County Board of Supervisors in leading the prayers, and importantly, dictating their content, is of constitutional dimension and falls outside the prayer practices approved in *Town of Greece*." *Id.* at 4. "Not only did the Pittsylvania County Board members determine the content of the opening prayers at Board members, the Board members often directed the assembled citizens to participate in the prayers by *asking* them to stand." *Id.* (emphasis added). Specifically, *Hudson* found impermissible solicitation pursuant to *Greece* when a Pittsylvania County supervisor opened the prayer by directing, "*If* you don't want to hear this prayer, you can leave. *Please* stand up." *Id.* (emphasis added). As Plaintiffs have argued above, the external focus of the prayers delivered by Rowan County Commissioners and the fact that the prayer participation "request[s] [originate] from the government makes a difference" in the legal analysis employed and conclusion reached here. *Id.* (citing *Greece*, 134 S. Ct. at 1826).

Defendant notes the Fourth Circuit Court of Appeals did not reach the merits in its review of *Hudson* but fails to acknowledge this result left undimmed the persuasive power of the district court opinion. Because it lacked jurisdiction over the county's appeal, the Fourth Circuit did not address the Establishment Clause claim or *Greece*. *Hudson v. Pittsylvania Cnty.*, 774 F.3d 231, 234 (4th Cir. 2014). Thus, while there is not binding precedent on point, the district court opinion in *Hudson* remains strong persuasive support for Plaintiffs' contention that Rowan County has impermissibly directed and coerced prayer participation pursuant to the standard enunciated in *Greece*.

8

## CONCLUSION

Defendant pressed religious observances on Plaintiffs through a prayer practice directed at the public by County Commissioners who have signaled disfavor of religious minorities and prayer nonparticipants. This is impermissible coercion. *Greece*, 134 S. Ct. at 1824-28; *see also Hudson*, No. 4:11cv043, slip op. at 3-4. For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for Summary Judgment.

Respectfully submitted this 5th day of March, 2015.

/s/ Christopher A. Brook
Christopher A. Brook
NC Bar No. 33838
Legal Director, ACLU-NCLF
Post Office Box 28004
Raleigh, North Carolina 27611
Tel: (919) 834-3466
Fax: (866) 511-1344
Email: cbrook@acluofnc.org

Daniel Mach*
Heather L. Weaver*
ACLU Program on Freedom of Religion and Belief
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
Fax: (202) 546-0738
Email: dmach@aclu.org
hweaver@aclu.org
* Appearing pursuant to Local Rule 83.1(d)

Counsel for Plaintiffs

9

## CERTIFICATE OF SERVICE

  I hereby certify that on March 5, 2015, I electronically filed the foregoing Memorandum of Law in Support of Motion for Summary Judgment using the CM/ECF system which will send notification of such filings to the following counsel:

David C. Gibbs III
Gibbs Law Firm, P.A.
2648 FM 407 Suite 240
Bartonville, TX 76226
dgibbs@gibbsfirm.com

Bryce Neier
P.O. Box 87164
Fayetteville, NC 28304
bryceneier@aol.com

    This is the 5th day of March, 2015.

                /s/ Christopher A. Brook
                Christopher A. Brook